REPAYMENT CONTRACT

BETWEEN THE UNITED STATES AND THE SAN CARLOS

IRRIGATION AND DRAINAGE DISTRICT, ARIZONA

JUN 12 19[illegible]

1. THIS AGREEMENT, Made this 9th day of June, 1961, between the United States of America, hereinafter called the United States, acting through the Secretary of the Interior, party of the first part, and the San Carlos Irrigation and Drainage District, a public corporation, of Pinal County, organized and existing by virtue of the laws of the State of Arizona, hereinafter called the District, party of the second part,

EXPLANATORY RECITALS

WITNESSETH:

2. WHEREAS, the Act of Congress of June 7, 1924 (43 Stat. 475-476) commonly called the San Carlos Act, authorized further carrying on of the San Carlos Project, hereinafter referred to as the Project, and among other things required the formation of a District under State law and that an appropriate repayment contract in accordance with the terms of that Act and satisfactory to the Secretary of the Interior be executed by said District; and

3. WHEREAS, By the Act of Congress of March 7, 1928 (45 Stat. [illegible]) the consolidation of the Florence-Casa Grande Project with the San Carlos Project was authorized, and by that Act and previous and subsequent legislation the erection, as part of the San Carlos Project, of a distributing, pumping and drainage system and of works for the development of power at the Coolidge Dam was provided for; and

4. WHEREAS, the requirements of these several Acts have been assented to and forwarded by the execution, by all owners or claimants of private lands whose property might come within the San Carlos Project, of the so-called Landowners' Agreement; said contract being here and hereinafter referred to for purposes of notice and otherwise, and, as may be applicable, made a part hereof; and

5. WHEREAS, in accordance with said acts of Congress and said agreement, the Secretary of the Interior, on the 25th day of April 1928, designated and provided for the inclusion of the public and private lands which are to be brought into said San Carlos Project, at this time and from and including which the District should be and now has been duly formed;

6. NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained, and other valuable considerations, the parties hereto agree as follows:

PROJECT LANDS

A. The lands of the San Carlos Project shall consist of:

(1) such allotted lands in the Gila River Indian Reservation as the Secretary of the Interior under the following limitations, shall designate; said lands, however, under this number (1) of this paragraph A, shall not exceed 50,000 acres, but, within that limitation, may include all irrigable allotments on said reservation which the Secretary of the Interior shall decide are not already adequately supplied with gravity water for irrigation, or and, which, for the benefit of the Indians, their successors and assigns, shall be irrigated under said Project, or which, either as at present located or as the location thereof may be changed, can be feasibly irrigated thereunder, and which he shall from time to time designate as temporarily or permanently entitled to the Indian water rights under said Project; (2) the private and

public lands in Pinal County, Arizona, designated by the Secretary of the Interior under his order of April 25, 1928; (3) Such additional private and public lands as the Secretary of the Interior shall include in said Project by making designations thereof in order to include lands having water rights in the Florence-Casa Grande Project or which in his opinion are otherwise entitled to inclusion under this number (3) of this paragraph A, and which, by reason of not having been offered or for other reasons, thus far have not been included in said Project, but which the Secretary of the Interior may think should be so included. Such lands, however, together with those included in the aforesaid designation of April 25, 1928, shall not exceed 50,000 acres; (4) And such additional lands of any character or situation whatsoever, including Indian Reservation lands, as may be included in said Project from time to time in compliance with law and by agreement of the parties hereto.

B. No lands shall be included in or excluded from the District except upon approval of the Secretary of the Interior, and no private or public lands shall be included in either the District or the Project unless in accordance with all the requirements of law.

C. By agreements between the Secretary of the Interior and the Board of Directors of the District and with the consent of the individual land owners directly involved, corrections in the descriptions of lands in the District may be made; and in like manner the correction of errors, the making of needed eliminations and substitutions, with corresponding adjustments of obligations, the achievement of consolidations, or any other minor readjustments as the Secretary of the Interior may think necessary, may be made by him; and the District will facilitate and carry out,

so far as it lawfully may, any and all such changes.

WATER DISTRIBUTION

7. The stored and pumped water of the San Carlos Project shall be deemed a common Project water supply in which all lands in the project and under the San Carlos Reservoir shall be entitled to share equally, and all such waters shall be distributed to the lands of the project as equitably as the physical conditions permit. Apportionment of such water shall be made by the Secretary of the Interior at the beginning of each annual irrigation season and any increase of the water supply during a particular season may be apportioned likewise. All rights in apportionments theretofore made shall expire at the end of the irrigation season in which made; but the unstored flow of the Gila River to the extent needed to supply them, shall be available to and be divided between Indian and Non-Indian lands and distributed to them and to the lands of the Florence Casa-Grande Project and the San Carlos Project in accordance with their priorities in such unstored waters, which priorities are defined in the Florence-Casa Grande Agreement, (AGREEMENT OF LANDOWNERS TO INDUCE THE SECRETARY OF THE INTERIOR TO UNDERTAKE THE FLORENCE-CASA GRANDE IRRIGATION PROJECT, AND FOR THE BUILDING AND OPERATION THEREOF IN CASE THE SAME IS DECLARED FEASIBLE), and in the order of designation made thereunder and also in the Land Owners' Agreement herein referred to. The foregoing determination of water rights shall control in regard to such rights belonging to said projects.

USE OF PROJECT WATERS

All water and water rights of the San Carlos Project and opportunities connected therewith shall be used for the advantage of that project.

DISTRIBUTION LOSSES

In dividing the unstored waters between the Indian and private and public lands, losses of water in the Florence-Casa Grande Project Canals, and in them only, shall be prorated, but in distributing the stored and pumped water, losses in all project canals shall be borne by the project as a whole.

PROJECT WORKS

8. The works of the San Carlos Project do and shall consist of the Coolidge Dam and the San Carlos Reservoir, and everything pertaining thereto, including the Power Plant and transmission line to Hayden; the Ashurst-Hayden Dam and the canals and other works of the Florence-Casa Grande Project, as said works are defined in the Florence-Casa Grande Agreement, subject only to interests therein outstanding on account of the few acres in that project which may not have been or be brought into the San Carlos Project; the Pima Lateral from that part of it which forms a portion of the works of the Florence-Casa Grande Project to the boundary of the Indian Reservation; the North Side Syphon and canal to the boundary of said reservation; the old and new Casa Grande Canals; the old Florence canal, the Picacho Reservoir and all other private irrigation works and structures, which have been or may be conveyed to and accepted by the United States on account of said Project; together with the laterals of the Several said canals which do or shall serve the lands of the Project down to 160 acre units; the irrigation works within the Indian Reservation consisting of the North Side Canal from the Reservation line to its end, the Pima Lateral to the Sacaton Dam, the Little Gila Canal from the point where it leaves the Pima Lateral to its end about 2 miles below Sacaton, the Casa Blanca Canal from its heading at the end

of the Little Gila Canal to its end in Section 22, T. 4S., R. 4 E., that part of the Sacaton Dam which is used and useful as a diversion dam and conduit for irrigation water, the Santan Canal from its heading at the Sacaton Dam to its end in Section 14, T. 3S., R. 5 E., together with the laterals of the several said canals which do or shall serve the Indian lands of said project down to 160 acre units, said laterals, however, not to extend west of the Southern Pacific Railway line from Maricopa to Phoenix; all pumping and drainage works now owned or to be acquired or constructed under existing appropriations; and, finally, all other works, built or acquired in the future for the Project under agreements between the Secretary of the Interior and the District.

OPERATION AND MAINTENANCE

9. The Government, through its duly appointed agencies, will continue to maintain all of the project works, and the District until December first of the year following the issuance of the public notice, fixing the construction charge of the Project, will continue to operate at the expense of the District such of the works of the Project within the limits of the District as the Secretary of the Interior, or his agents, think proper. Beginning December 1st of the year following the date of the issuance of the said public notice the Secretary of the Interior may from time to time designate and turn over to the Irrigation District the operation and/or maintenance of such works within the limits of the District, as may be deemed necessary for the irrigation of District lands, and the District agrees to accept the operation and/or maintenance of such works.

COST OF OPERATION AND MAINTENANCE

Except when certain works of the Project within the District shall be operated and/or maintained by the District and at its expense and works of

the Project used exclusively for distribution of water to the lands on the Indian Reservation shall be operated and/or maintained by the United States and at the expense of said lands or the United States, the whole cost of operating and maintaining the works of the Project, after sums collected for excess water and other sums which may go to the operation and maintenance fund as provided herein have been deducted, shall be divided equally on a per acre basis among all of the lands of the project and regardless of whether they are irrigated or not.

When one year after the public notice aforesaid shall have been issued, if the operation and/or maintenance of the works of the district is turned over to the district, the remaining works of the project not used exclusively for the distribution of water to the lands on the Indian Reservation shall be considered reserved or joint works and payment for the cost of the operation and maintenance of such reserved or joint works shall be divided equally on a per acre basis among all of the lands of the project and also a surcharge may be placed against all of the lands of the project for paying the cost of operating and maintaining the pumps and equipment used for pumping drainage or irrigation water, without reference to where such pumps are located; and if the United States permits certain works of the Project within the District to be operated by the District and at its expense while the United States retains the maintenance thereof the Secretary of the Interior may charge to the District the cost of such maintenance as determined by him, thereby requiring the District to pay the cost of maintaining the project's works within its borders thus turned over to it, and leaving the United States or the Indians to pay the cost of maintaining the Project works within the Indian Reservation. In addition to the payment of its proportionate

share of the whole cost of said San Carlos Project, the District agrees to collect a minimum operation and maintenance charge for each acre of land in the District, based upon a delivery of two acre feet of water per acre, additional water to be delivered upon payment of an additional charge, in accordance with the quantity of water used. Operation and maintenance for the reserved works and maintenance charges for works operated, but not maintained, by the District shall be fixed annually by the Secretary of the Interior and paid to the United States by the District. The Secretary of the Interior will give notice to the District of the amount of charges to be paid annually in sufficient time to permit the District to make the annual tax levies, or toll charges, in order that the District may comply with the laws of the State of Arizona relative to the levy and collection of taxes by irrigation districts.

CONTROL AND MANAGEMENT

10. Ownership of the Project works shall remain in the United States unless and until otherwise provided by Congress. The Secretary of the Interior, under regulations made by him, may apportion the stored and pumped water and fix the duty of water and fix all charges for deliveries of water, and in order to prevent improvident uses of water and to provide an operation and maintenance fund a minimum or basic per acre quantity of water, to the extent that it may be needed, shall be delivered annually to and the same, as covered by the operation and maintenance charge or separately at a fixed basic price, shall be charged against and paid for on account of, each acre of private or public land in the project whether actually used or not, but any greater amount of water shall be paid for separately at the same or a higher or lower rate; and the Project managers under the control of the Secretary

of the Interior, when the situation warrants, may deliver excess water free on an equitable basis; but apart from such excess water, all water delivered by the Project to said lands including that delivered on account of priorities in the natural or unstored flow, as well as stored and pumped water, shall be charged for at the rates and upon the terms above provided, which rates and terms shall be announced from time to time by the Secretary of the Interior.

INDIANS SHARE OF OPERATION AND MAINTENANCE COST

11. The Secretary of the Interior agrees to use such means as are open to him and as he deems effective and expedient, to make available to the Project on account of the Indian lands included therein, their share of the total cost of operating and maintaining the Project, and also like charges for water for said lands as are herein provided to be paid on account of non-Indian lands.

LEASE OR SALE TO MUNICIPALITIES

12. The Secretary of the Interior may in accordance with law, and for the interests of the Project, supply water for irrigation and other purposes to the State or its subdivisions, municipalities, towns, and villages, whether incorporated or not, public institutions, and departments and agencies or enterprises of the United States, including agricultural experiment stations, Indian agency grounds and gardens; and may use the canals, and works of the Project for the storage, transport, and delivery of water belonging to others; all, however, upon terms to be fixed by the Secretary of the Interior at one time or from time to time as he may determine.

APPLICATION OF REVENUES - SALE OF WATER

13. The sums collected by or for the benefit of the Project except for the sale of a permanent water right on any and all of the foregoing accounts or upon any account not above or hereinafter otherwise specifically provided

for, shall go to pay a proper share of the cost of operating and maintaining the Project, however it may be operated or maintained. The sums collected for the sale of permanent water rights shall be applied to reduce the principal of the debt owed by the Project to the United States, in accordance with the repayment amortization plan hereinafter set forth.

EQUALIZATION OF EXPENDITURES

14. The provisions of the Landowners Agreement limiting Project expenditures for the extension of the distributing and pumping system for the Indian Reservation to sums expended for extension of the distributing and pumping system for the public and private lands of the project was and is not intended to establish a fixed policy of equal division of the Project expenditures between the Indian and non-Indian areas, it being realized that drainage, the utilization of drainage water, and other problems of a project nature, will necessarily transcend such limits, ~~and that the costs of their solution~~ should be borne by the Project as a whole, regardless of where they may arise. Provisions for undertaking such work at project expense, by the Secretary of the Interior and the District agreeing thereto, are made both in the Landowners' Agreement and in this instrument.

REPAYMENT OF EXPENDITURES

The costs of the Project incurred under appropriations already made, pursuant to the Act of June 7, 1924, and subsequent Acts and under the Land Owners'

Agreement, shall be repaid to the United States. These costs, to and including June 30th, 1930, are agreed to be as follows:

(a) The Coolidge Dam and San Carlos Reservoir and all other items connected therewith, including among other things railroad removal, payment for Indian lands, power development at said dam and the transmission line to Hayden, have cost $6,042,094.84, of which the power development alone has amounted to $475,840.09.

(b) The Ashurst-Hayden Dam and the canals and other works of the Florence-Casa Grande Project, have cost $965,453.58.

(c) The remaining costs of the San Carlos Project to said date of June 30, 1930, including maintenance and operation of the whole Project, amount to $1,486,656.61, which costs include those of the North Side Syphon and canal to the Indian Reservation which serves some 3000 acres of public and private lands and some 1500 acres of Indian lands and has cost $106,244.88; the Pima Lateral beyond that part of it which belongs to the Florence-Casa Grande Project to the boundary of the Indian Reservation which serves some 5000 acres of public and private lands and some 48,500 acres of Indian lands and has cost $163,992.09; and such costs also include the costs of the Casa Grande Canal from its beginning at the Picacho end of the Florence-Casa Grande Project canals to its terminus near the city of Casa Grande, together with its laterals, and the laterals from the Florence-Casa Grande Project, and those of all of the canals above mentioned, down to the boundary of the Indian Reservation and all operation and maintenance costs which are to be consolidated with construction costs, incurred, and also expenditures and allowances on the Indian Reservation as hereinafter defined.

The costs of the purely non-Indian distributing system and other items including Land Office surveys, etc., to the date above mentioned (June 30, 1930) have amounted to $602,400.95 and therefore the sum available at said last mentioned date for works or allowances on the Indian reservation to balance said purely non-Indian expenditures are a like amount, $602.400.95, and the purely Indian distribution system to said date as constructed out of appropriations made after June 7, 1924, has cost $431,509.69, leaving an allowance in favor of the Indian Reservation of $170,891.26.

In accordance with the foregoing, the cost of the San Carlos Project to June 30, 1930, has amounted to $8,494,208.03, which sum is made up of an actual expenditure of $8,323,313.77 plus said allowance for said Indian Reservation of $170,891.26.

Project costs in addition to the above shall include the sums expended for said Project under the appropriation acts for the Indian Service for the Project for the fiscal years ending June 30, 1931 and June 30, 1932 respectively (which appropriated in the aggregate $1,233,000), in the amounts thereof spent for operation and maintenance of said project from said June 30, 1930 to July 1, 1932; the sums spent for construction of works serving both Indian and public and private lands, including those spent for pumps, wells and equipment used for pumping of drainage or irrigation water, without reference to where such pumps are located; the sums spent for construction of the distribution system serving only public and private lands, plus an equal amount for construction of the distribution system serving only Indian lands, plus also the aforesaid allowance in favor of constructing the distributing system for the Indian lands of $170,891.26; ~~and such further appropriations for said project as shall be made~~ in accordance with recommendations of the Secretary

of the Interior with the assent of the District as expressed by its Board of Directors and shall be expended by said Secretary for said project, or shall be made without such assent in case the Secretary of the Interior or Congress thinks it necessary to expend money to safeguard the Project.

In accordance with the foregoing the costs of the San Carlos Project as fixed by the public notice to be issued as aforesaid, unless further sums shall be agreed to by the Secretary of the Interior and the District after the execution of this instrument, may amount to but shall not exceed the sum of $9,586,313.77, except that said total may be exceeded by the inclusion of any sums expended to safeguard the Project as hereinabove provided for, and any sums expended on account of contingent liabilities as in the next paragraph hereof provided.

The foregoing and subsequent statements of Project costs, the District's share of which are to be repaid hereunder, unless otherwise provided by Congress more favorably to the lands of the Project, may be increased by the addition of sums not now fixed as Project charges but which possibly constitute contingent Project liabilities incurred after the date of the San Carlos Act of June 7, 1924, or incurred on account of the Florence-Casa Grande Project, and so may become Project charges by the Judgment of courts of competent jurisdiction or of other proper authority.

WHEN PUBLIC NOTICE ISSUED

The public notice required by the San Carlos Act shall be issued on December 1, 1931, unless the time therefor shall be extended by the Secretary of the Interior. When such notice is issued, it shall fix the costs of the Project so far as they have been incurred at that date, and as hereinabove provided, but in no wise shall relieve the lands of said Project or the owners thereof or the District, from the obligation to pay their proportionate

share of the full costs of the Project that may be incurred subsequent to that time.

FIRST PAYMENT OF CONSTRUCTION CHARGES

On the first day of December of the third year following the date of the public notice, the District shall pay to the United States for each acre in the District five percentum of the sum fixed as the per acre charge for construction of the said project to the date of and as defined by said public notice.

Thereafter the said District shall pay each year to the United States for each acre in the District five per centum of the remainder of the per acre sum determined in said public notice less the amount of such initial payment. Such sums shall be paid each year by the District until the entire indebtedness to the United States for the lands within the District on account of the sum fixed in the public notice and for additional expenditures made subsequent to the date of public notice as herein provided with interest shall have been discharged, such principal indebtedness being augmented by four per centum interest upon the District's share of all sums expended by the United States on account of said Project, said interest accruing from the date of such public notice; and the repayment part of the said San Carlos legislation of June 7, 1924, is interpreted by the parties hereto to mean that the yearly amortization payment from the beginning will go to pay the principal and interest of the remainder left after the deduction of the five per centum of the construction cost, which constitutes the first payment, and therefore that the interest accruing between the date of the public notice and the first year of payment of regular construction cost sums under the amortization plan shall be paid after all other payments due hereunder have been made and such

payments shall be made at the rate of the fixed annual amortization payments herein provided for.

As to all sums expended by the United States as hereinabove provided for, between the date of said public notice and the date of the first payment hereinabove provided for and thereafter, the District shall repay to the United States its share of such expenditures in full, and in the same general manner, and with interest at the same rate, as hereinabove provided for the repayment of the sums named in the public notice and as Congress or the Secretary of the Interior shall direct; the purpose being that all sums expended upon said Project, whether before or after the issuance of said public notice, shall be repaid to the United States with interest on deferred amounts at the rate stated and in accordance with the plan of the San Carlos Act, and that the specific manner and dates of payment of expenditures made after the first public notice shall be determined by further public notices.

NET POWER REVENUES

The net power revenue from the Coolidge Dam plant of the San Carlos Project shall be used as provided by the hereinabove mentioned Act of March 7, 1928, and shall in accordance with the plan of that Act reduce the sum to be paid thereunder which plan is hereby interpreted to make these power payments effect a reduction of principal during the fiscal year in which received, but the receipt of such revenues shall not reduce the annual sum to be paid by the land owners on account of their lands or the District until with the addition of these payments the entire debt is discharged. That is to say, the landowners and the District shall continue to pay each year their share of the sum initially fixed in the public notice, and of the sums fixed in subsequent notices or determinations; and the benefits to accrue to them through revenues from such

power shall shorten the time during which these payments shall be made, but shall not diminish these annual payments until the entire debt has been extinguished.

## DATE OF BEGINNING PAYMENT, OPERATION AND MAINTENANCE

In addition to its proportion of the charge for the whole cost of said Project, the District shall also pay an operation and maintenance charge to begin one year after the issuance of the public notice and to be fixed from time to time in advance by the Secretary of the Interior, based upon the annual cost of the operation and maintenance of the San Carlos Project.

Operation and maintenance charges shall be paid annually, in advance, not later than March 1st, no separate charge being made, however, for operation and maintenance for the first year after the issuance of the said public notice; and the right is reserved to the Secretary of the Interior or his agent and to the District to refuse to deliver water to any one delinquent in paying such charges, or any charges due the United States or the District.

## PROMPT PAYMENT OF CHARGES

The District shall, and hereby agrees to, repay to the United States that part of the cost of the San Carlos Project, due and payable on account of lands within the District, and will make such payments promptly as provided by the aforesaid acts of Congress, and this agreement.

## POWER DEVELOPMENT

In anticipation of the development by the Project of power sites below the San Carlos Reservoir, the District agrees that in case such sites should not be developed through financing by the United States, and should be developed under the leadership of the District, the Indians of the Gila River

Indian Reservation whose lands are within the Project, as represented by the Federal Government, shall have an equal right with the owners of non-Indian lands, to participate in the expenditures for and receive the benefits of such power development to the extent that such participation is or may be made feasible by law and may be approved by the Secretary of the Interior, and when such developments are made or provided for by contract between the United States and the District.

POWER FOR SAN CARLOS RESERVATION

In compliance with the requirements of the Second Deficiency Act, of the fiscal year 1928, power shall be furnished by the San Carlos Project from the power plant at the Coolidge Dam for agency and school purposes and for pumping for irrigation by Indians on the San Carlos Reservation at a cost not exceeding 2 mills per kilowatt hour, delivered at the switch board at the Coolidge Dam.

APPRAISEMENT AND CONVEYANCES

The San Carlos Act having provided that an appraisement approved by the Secretary of the Interior of private and public lands irrigable under the Project should be made, "showing the present actual bona fide value of all such irrigable lands, fixed without reference to the proposed construction of said Coolidge Dam", and such appraisement now having been made, it is herein incorporated by reference, the original thereof being in the office of the Secretary of the Interior, with copies in the Project offices of the Indian Irrigation Service and of the San Carlos Irrigation and Drainage District in Arizona.

SALE OF LAND

Since the San Carlos Act among other things provides "that until one-

half of the construction charges against said lands (private and public lands) shall have been fully paid, no sale of any such lands shall be valid unless and until the purchase prive involved in such sale is approved by the Secretary of the Interior," it is hereby agreed that the Secretary of the Interior will make all necessary and convenient arraggements for passing upon sales of that character; and it is further agreed, as said act provides, that "upon proof of fraudulent representation as to the true consideration involved in any such sale, the Secretary of the Interior is authorised to cancel the water right attached to the land involved in such fradulent sale."

Any land owner at any time may pay half of the reclamation charge against his land at that time, or pay the whole charge thus assessed; provided, however, that facilities for such payment exist or may be made and the same are sanctioned by law. Such payment, however, shall not relieve such owner or his lands of charges for operation and maintenance of the Project or any other costs or charges of any nature of a continuing character or which may be incurred after such payment.

DISTRICT TO USE TAXING POWER

Pursuant to the provisions of the laws of the State of Arizona, and of the United States, and regulations established thereunder, the District will cause to be levied and collected all necessary assessments against the tracts of land now or hereafter included in the District designated by the Secretary of the Interior, to meet the terms of this agreement, and will use all the powers and resources of the District, including the taxing power and the power to withhold delivery of water, to collect and pay to the United States all charges authorised under this agreement in full on or before the day that the same become due.

BOOKS OF ACCOUNTS

However the Project may be operated, whether entirely or partly by the United States, or entirely or partly by the District, full and accurate accounts shall be kept at all times by both the United States and The District of all receipts and expenditures and other fiscal operations in connection with the Project, and such accounts and the books showing them, and also all records, maps, plans, estimates, budgets and engineering data of the United States and the District concerning said Project, at all reasonable times, shall be open to the inspection of the United States and its agents, and of the District and its representatives and of all persons properly interested; and the United States and the District shall inform and consult with each other as to contemplated future steps of importance.

ALL BENEFITS CONDITIONAL UPON PAYMENT

Should any assessment, or assessments, authorized by the terms of this agreement and levied against any tract of land in the District be held illegal or void, or the District or its officers be enjoined or restrained from making or collecting any assessment provided for herein from any tract of land in the District at the instance of the owners or holders of such tract of land, then such tract shall have no right to any of the benefits of this contract and no water furnished through any works constructed by the United States shall be delivered to or for such tract, or tracts of land, until construction and operation and maintenance charges on the terms and conditions provided for herein shall have been paid by the landowners. It is further agreed and understood that the payment of construction and operation and maintenance charges on the terms and conditions provided for herein is a prerequisite to the right to

receive water from any of the works constructed by the United States and no irregularity in levying assessments by the District, or lack of authority in the District, whether affecting the validity of District assessments or not, shall be of any effect to authorize any landowner of the District to demand or receive water made available through irrigation works constructed by the United States unless construction and operation and maintenance charges, on the terms and conditions provided herein, have been paid by such landowner.

REFUSAL OF WATER BECAUSE OF DEFAULT

The United States reserves the right to refuse to deliver water to the District in the event of default by the District for more than twelve months in any of the payments due the United States hereunder. The provision of this article is not exclusive and shall not in any manner hinder the United States from exercising any other remedy to enforce collection of any amount due.

FAILURE OF THE DISTRICT TO LEVY ASSESSMENT

The United States reserves the right to cancel this contract if the District fails to levy any assessment called for herein. The provisions of this paragraph are not exclusive and shall not in any manner hinder the United States from exercising any other remedy to enforce collection of any amount due the United States under the terms of this contract.

PENALTY FOR DELINQUENCY IN PAYMENT

To every instalment of money required to be paid under this agreement which shall remain unpaid after the same shall have become due, there shall be added at once a penalty of one-half of one per centum thereof, and thereafter a like penalty of one-half of one per centum on the first day of each month so long as such default shall continue, and the District hereby agrees

to pay said penalty.

PUBLIC LAND SUBJECT TO ASSESSMENT

The unentered public lands and entered lands for which no final certificate has been issued, located within the District, and described in a statement marked Exhibit "A" attached hereto and made a part hereof, are hereby designated as subject to the provisions of the act of August 11, 1916 (39 Stat. 506); and made taxable thereunder, provided, however, that unentered public land, while in that status, shall not be assessed by the District for any purpose.

AGREEMENT SUBJECT TO APPROPRIATIONS BY CONGRESS

Where the operations of this contract extend beyond the current fiscal year, the contract is made contingent upon Congress making the necessary appropriations for expenditures hereunder after such current year shall have expired. In case such appropriation as may be necessary to carry out this contract is not made, the District hereby releases the United States from all liability due to the failure of Congress to make such appropriation.

CONFIRMATORY PROCEEDINGS

The execution of this contract shall be authorized by vote of the qualified electors of the District present and voting at an election held for that purpose as provided by law, and thereafter if the electorate of the District vote their approval of this contract, the Board of Directors of the District will file promptly in the Superior Court of Pinal County, Arizona, a petition praying, in effect, that this contract and the proceedings leading up to the execution of the same, as required by this contract, may be examined, approved, and confirmed by the court. The special proceeding herein agreed to be taken by the Board of Directors of the District shall in all things in manner and form be in strict compliance with the provisions of the laws of Arizona. The District shall furnish the United States for its files certified copies of all proceed-

ings relating to the authorization of this contract.

RULES AND REGULATIONS

There is given and reserved to the Secretary of the Interior the right to make regulations and to modify the same in his discretion, in general harmony, however, with the Land Owners' Agreement and this contract, to the end that the true intent of the law and of this contract and that agreement shall be carried into full effect.

CHANGE IN DISTRICT

While this contract is in effect no change shall be made in the organization of the District, by consolidation or merger with another district, by proceedings to dissolve, or otherwise, without the consent of the Secretary of the Interior; and the District shall not incur unusual obligations, or those which in the opinion of the Secretary of the Interior may impair the investment of the United States, and shall not undertake any major enterprises without the approval of the Secretary of the Interior.

LAND OWNERS' AGREEMENT FILED IN INDIAN OFFICE AT COOLIDGE, ARIZONA

All owners of lands thus far designated to be included in the San Carlos Project and which are those included and are in the San Carlos Irrigation and Drainage District, have executed the Land Owners' Agreement hereinabove referred to. Said agreement is in form as shown by the originals which are in the office of the United States Indian Service, in the City of Coolidge, Arizona, and are there open to inspection, and is identical as executed by individuals except for variations as to owners, descriptions of lands, and waivers of mortgages and other liens in favor of the United States; and all lands within

said San Carlos Project of a private or public nature, being all except Indian lands, are subject to the liens and other obligations created by the execution of said Land Owners' Agreement, which agreement remains in full force and effect.

DISTRICT TO RECEIVE BENEFIT OF SUBSEQUENT LEGISLATION

The District shall receive the benefit of any future legislation enacted by Congress in the same manner and to the same extent as though this contract had not been made.

No member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

This agreement shall inure to the benefit of and be binding upon the District and its successors and assigns, and the United States and its assigns.

IN WITNESS WHEREOF the parties have hereto signed their names the day and year first above written.

THE UNITED STATES OF AMERICA

By ______________________
SECRETARY OF THE INTERIOR

SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT

ATTEST:

______________________
SECRETARY

By ______________________
PRESIDENT

Approved as to form this

27th day of April, 1931.

[illegible]

Exhibit "A"

Department of the Interior
U. S. Land Office, Phoenix, Arizona.

March 18, 1931

SE$\frac{1}{4}$, Sec. 17, T-6S, R-8E.
SE$\frac{1}{4}$SE$\frac{1}{4}$ Sec. 8, T-6S., R-9E.
S$\frac{1}{2}$NW$\frac{1}{4}$ Sec. 28, T-6S., R-9E.
SE$\frac{1}{4}$ Sec. 35, T-6S., R-6E.
SE$\frac{1}{4}$ Sec. 13, T-6S., R-7E.
S$\frac{1}{2}$SE$\frac{1}{4}$ Sec. 26, T-6S., R-7E.
N$\frac{1}{2}$SE$\frac{1}{4}$ Sec. 33, T-6S., R-7E.
Lot 3 and NE$\frac{1}{4}$SW$\frac{1}{4}$ Sec. 30, T-6S., R-7E.
NW$\frac{1}{4}$ Sec. 31, T-6S., R-7E.
Lot 1, Sec. [illegible], T-6S., R-8E.
N$\frac{1}{2}$SW$\frac{1}{4}$ Sec. 21, T-6S., R-8E.
S$\frac{1}{2}$SW$\frac{1}{4}$ Sec. 21, T-6S., R-8E.
N$\frac{1}{2}$S$\frac{1}{2}$ Sec. 29, T-6S., R-8E.
NW$\frac{1}{4}$ Sec. 30, T-6S., R-8E.
Lots 1, 2, 3 and 4 and E$\frac{1}{2}$W$\frac{1}{2}$ Sec. 7, T-6S., R-9E.
SW$\frac{1}{4}$ Sec. 1, T-7S., R-6E.

All of G. and S. R. B. & M.

I hereby certify that according to the tract books of this office all of the above described lands are in unperfected entries and that final certificates or patents have not issued for any of the lands.

Respectfully

(Signed) Henry A. Morgan,
Register.