# ORDER
# DEFINING JOINT, DISTRICT AND INDIAN WORKS OF THE SAN CARLOS FEDERAL IRRIGATION PROJECT: TURNING OVER OPERATION AND MAINTENANCE OF DISTRICT WORKS TO THE SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT

ORDER
DEFINING JOINT, DISTRICT AND INDIAN WORKS
OF THE SAN CARLOS FEDERAL IRRIGATION PROJECT:
TURNING OVER OPERATION AND MAINTENANCE OF
DISTRICT WORKS TO THE SAN CARLOS
IRRIGATION AND DRAINAGE DISTRICT

The Repayment Contract of June 8, 1931 between the United States of America and the San Carlos Irrigation and Drainage District, made pursuant to the San Carlos Act (Act of June 7, 1924, 43 Stat., 475-476) provided that the Secretary of the Interior of the United States could in his discretion permit the District to operate and maintain certain of the works of the San Carlos Federal Irrigation Project designated in the said Repayment Contract as "Works of the District."

The District has for several years been operating the works serving District lands exclusively. The District is desirous of maintaining said works as well as operating them and has formally requested the said Secretary to give his consent to its so doing, which said request was embodied in a Resolution of its duly qualified Board of Directors adopted May 3, 1938.

Responsive to that request and in order to have the operation and maintenance of the works serving District lands carried out by the same organization, and to ascertain the advantages, if any, of having the District operate and maintain the works serving District lands, the consent of the Secretary of the Interior of the United

States is hereby given to the operation and maintenance of said District works on the conditions hereinafter set forth.

The Secretary retains the right to withdraw the consent hereby given at any time when in his judgment it would be for the best interests of the Government or the Project as a whole.

In accordance with law, and the Repayment Contract and on the foregoing promises, and in order to make effective the aforesaid purposes,

IT IS HEREBY ORDERED THAT:

JOINT WORKS

The Joint Works of the San Carlos Federal Irrigation Project are hereby defined and declared to be as follows:

1. Coolidge Dam and San Carlos Reservoir.

2. Electrical power generating, transmission and distribution system.

3. Ashurst-Hayden Diversion Dam.

4. Florence-Casa Grande Canal to and including turn out to the Picacho Reservoir.

5. Picacho Reservoir, Feeder Canal and Outlet Structure, Provided however, that at any time in the future when the Picacho Reservoir is not or can not be used for Project storage or regulatory purposes, it and the outlet structure and feeder canal upon further order of the Secretary may be designated as part of the District Works.

6. North Side Canal from the Florence-Casa Grande Canal to the boundary of the Pima Indian Reservation.

7. Pima Lateral to the boundary of the Pima Indian Reservation.

8. Sublaterals of the Pima Lateral outside of the Reservation which serve in whole or in part Indian lands.

9. Drainage and irrigation pumping works including wells and structures regardless of whether located within the District or the Reservation.

10. All structures on any and all of the above works, together with measuring devices such as measuring flumes or gauging stations used for the division of water as between Indian lands and District lands, even though some of such structures may be located in laterals and canals themselves designated as District or Indian Works.

11. Telephone Lines and appurtenances belonging thereto.

12. All Project buildings paid for on joint account including the office building at Coolidge, the Project garage and shops, including the shops at Olberg, and all machines and other equipment necessary for the operation and maintenance of the Joint Works heretofore selected for that purpose by the Project engineer and the officials of the San Carlos Irrigation and Drainage District. Provided, however, that in the event the Project Joint Works organization does not need all the office and warehouse space to carry on the activities of the Project Joint Works, the District and the Indian Unit, or either, shall have the right to use such space for official purposes on the following conditions, to-wit:

   A. The Project engineer shall have the right to determine the amount if any of such available space.

   B. The Project engineer has determined that for the present Joint Works will need approximately one third of the available office space at Coolidge. The District shall therefore be permitted to use one third of said office space, and the Indian Unit one third until such time as the Project engineer finds that the requirements of Joint Works for such office space increase or decrease. The occupancy of the building shall be by mutual agreement of the Project engineer, the District engineer and the person in charge of the Indian Unit, should that Unit at any time be under the supervision of anyone other than the Project engineer. It has been agreed that until the requirements of Joint Works increase the District shall occupy the approximate east one third of the office building. That arrangement is hereby confirmed, subject to the right of the Project engineer to determine the manner in which the building

shall be divided so as to best effect the arrangement agreed upon, and the further condition that the right of Joint Works to the use of said building shall at all times be paramount, and the judgment of the Project engineer as to the requirements of Joint Works shall be final until otherwise determined by the Secretary. The basement space in the building shall be divided among the aforesaid units in approximately the same ratio as the office space and subject to the same terms and conditions set forth herein. There shall be no charge made to the District or Indian Units for the space thus occupied. The cost of operating and maintaining the building shall be carried by Joint Works. The warehouse and garage and other facilities at Coolidge have been and are in general necessary for Joint Works, but in the event the Project engineer finds it feasible to assign some of said space or facilities to the District or Indian Units without sacrificing the efficiency of Joint Works he may do so, provided, however, that neither the District nor the Indian Unit shall be entitled to preference or favoritism in that regard.

C. The District and the Indian Unit shall have the right at all times to the services of the Project shops for official work on the following conditions:

(1) The shops shall be maintained for the purpose principally of doing work for the Joint Works part of the Project.

(2) The shops shall be operated at all times under the supervision and management of the Project engineer who shall make such rules and regulations in regard to their operation as he may from time to time think necessary to promote efficiency and economy, including the time and method of payment for work done for the District or Indian Units.

(3) All shop work done for the District and the Indian Units shall be done by the Project shop organization on a cost basis, and shall be done only at such times as may not interfere with Joint Works requirements. All such work shall be done as between the Indian Unit and the District on the basis of "First come, first served," except that the Project engineer may do emergency work for either at any time, when in his judgment it is necessary.

13. All lands upon which any of the foregoing buildings or structures are located and the rights of way therefor, including the right of way for the San Carlos and Picacho Reservoir sites.

A. If at any time it shall be found that the Project Joint Works does not require the use of some of said land, and any of it can be used advantageously by the District or the Indian Unit, the Project engineer may assign such area to either of said Units for use without cost to be used by the Unit to which assigned until needed by the Project. The availability of such land for assignment as aforesaid, and the purposes for which it may be used by the party to which it may be assigned, and the manner in which it shall be used and cared for shall be determined by the Project engineer, whose judgment shall be final in case of disagreement in such matters.

B. In the event the Project engineer determines it is necessary for Joint Works to have and use any or all of the Project buildings or premises in this Order, or hereafter, assigned to the District, he shall give the District six (6) months notice in advance of the date when the District shall vacate any such buildings or premises occupied or used by it.

DISTRICT WORKS.

All Project Works not hereinabove reserved as Joint Works and which are used for the serving of District lands are hereby defined and declared to be District Works.

The District Works as herein defined are hereby turned over to the District beginning July first, 1938, to be operated and maintained by the District and at its expense under management satisfactory to the Secretary of the Interior of the United States, until further order.

The operation and maintenance of the District Works by the District as provided for herein shall be at all times done both

as to quality and quantity in a manner satisfactory to the said Secretary. The District shall at all times keep the works hereby entrusted to its care for operation and maintenance in a satisfactory operating condition; it being understood in that regard that if at any time either the management or the operation and maintenance of the District Works by the District shall prove unsatisfactory to the United States the Secretary of the Interior or his duly authorized representative, the Project Engineer, shall, in writing, call such matters to the attention of the District; and in the event such unsatisfactory matters are not corrected by the District within a reasonable time, the Secretary retains the right to withdraw from the District the privilege of operating and maintaining said works. What constitutes "a reasonable time" within the meaning of this paragraph shall be determined and definitely set forth in any letter or notice calling any such unsatisfactory conditions to the attention of the District. Provided, however, that in the event any such notice shall be given by the duly authorized representative of the Secretary, his fixing of a reasonable time for remedying the unsatisfactory conditions called to the attention of the District in any such notice may be appealed to the Secretary whose decision in that regard shall be final.

INDIAN WORKS.

All Project works serving Indian lands not reserved herein as Joint Works as above defined shall be considered and are hereby declared to be Indian Works.

All Indian Works as herein defined shall be operated and maintained by the United States and at its or the Indians' expense.

## OPERATION AND MAINTENANCE CHARGES

Joint Works.

The Joint Works as herein defined will be operated and maintained by the United States and the cost thereof, including the administration of the Gila decree, (such costs for the fiscal year beginning July 1, 1938, are estimated to be $60,000) exclusive of the cost of operating and maintaining electric power generating plants at the Coolidge Dam and the Diesel plant at Coolidge and the power transmission and distribution system, as well as all the appurtenances belonging to the Project electrical system, which is payable from power revenues, and for the payment of which such revenues are now expected to be sufficient, shall be paid by the Project landowners as provided for in the Landowners' Agreement and the Repayment Contract.

Since the Project consists of 50,000 acres of Indian lands and 50,000 acres of public and private lands, said cost of maintaining and operating the Joint Works shall be paid equally on account of the Indian lands and the public and private lands at a per acre rate to be established by order of the Secretary annually hereafter, which said rate shall produce such a sum of money as shall be determined by the Secretary to be the amount necessary to meet, on the aforesaid basis, the proportionate share of the expense required by the Project to maintain and operate the Joint Works.

That part of the charges for operation and maintenance of the Joint Works to be borne by the District when so determined shall be paid on a fiscal year basis to the United States annually in advance, not later than the first day of March of each year, beginning the first of March, 1939, all as provided in the Repayment Contract as amended, which said first payment shall be for the fiscal year 1940, and the United States or the Indians will make available the same amount of money each fiscal year for the operation and maintenance of the Joint Works for and on account of the Indian lands.

Since the District has made payments to the Project covering its share of the cost of Joint Works for the calendar year 1938, and its estimated share of the cost of the Project maintenance to July 1, 1938, also the money collected by it for excess water deliveries during the year 1937; and since in any event there will be unadjusted credits due the District or payments due from it to the Project on account of its share of said costs and its share of Joint Works maintenance and operation costs for the last half of the fiscal year 1939, it is hereby provided that any unadjusted credits or payments on account of said items existing on July 1, 1938, shall be adjusted at the first opportunity after the actual figures are determined by the Project engineer, in any event within thirty (30) days after the Project engineer furnishes the District with a statement of its account with the Project as of July 1, 1938, for and on account of the aforesaid items. The Project engineer in determining what amount if

any the District owes the Project on July 1st on account of said items shall allow the District credit for fifty per centum (50%) of the total Project revenues derived from excess water deliveries for the calendar year 1937, to the extent such revenues have been collected and are available for Project uses, but no credit can be allowed the District on account of such revenues due for deliveries to Indian lands during 1937 until made available by Congress; credit for such uncollected amounts shall be allowed on future payments by the District.

## DELIVERY OF WATER AND OPERATION AND MAINTENANCE CHARGES FOR DISTRICT LANDS AND WORKS

The District, in accordance with the Repayment Contract, shall make an annual charge against lands of the District, herein designated as the basic charge, for operation and maintenance of District Works and for the District's share of operation and maintenance of Joint Works which charge when collected will, together with its proper share of revenue from the anticipated excess water charges hereinafter provided for, cover the cost of operating and maintaining said District Works and pay the District's share of operating and maintaining the Joint Works.

The District, in accordance with the Repayment Contract, shall deliver two (2) acre-feet of water or such part thereof as may be legally and physically available, to each irrigated acre in the District on payment of its said basic charge and any other charges due the District or the United States under the provisions of the Landowners' Agreement and the Repayment Contract, Provided that all sums

due the United States provided for herein shall have been paid by the District in accordance with the provisions of this order and the terms of the Repayment Contract; all additional water, except free water, as provided for in the Repayment Contract shall be paid for by the landowners and collected by the District, at the rate of Fifty Cents (50¢) per acre-foot for the third acre-foot per acre and at the rate of One Dollar ($1.00) per acre-foot for all additional water delivered, but the Secretary retains the right to change at any time the charge for excess water.

In order to protect the interests of the United States and facilitate the collection of the construction charges due from the landowners within the District owing to the United States, it is further provided that the District shall maintain an organization which will not entail an overhead expense disproportionate to the services which it renders the landowners in the operation and maintenance of said District Works.

It is further provided that if at any time the Secretary determines that the charges made by the District for operation and maintenance of the District Works are excessive, the District shall proceed immediately upon written notice from the Secretary of the Interior to reduce said cost, to a maximum to be fixed in such notice by the Secretary of the Interior and if within a reasonable time the District finds itself unable to meet the demands of the Secretary in that regard the Secretary may withdraw the operation and maintenance of the District Works from the District. The Secretary retains full

power to determine what constitutes a reasonable time within the meaning of this paragraph.

## DELIVERY OF WATER AND OPERATION AND MAINTENANCE CHARGES FOR AND ON ACCOUNT OF THE INDIAN LANDS AND WORKS

As hereinbefore provided, the United States will make available for operating and maintaining the Joint Works the aforesaid share thereof due on account of the 50,000 acres of Indian lands in said Project. In addition thereto the United States or the Indians shall provide an amount of money which will be sufficient to meet the per acre cost of maintaining and operating the Indian Works, which said per acre cost shall be termed the basic charge for Indian lands and shall be paid or provided for at the time and in the manner provided from time to time by the Secretary of the Interior in accordance with law and the Repayment Contract. It is further provided that when the basic charge for Indian lands plus the Indians' per acre share of the cost of Joint Works has been determined and the payment thereof made by the Indians in advance or provided for by the United States then there shall be delivered to each irrigated acre of Indian land two acre-feet of water or such part thereof as may be legally and physically available annually; and all additional water, except free water as provided for in the Repayment Contract, delivered to Indian lands shall be upon such terms as may be prescribed by the Secretary from time to time as provided for in Article 11 of the Repayment Contract, but until further order in that regard it shall be paid for in advance by the Indians or provided for by the

United States in advance of delivery at the rate of Fifty Cents (50¢) per acre-foot for the third acre-foot per acre and at the rate of One Dollar ($1.00) per acre-foot for all additional water delivered.

## APPLICATION OF FUNDS FROM EXCESS WATER DELIVERIES AND SALES TO TOWNS, VILLAGES, MUNICIPALITIES, STATE INSTITUTIONS, INDIAN AGENCY GROUNDS AND GARDENS AND THE AGRICULTURAL EXPERIMENT STATION AT SACATON

The revenue from charges for excess water deliveries shall be used and paid as provided in the Repayment Contract, and its provisions shall be considered as having been complied with as long as the District operates and maintains District Works, if the said collections shall be made and applied as follows:

Both the District and the Indian Unit or the United States for the Indians shall be entitled to use fifty per centum (50%) of the total of such charges due or collected hereafter from both Indian and District lands in any one year to meet, to the extent it will, their respective basic sum charges. Where deliveries to District lands exceed those to Indian lands or vice versa, any balance due to or owing from either by reason of such differences shall be adjusted at the end of each calendar year by proper payments from the District or credits to it. Such payments or credits to be made on or before March 1st of the succeeding year as provided in the Repayment Contract.

In harmony with the Act of March 7, 1928 (45 Stat. 200 at 210) and Article 12 of the Repayment Contract it has been the practice since

the San Carlos Project has been in operation to furnish water when available to the State Prison near Florence, and to the cities and towns in the Project as well as to the Agency grounds and gardens and the Experimental Farm at Sacaton, and it is believed that so long as that can be done it will be to the best interests of the Project to continue such uses of water. It is contemplated that contracts and such proper orders as may be required will be made in the near future to carry that policy into effect on a well-defined and permanent basis. When that shall have been done all such services as may be required from the District or the Indian Unit to deliver water to said agencies shall be paid for as shall from time to time be provided by the Secretary of the Interior.

All money received from the sale or leasing of water to any or all of the aforesaid public institutions for public enterprises, and beautification, where such service shall be rendered by the District or the Indian Unit, shall after due compensation as aforesaid for such service, be used and paid in the same manner provided herein with reference to money received from excess water deliveries. In the event, however, that the Project Joint Works can and does render the service to any or all of said public institutions without using District or Indian Unit Works, it shall make the collections and the revenue shall go into the Joint Works operation and maintenance fund and be used to reduce the amount due for that purpose from the District and the Indian Unit each year.

FLORENCE-CASA GRANDE PROJECT LANDS

There are certain lands of the Florence-Casa Grande Project which have water rights, but have not been merged as yet with the San Carlos Project. It is necessary that said lands be served in part through Project canals the amount of water to which, under the law and the Florence-Casa Grande Agreement, they are entitled. It is contemplated that contracts and proper orders shall be made with the Florence-Casa Grande landowners, which shall provide among other things for payment by them of construction costs and operation and maintenance charges of the Florence-Casa Grande Project. The operation and maintenance charges collected from said lands shall be paid into the San Carlos Project operation and maintenance fund and be used to reduce the assessments for Joint Works against Indian and District lands each year. The District shall be allowed due compensation however for any service which it may be required to and renders said lands or to the State lands or cities and towns. The extent of service and compensation shall be agreed upon hereafter, but in the event an agreement can not be reached in that regard mutually satisfactory to the Project engineer, the District and the Indian Unit, the Secretary retains the right to determine such matters.

It is further provided that until such permanent arrangements have been consummated for the State lands, the cities, towns and villages, the Florence-Casa Grande lands and the non-project Federal Agency lands at Sacaton, that the District will continue as in the past to deliver to the Florence-Casa Grande Project lands, such

water as they are entitled to in accordance with law and the Florence-Casa Grande Agreement and shall collect from said landowners such operation and maintenance charges as shall be determined upon and fixed by the Secretary of the Interior from year to year, and it will also deliver to the State Prison lands and the cities and towns such water as may be allotted to them upon the same terms as has heretofore been done. The Indian Unit will make deliveries to the Federal Agencies for which it shall also be allowed compensation to be hereafter fixed on a per acre basis; Provided the Project shall be allowed a credit of One Dollar and Eighty Cents ($1.80) per acre for service it performs on account of said agencies for the year 1937. All net revenue from collections made on said temporary basis shall be paid to the San Carlos Project Joint Works.

UNITED STATES AND DISTRICT TO KEEP AND EXCHANGE RECORDS

The District and the Indian Unit or the United States for it will keep records of the amounts and rates of delivery of water to farm units of the District, and the amount and rate of delivery of water to the Indian lands, according to methods approved by the Secretary of the Interior. They will furnish to each other a summary of such amounts and rates of supply for their information. These records are to be kept open for inspection by the Indian Unit, the United States and the District. Such records of the deliveries to District lands served through Government operated canals will be furnished the District in detail for assessment purposes.

DISTRICT COMPLIANCE WITH GILA DECREE

It is further provided that the District in the operation and maintenance of said District Works and the delivery of water to the Project lands within the District and the delivery of water to Florence-Casa Grande Project lands shall use every legal means at its command to see that the terms of the Gila decree are not violated and to cooperate with the Project engineer and the Federal Court Water Commissioner in the enforcement of its terms and provisions.

DIVISION OF PROJECT EQUIPMENT

Equipment belonging to the San Carlos Project shall be divided as between Joint Works, the District, and the Indian Unit of the Project, according to the needs of each unit. All equipment used or needed for the operation and maintenance of Joint Works shall first be selected from available Project equipment by the Project engineer and shall be designated as belonging to the Project for Joint Works. A division of the remaining equipment shall be made by the District and the Project engineer on such equitable basis as will most nearly equalize the benefits to both the District and Indian Units in the use of said equipment in the operation and maintenance of their respective units of the Project. In the event that an agreement cannot be reached as to this division the matter or disagreement shall be promptly referred to the Secretary of the Interior, together with a statement of the requirements of each as to such equipment, and his decision in the matter shall be final.

The value of such equipment as may be taken over by the District or the Indian Unit of the Project shall be paid for by the party receiving it. The payment therefor shall be made to the Project disbursing agent or other properly designated Project employee. The amount to be paid by each of said parties for the equipment turned over to them, respectively, shall be the current, approved value of said equipment as shown on the Project inventory and equipment accounts. Said equipment shall be paid for by the party receiving same at the time said property is turned over; Provided, however, that the District may use any unadjusted credit due it from the Project on January 1, 1938, in payment for any such equipment taken over by it, and the Indian Unit may pay for such equipment as it takes over on such terms as may be agreed to by the Project engineer, but in the event the said Indian Unit takes over any such equipment on terms other than by payment at the time of delivery, it shall in any event pay the full value thereof as of the date when so taken over, even though the equipment be worn out or destroyed before it shall have been paid for.

When, in the judgment of the Project engineer, emergencies exist, or at such other times as in his judgment economies may be effected in the operation and maintenance work on any part of the Project he may, at the request of the District or the Indian Unit, use Joint

Works equipment together with its operating crews to do the emergency work or effect economies, if it can be done without sacrificing Joint Works activities. In the event Joint Works equipment shall have been used as aforesaid, Joint Works shall be fully compensated by the unit for which the work shall have been performed, on an actual per diem or shift basis, according to the procedure established by the Project in accounting for the cost chargeable to the particular piece or pieces of equipment so used at the time such work may be done as aforesaid for the District or Indian Unit.

CERTAIN FEATURES CONTINGENT ON APPROPRIATIONS

It should be remembered that the provisions of this order, to the extent that funds are required to be made available by the United States beyond the fiscal year 1939, are dependent upon appropriations being made by Congress for such purposes. The United States, however, through its Secretary of the Interior, will use every legal effort at its command to see that the assessments which may become due for Joint and Indian Works as provided for herein are made available to the Project or other proper Indian Service official, to the end that the Project Joint Works and the Indian Works may be maintained and operated in the best possible manner so as to promote efficiency and economy in the use of water and conserve the Project water supply.

SUPERVISORY CONTROL RETAINED

This order is not intended to be and shall not be construed as an amendment or modification of either the Landowners' Agreement or the Repayment Contract, but as an administrative operating order made pursuant to the provisions of the Repayment Contract for the purpose of defining the conditions upon which certain of the objectives provided for in said Contract may be achieved. The Secretary reserves the right to exercise at any time any and all rights, powers and privileges given him by law and the aforesaid Contracts with reference to the San Carlos Federal Irrigation Project, whether specifically mentioned herein or not, including the right to supervise, through his duly authorized representatives, to the extent he may deem necessary, the doing of the maintenance and operation work herein conditionally delegated to the District. The Secretary also retains the right to modify this order and impose new or modified conditions on the District from time to time and to permit the Indian Unit to be operated in whole or in part by the Indians if deemed advisable; also to revoke in whole or in part, at any time, this or any amended or modified order.

Done at Washington, D. C., this 15th day of June, A. D. 1938.

(Sgd) Oscar L. Chapman,

Assistant Secretary of the Interior.

Copy . Certified Copy

RESOLUTION

WHEREAS, under Section 9 of the Repayment Contract by and between the San Carlos Irrigation and Drainage District and the Secretary of the Interior, bearing date of June 8th, 1931, it is provided that:

> "Beginning December 1st of the year following the date of the issuance of the said public notice the Secretary of the Interior may from time to time designate and turn over to the Irrigation District the operation and/or maintenance of such works within the limits of the District, as may be deemed necessary for the irrigation of District lands, and the District agrees to accept the operation and/or maintenance of such works." And,

WHEREAS, the operation of such works within the District necessary for the irrigation of District lands has heretofore been turned over to the District and such operation is now and has been handled by the District, and

WHEREAS, it is the desire of the District that it continue to operate such works and that the maintenance of such works be turned over to the District on July 1, 1938.

NOW, THEREFORE, BE IT RESOLVED that the Secretary of the Interior be and he is hereby petitioned to permit the District to continue the operation of such District works and to turn over to the District on July 1, 1938, maintenance of such District works as are necessary for the irrigation of District lands, in accordance with the provisions of the Repayment Contract.

Dated this 3rd day of May, 1938.

BOARD OF DIRECTORS OF THE
SAN CARLOS IRRIGATION & DRAINAGE DISTRICT

By (signed) R. W. Kenworthy
R. W. Kenworthy, President

(SEAL)

ATTEST:

(signed) Leon M. Nowell
Leon M. Nowell, Secretary

STATE OF ARIZONA, )
) SS
COUNTY OF PINAL )

I, Leon M. Nowell, Secretary of the Board of Directors of the San Carlos Irrigation and Drainage District, Pinal County, Arizona, do hereby certify that the above and foregoing resolution is a full, true and complete copy of the resolution passed by the Board of Directors of the San Carlos Irrigation and Drainage District, Pinal County, Arizona, on the 3rd day of May, 1938.

Witness my hand and the official seal of the said District affixed this 11th day of June, 1938.

(signed) Leon M. Nowell
Secretary

Copy of Certified Copy

RESOLUTION

WHEREAS, under Section 9 of the Repayment Contract by and between the San Carlos Irrigation and Drainage District and the Secretary of the Interior, bearing date of June 8th, 1931, it is provided that:

"Beginning December 1st of the year following the date of the issuance of the said public notice the Secretary of the Interior may from time to time designate and turn over to the Irrigation District the operation and/or maintenance of such works within the limits of the District, as may be deemed necessary for the irrigation of District lands, and the District agrees to accept the operation and/or maintenance of such works." And,

WHEREAS, the operation of such works within the District necessary for the irrigation of District lands has heretofore been turned over to the District and such operation is now and has been handled by the District, and

WHEREAS, it is the desire of the District that it continue to operate such works and that the maintenance of such works be turned over to the District on July 1, 1938.

NOW, THEREFORE, BE IT RESOLVED that the Secretary of the Interior be and he is hereby petitioned to permit the District to continue the operation of such District works and to turn over to the District on July 1, 1938, maintenance of such District works as are necessary for the irrigation of District lands, in accordance with the provisions of the Repayment Contract.

Dated this 3rd day of May, 1938.

BOARD OF DIRECTORS OF THE
SAN CARLOS IRRIGATION & DRAINAGE DISTRICT

By (signed) R. W. Kenworthy
R. W. Kenworthy, President

(SEAL)

ATTEST:

(signed) Leon M. Nowell
Leon M. Nowell, Secretary

STATE OF ARIZONA, )
) SS
COUNTY OF PINAL )

I, Leon M. Nowell, Secretary of the Board of Directors of the San Carlos Irrigation and Drainage District, Pinal County, Arizona, do hereby certify that the above and foregoing resolution is a full, true and complete copy of the resolution passed by the Board of Directors of the San Carlos Irrigation and Drainage District, Pinal County, Arizona, on the 3rd day of May, 1938.

Witness my hand and the official seal of the said District affixed this 11th day of June, 1938.

(signed) Leon M. Nowell
Secretary