12818 **Federal Register** / Vol. 63, No. 50 / Monday, March 16, 1998 / Notices

This is published in the exercise of authority delegated by the Secretary of the Interior to the Assistant Secretary—Indian Affairs by 209 DM 8.

Pursuant to 25 CFR 83.9(a) (formerly 25 CFR 54.9(a)) notice is hereby given that the: Saponi Nation of Ohio, P.O. Box 423, Rio Grande, Ohio 45674, has filed a letter of intent to submit a petition for Federal acknowledgment by the Secretary of the Interior that the group exists as an Indian tribe. The letter of intent was received by the Bureau of Indian Affairs (BIA) on September 23, 1997, and was signed by members of the group's governing body.

This is a notice of receipt of letter of intent to submit a petition and does not constitute notice that the petition is under active consideration. Notice of active consideration will be sent by mail to the petitioner and other interested parties at the appropriate time.

Under Section 83.9(a) (formerly 54.8(d)) of the Federal regulations, third parties may submit factual and/or legal arguments in support of or in opposition to the group's petition or request to be informed of any general actions affecting the petition. Any information submitted will be made available on the same basis as other information in the BIA's files. The petitioner will be provided an opportunity to respond to such submissions prior to a final determination regarding the petitioner's status.

The petition may be examined, by appointment, in the Department of the Interior, Bureau of Indian Affairs, Branch of Acknowledgment and Research, Room 3427–MIB, 1849 C Street, N.W., Washington, D.C. 20240, (202) 208–3592.

Dated: March 3, 1998.

**Hilda Manuel,**

*Deputy Commissioner of Indian Affairs.*

[FR Doc. 98–6709 Filed 3–13–98; 8:45 am]

BILLING CODE 4310–02–P

## DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

## Receipt of Petition for Federal Acknowledgment of Existence as an Indian Tribe

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice.

This is published in the exercise of authority delegated by the Secretary of the Interior to the Assistant Secretary—Indian Affairs by 209 DM 8.

Pursuant to 25 CFR 83.9(a) notice is hereby given that the: Tap Pilam—The Coahuiltecan Nation, Attn. Mr. Stephen Cassanova, P.O. Box 100113, San Antonio, Texas 78201 has filed a petition for acknowledgment by the Secretary of the Interior that the group exists as an Indian tribe. The petition was received by the Bureau of Indian Affairs (BIA) on December 3, 1997, and was signed by members of the group's governing body.

This is a notice of receipt of petition and does not constitute notice that the petition is under active consideration. Notice of active consideration will be sent by mail to the petitioner and other interested parties at the appropriate time.

Under Section 83.9(a) of the Federal regulations, third parties may submit factual and/or legal arguments in support of or in opposition to the group's petition, and/or may request to be kept informed of all general actions affecting the petition. Any information submitted will be made available on the same basis as other information in the BIA's files. The petitioner will be provided an opportunity to respond to such submissions prior to a final determination regarding the petitioner's status.

The petition may be examined, by appointment, in the Department of the Interior, Bureau of Indian Affairs, Branch of Acknowledgment and Research, MIB, 1849 C Street, N.W., Washington, D.C. 20240, (202) 208–3592.

Dated: March 3, 1998.

**Hilda Manuel,**

*Deputy Commissioner—Indian Affairs.*

[FR Doc. 98–6681 Filed 3–13–98; 8:45 am]

BILLING CODE 4310–02–P

## DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

## Operation and Maintenance Rate Adjustment: San Carlos Irrigation Project, Arizona

**ACTION:** Notice of operation and maintenance (O&M) rate adjustment.

**SUMMARY:** The Bureau of Indian Affairs is adjusting the assessment rates for operating and maintaining the San Carlos Irrigation Project for 1998. The following table illustrates the impact of the rate adjustment.

SAN CARLOS IRRIGATION PROJECT IRRIGATION RATE PER ASSESSABLE ACRE

| | 1997 | 1998 |
|---|---|---|
| Rate | $30.00 | $20.00 |

**COMMENTS:** On September 17, 1997, the Bureau of Indian Affairs published a notice in the **Federal Register**, 62 FR 44992, proposing to adjust the assessment rates for operating and maintaining the San Carlos Irrigation Project, Arizona, for 1998, 1999, and subsequent years. The notice of proposed rate adjustment provided a thirty (30) day public comment period. No comments were received for the proposed adjustment to the assessment for 1998.

**FOR FURTHER INFORMATION CONTACT:** Area Director, Bureau of Indian Affairs, Phoenix Area Office, P.O. Box 10, Phoenix, Arizona 85001, telephone (602) 379–6956.

**DATES:** The new irrigation assessment rate for 1998 will become effective upon publication of this notice.

**SUPPLEMENTARY INFORMATION:** The authority to issue this document is vested in the Secretary of the Interior by 5 U.S.C. 301 and the Act of August 15, 1914 (38 Stat. 583, 25 U.S.C. 385). The Secretary has delegated this authority to the Assistant Secretary-Indian Affairs pursuant to part 209 Departmental Manual, Chapter 8.1A and Memorandum dated January 25, 1994, from Chief of Staff, Department of the Interior, to Assistant Secretaries, and Heads of Bureaus and Offices.

This notice is given in accordance with Section 171.1(e) of part 171, Subchapter H, Chapter 1, of Title 25 of the Code of Federal Regulations, which provides for fixing and announcing the rates for annual operation and maintenance assessments and related information for BIA operated and owned irrigation projects.

The assessment rates are based on an estimate of the cost of normal operation and maintenance of the irrigation project. Normal operation and maintenance means the expenses we incur to provide direct support or benefit to the project's activities for administration, operation, maintenance, and rehabilitation. We must include at least:

(a) Personnel salary and benefits for the project engineer/manager and our employees under his/her management control;

(b) Materials and supplies;

(c) Major and minor vehicle and equipment repairs;

(d) Equipment, including transportation, fuel, oil, grease, lease and replacement;

(d) Capitalization expenses;

(e) Acquisition expenses, and

(f) Other expenses we determine necessary to properly perform the activities and functions characteristic of an irrigation project.

### Payments

The irrigation operation and maintenance assessments become due based on locally established payment requirements. No water shall be delivered to any of these lands until all irrigation charges have been paid.

### Interest and Penalty Fees

Interest, penalty, and administrative fees will be assessed, where required by law, on all delinquent operation and maintenance assessment charges as prescribed in the Code of Federal Regulations, Title 4, Part 102, Federal Claims Collection Standards; and 42 BIAM Supplement 3, part 3.8 Debt Collection Procedures. Beginning 30 days after the due date interest will be assessed at the rate of the current value of funds to the U.S. Treasury. An administrative fee of $12.50 will be assessed each time an effort is made to collect a delinquent debt; a penalty charge of 6 percent per year will be charged on delinquent debts over 90 days old and will accrue from the date the debt became delinquent. After 180 days a delinquent debt will be forwarded to the United States Treasury for further action in accordance with the Debt Collection Improvement Act of 1996 (Public Law 104-134).

### Executive Order 12988

The Department has certified to the Office of Management and Budget (OMB) that this rate adjustment meets the applicable standards provided in sections 3(a) and 3(b)(2) of Executive Order 12988.

### Executive Order 12866

This rate adjustment is not a significant regulatory action and has been reviewed by the Office of Management and Budget under Executive Order 12866.

### Regulatory Flexibility Act

This rate making is not a rule for the purposes of the Regulatory Flexibility Act because it is ''a rule of particular applicability relating to rates.'' 5 U.S.C. § 601(2).

### Executive Order 12630

The Department has determined that this rate adjustment does not have significant ''takings'' implications.

### Executive Order 12612

The Department has determined that this rate adjustment does not have significant Federalism effects because it pertains solely to Federal-tribal relations and will not interfere with the roles, rights, and responsibilities of states.

### NEPA Compliance

The Department has determined that this rate adjustment does not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement is required under the National Environmental Policy Act of 1969.

### Paperwork Reduction Act of 1995

This rate adjustment does not contain collections of information requiring approval under the Paperwork Reduction Act of 1995.

### Unfunded Mandates Act of 1995

This rate adjustment imposes no unfunded mandates on any governmental or private entity and is in compliance with the provisions of the Unfunded Mandates Act of 1995.

Dated: March 5, 1998.

**Kevin Gover,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. 98–6665 Filed 3–13–98; 8:45 am]

BILLING CODE 4310–02–P

---

## DEPARTMENT OF THE INTERIOR

## Bureau of Land Management

**[UT–020–1020–00]**

## Pelican Lake/Ouray National Wildlife Refuge Plan Amendment; Environmental Statement

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of availability of proposed plan amendment

---

**SUMMARY:** The Bureau of Land Management (BLM), Vernal Field Office has completed an Environmental Assessment (EA)/Finding of No Significant Impact (FONSI) of the Proposed Pelican Lake/Ouray National Wildlife Refuge Plan Amendment to the Diamond Mountain Resource Area Resource Management Plan (DMRA–RMP). The Proposed Plan Amendment would modify existing DMRA–RMP management prescriptions within the plan amendment area through reclassification of about 2,197.64 acres of public land from their current classification as Level 4, open management land and unclassified land to Level 3, active management land; about 754.75 acres of public land within the plan amendment area are currently classified as Level 3, open management land. The 160 acres of public land currently classified as Level 1, restricted management land and 1,794.66 acres of public land currently classified as Level 2, careful management land would not be reclassified. Multiple use of the public land within the proposed plan amendment area would continue in a manner that is compatible, to the extent possible, with the objectives of the Ouray National Wildlife Refuge (Refuge). Future management would focus on curbing or restricting activities or land uses which, if not mitigated, may contribute to or exacerbate the selenium problem currently affecting the Refuge.

The proposed plan amendment would enhance the BLM's ability to provide for economic growth through multiple use as well as provide additional protection for sensitive resources.

**DATES:** The protest period for this Proposed Plan Amendment will commence with the date of publication of this notice and last for 30 days. Protests must be received on or before March 16, 1998.

**ADDRESS:** Protests must be addressed to the Director (WO–210), Bureau of Land Management, Attn: Brenda Williams, 1849 C Street, N.W., Washington, D.C. 20240 within 30 days after the date of publication of this Notice of Availability.

**FOR FURTHER INFORMATION CONTACT:** Peter Kempenich, Natural Resource Specialist, Vernal Field Office, at 170 South 500 East, Vernal, Utah 84078, (435) 781–4432. Copies of the proposed Plan Amendment EA are available for review at the Vernal Field Office.

**SUPPLEMENTARY INFORMATION:** This action is announced pursuant to Section 202(a) of the Federal Land Policy and Management Act (1976) and 43 CFR Part 1610. This Proposed Amendment is subject to protests by any party who has participated in the planning process. Protest must be specific and contain the following information:

—The name, mailing address, phone number, and interest of the person filing the protest

—A statement of the issue(s) being protested

—A statement of the part(s) of the proposed amendment being protested and citing pages, paragraphs, maps et cetera, of the Proposed Plan Amendment

—A copy of all documents addressing the issue(s) submitted by the protestor during the planning process or a reference to the date when the