of threats to the species, this should safeguard the species from extinction caused by highly localized events. Long-term maintenance of *ex situ* populations will also help ensure the species' survival.

### Public Information Solicited

The Service solicits public comments on the recovery plan described. All comments received by the date specified will be considered prior to approval of the plan. Written comments and materials regarding the plan should be addressed to the Field Supervisor (see ADDRESSES section). Comments and materials received will be available, by appointment, for public inspection during normal business hours at the above address.

**Authority:** The authority for this action is section 4(f) of the Endangered Species Act, 16 U.S.C. 1533(f).

Dated: November 7, 2003.

**Richard O. Bennett,**

*Acting Regional Director, Region 5, Fish and Wildlife Service, Department of the Interior.*

[FR Doc. 03–30254 Filed 12–4–03; 8:45 am]

BILLING CODE 4310–55–P

---

## DEPARTMENT OF THE INTERIOR

## Geological Survey

## Request for Public Comments on Information Collection Submitted to the Office of Management and Budget for Review Under the Paperwork Reduction Act

A request extending the collection of information has been submitted to the Office of Management and Budget for approval under the provisions of the Paperwork Reduction Act (44 U.S.C. Chapter 35). Copies of the proposed collection of information and related forms may be obtained by contacting the USGS Clearance Officer at the phone number listed below. OMB has up to 60 days to approve or disapprove the information collection but may respond after 30 days; therefore, public comments should be submitted to OMB within 30 days in order to assure their maximum consideration. Address your comments and suggestions on the information collection requirement by either fax (202) 395–6566 or e-mail (*oira_docket@omb.eop.gov*) to the Office of Information and Regulatory Affairs, Office of Management and Budget, Attention: Desk Officer for the Department of the Interior (OMB Control Number 1028–0060). Send copies of your comments and suggestions to the USGS Clearance Officer, U.S. Geological Survey, 807 National Center, Reston, VA 20192.

As required by OMB regulations at CFR 1320.8(d)(1), the U.S. Geological Survey solicits specific public comments regarding the proposed information collection as to:

1. Whether the collection of information is necessary for the proper performance of the functions of the USGS, including whether the information will have practical utility;
2. The accuracy of the USGS estimate of the burden of the collection of information, including the validity of the methodology and assumptions used;
3. The utility, quality, and clarity of the information to be collected; and,
4. How to minimize the burden of the collection of information on those who are to respond, including the use of appropriate automated electronic, mechanical, or other forms of information technology.

*Title:* Mine, Development, and Mineral Exploration Supplement.

*Current OMB approval number:* 1028–0060.

*Abstract:* Respondents supply the U.S. Geological Survey with domestic production, exploration, and mine development data on nonfuel mineral commodities. This information will be published as an Annual Report for use by Government agencies, industry, and the general public.

*Bureau form number:* 9–4000–A.

*Frequency:* Annual.

*Description of respondents:* Nonfuel Mineral Producers and Exploration Operations.

*Annual Responses:* 754.

*Annual burden hours:* 566.

*Bureau clearance officer:* John E. Cordyack, Jr., (703) 648–7313.

**John H. DeYoung, Jr.,**

*Chief Scientist, Minerals Information Team.*

[FR Doc. 03–30196 Filed 12–4–03; 8:45 am]

BILLING CODE 4310–Y7–M

---

## DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

## Rate Adjustments for Indian Irrigation Facilities

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of rate adjustments.

---

**SUMMARY:** The Bureau of Indian Affairs (BIA) owns or has an interest in irrigation facilities located on various Indian reservations throughout the United States. The BIA establishes irrigation assessment rates to recover its costs to administer, operate, maintain, and rehabilitate certain of those facilities. We are notifying you that we have adjusted the irrigation assessment rates at several of our irrigation facilities where we are required to recover our full costs of operation and maintenance.

**EFFECTIVE DATE:** The irrigation assessment rates shown in the tables were effective on January 1, 2003.

**FOR FURTHER INFORMATION CONTACT:** For details about a particular BIA irrigation facility, please use the tables in the SUPPLEMENTARY INFORMATION section to contact the regional or agency office where the facility is located.

**SUPPLEMENTARY INFORMATION:** A Notice of Proposed Rate Adjustment was published in the **Federal Register** on January 9, 2003 (68 FR 1191), to adjust the irrigation rates at several BIA irrigation facilities. The public and interested parties were provided an opportunity to submit written comments during the 60-day period subsequent to January 9, 2003.

### Did the BIA Receive any Comments on the Proposed Irrigation Assessment Rate Adjustments?

Written comments were received for: (a) Fort Belknap Irrigation Project, Montana; (b) Wapato Irrigation Project, Washington; and (c) Wind River Irrigation Project, Wyoming.

### What Issues Were of Concern by the Commentators?

The commentors were concerned with one or more of the following three issues: (1) Consultation with stakeholders; (2) how funds collected from stakeholders are expended on operation and maintenance; and (3) the impact of an assessment rate increase on the local agricultural economy.

### How Does BIA Respond to the Concern of Consultation with Stakeholders?

Consultations between stakeholders and any of the BIA irrigation facilities are ongoing through local meetings held periodically at different locations convenient to the stakeholders of the individual irrigation facilities. At these consultation meetings, any issue of concern by a stakeholder can be brought up and discussed such as water operations, facility maintenance, and financial management. Stakeholders also can contact BIA representatives at the specific facility serving them using the tables in the SUPPLEMENTARY INFORMATION section to discuss issues of concern.

**How Does BIA Respond to the Concern of How Funds Are Expended for Operation and Maintenance?**

The BIA's records for expenditures on all of its irrigation facilities are public records and available for review by stakeholders or interested parties. These records can be reviewed during normal business hours at the individual agency offices. To review these records, stakeholders and interested parties are directed to contact the BIA representative at the specific facility serving them using the tables in the SUPPLEMENTARY INFORMATION section.

**How Does BIA Respond to the Concern of an Irrigation Assessment Rate Increase and its Impact on the Local Agricultural Economy?**

All of the BIA's irrigation projects are important economic contributors to the local communities they serve, contributing millions in crop value annually. Historically, BIA tempered irrigation rate increases to demonstrate sensitivity to the economic impact on water users. This has resulted in a rate deficiency at most of the irrigation projects.

Over the past several years the BIA's irrigation program has been the subject of several Office of Inspector General (OIG) audits. In the most recent audit, No. 96–I–641, March 1996, the OIG concluded, "Operation and maintenance revenues were insufficient to maintain the projects, and some projects had deteriorated to the extent that their continued capability to deliver water was in doubt. This occurred because operation and maintenance rates were not based on the full cost of delivering water, including the costs of systematically rehabilitating and replacing project facilities and equipment, and because project personnel did not seek regular rate increases to cover the full cost of operation." This audit recommendation is still outstanding.

A previous OIG audit, No. 88–42, February 1988, reached the same conclusion. A separate audit performed on the Wapato Irrigation Project, No. 95–I–1402, September 1995, reinforced the general findings of the OIG on the BIA's irrigation program. This pointed out a lack of response by the BIA to the original findings of the OIG in addressing this critical issue over an extended period of time. The BIA must systematically review and evaluate irrigation assessment rates and adjust them when necessary to reflect the full costs to properly operate, and perform all appropriate maintenance on, the irrigation facility infrastructure for safe and reliable operation. If this review and evaluation is not accomplished, a rate deficiency can eventually accumulate. Overcoming rate deficiencies can result in the BIA having to raise irrigation assessment rates in larger increments and over shorter time frames than would have been otherwise necessary.

**Does the BIA Have Any Proposed Rate Adjustments That Were Not Put Into Effect?**

The proposed rate adjustment for the 2003 irrigation season at the Wind River Irrigation Project from $12.00 to $13.00 was not put into effect. After further consultation with the stakeholders, the BIA agreed to delay the proposed rate adjustment until the 2004 irrigation season. For the 2004 irrigation season a rate adjustment from $12.00 to $14.00 is proposed to make up the lost revenue for the 2003 irrigation season. The proposed rate adjustment is in a separate notice.

**Where Can I Get Information on the Regulatory and Legal Citations in This Notice?**

You can contact the individuals listed in the contact tables below or you can use the Internet site for the Government Printing Office at *http://www.gpo.gov*.

**What Authorizes Us To Issue This Notice?**

Our authority to issue this document is vested in the Secretary of the Interior by 5 U.S.C. 301 and the Act of August 14, 1914 (38 Stat. 583; 25 U.S.C. 385). The Secretary has in turn delegated this authority to the Assistant Secretary—Indian Affairs under part 209, chapter 8.1A, of the Department of the Interior's Departmental Manual.

**Does This Notice Affect Me?**

This notice affects you if you own or lease land within the assessable acreage of one of our irrigation facilities, or you have a carriage agreement with one of our irrigation facilities.

**Who Can I Contact for Further Information?**

The following tables list the regional and agency contacts for the irrigation facilities where the BIA recovers its costs for local administration, operation, maintenance, and rehabilitation.

**Northwest Region Contacts**

| | |
|---|---|
| Stanley Speaks, Regional Director<br>Bureau of Indian Affairs, Northwest Regional Office<br>911 N.E. 11th Avenue<br>Portland, Oregon 97232–4169<br>Telephone (503) 231–6702 | |
| Name: | Contacts: |
| Flathead Irrigation Project | Ernest T. Moran, Superintendent,Flathead Agency Irrigation Division,PO Box 40,Pablo, Montana 59855–5555,Telephone: (406) 675–2700. |
| Fort Hall Irrigation Project | Eric J. LaPointe, Superintendent,Fort Hall Agency,PO Box 220,Fort Hall, Idaho 83203–0220,Telephone: (208) 238–2301. |
| Wapato Irrigation Project | Pierce Harrison, Project Administrator,Wapato Irrigation Project,PO Box 220,Wapato, WA 98951–0220,Telephone: (509) 877–3155. |

**Rocky Mountain Region Contacts**

| | |
|---|---|
| Keith Beartusk, Regional Director<br>Bureau of Indian Affairs, Rock Mountain Regional Office<br>316 North 26th Street<br>Billings, Montana 59101.<br>Telephone: (406) 247–7943 | |
| Name: | Contacts: |
| Blackfeet Irrigation Project | Ross Denny, Superintendent,Cliff Hall, Irrigation Manager,Box 880,Browning, MT 59417,Telephones: (406) 338–7544, Superintendent;(406) 338–7519, Irrigation. |

| | |
|---|---|
| Crow Irrigation Project | Gordon Jackson, Superintendent,Dan Lowe, Irrigation Manager, PO Box 69,Crow Agency, MT 59022,Telephones: (406) 638–2672, Superintendent;(406) 638–2863, Irrigation. |
| Fort Belknap Irrigation Project | Cleo Hamilton, Superintendent,Dan Spencer, Irrigation Manager,R.R.1, Box 980,Harlem, MT 59526,Telephones: (406) 353–2901 Superintendent;(406) 353–2905, Irrigation. |
| Fort Peck Irrigation Project | Spike Bighorn, Superintendent,PO Box 637,Poplar, MT 59255,Rhonda Knutsen, Irrigation Manager, 602 6th Avenue North,Wolf Point, MT 59201, Telephones: (406) 768–5312, Superintendent;(406) 653–1752, Irrigation. |
| Wind River Irrigation Project | Steven Pollock, (Acting) Superintendent,Hilare Peck, Irrigation Manager,PO Box 158,Fort Washakie, WY 82514,Telephones: (307) 332–7810, Superintendent;(307) 332–2596, Irrigation. |
| **Southwest Region Contacts** | |
| Rob Baracker, Regional Director<br>Bureau of Indian Affairs, Southwest Regional Office<br>615 First Street, NW<br>Albuquerque, New Mexico 87102<br>Telephone (505) 346–7587 | |
| Name: | Contacts: |
| Pine River Irrigation Project | Michael Stancampiano, Superintendent, Kenneth Caveney, Irrigation Engineer, PO Box 315, Ignacio, CO 81137–0315, Telephones: (970) 563–4511, Superintendent; (970) 563–1017, Irrigation. |
| **Western Region Contacts** | |
| Wayne Nordwall, Regional Director<br>Bureau of Indian Affairs, Western Regional Office<br>PO Box 10<br>Phoenix, Arizona 85001<br>Telephone (602) 379–6600 | |
| Name: | Contacts: |
| Colorado River Irrigation Project | Allen Anspach, Superintendent, R.R. 1, Box 9–C, Parker, AZ 85344, Telephone: (928) 669–7111. |
| Duck Valley Irrigation Project | Paul Young, Superintendent, 1555 Shoshone Circle, Elko, Nevada 89801, Telephone: (775) 738–0569, Superintendent. |
| Fort Yuma Irrigation Project | William Pyott, Land Operations Officer, P.O. Box 11000, Yuma, Arizona, Telephone: (520) 782–1202. |
| San Carlos Irrigation Project Joint Works | Carl Christensen, Irrigation Manager, 13805 N. Arizona Boulevard, Coolidge, AZ 85228, Telephone: (520) 723–6216. |
| San Carlos Irrigation Project Indian Works | Joe Revak, Pima Agency, Land Operations, Box 8, Sacaton, AZ 85247, Telephone: (520) 562–3372. |
| Uintah Irrigation Project | Lynn Hansen, Irrigation Manager, PO Box 130, Fort Duchesne, UT 84026, Telephone: (435) 722–4341. |
| Walker River Irrigation Project | Robert Hunter, Superintendent, 1677 Hot Springs Road, Carson City, Nevada 89706, Telephone: (775) 887–3500. |

### What Will BIA Charge for the 2003 Irrigation Seasons?

The rate tables below show how we billed each of our irrigation facilities for the 2003 irrigation season as indicated. An asterisk immediately following the name of the facilities notes the irrigation facilities where rates were adjusted.

NORTHWEST REGION RATE TABLE

| Name | Rate category | 2003 season rate |
|---|---|---|
| Flathead Irrigation Project (See Note #1 below) | Basic per acre | $19.95 |
| Fort Hall Irrigation Project * | Basic per acre | 22.00 |
| Fort Hall Irrigation Project—Minor Units | Basic per acre | 14.00 |
| Fort Hall Irrigation Project—Michaud * | Basic per acre | 30.00 |
| | Pressure per acre | 43.50 |
| Wapato Irrigation Project—Ahtanum Unit * | Billing Charge Per Tract | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge) | 13.00 |
| | Farm unit/land tracts over one acre—per acre | 13.00 |
| Wapato Irrigation Project—Toppenish/Simcoe Units * | Billing Charge Per Tract | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge) | 13.00 |
| | Farm unit/land tract over one acre—per acre | 13.00 |
| Wapato Irrigation Project—Wapato/Satus Unit * | Billing Charge Per Tract | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge) | 51.00 |
| | ‘‘A’’ farm unit/land tracts over one acre—per acre | 51.00 |
| | Additional Works farm unit/land tracts over one acre—per acre | 56.00 |
| | ‘‘B’’ farm unit/land tracts over one acre—per acre | 61.00 |

NORTHWEST REGION RATE TABLE—Continued

| Name | Rate category | 2003 season rate |
|---|---|---|
| | Water Rental Agreement Lands—per acre | 62.00 |

**Note #1.**—The Flathead Irrigation Project assessment rate for the 2004 season was proposed in 68 FR 1191–1196 at $21.45 per acre. This rate is considered implemented for the 2004 season and will be published in the Federal Register notice for the 2004 irrigation season.

ROCKY MOUNTAIN REGION RATE TABLE

| Name | Rate category | 2003 season rate |
|---|---|---|
| Blackfeet Irrigation Project | Basic per acre | $13.00 |
| Crow Irrigation Project | Basic per acre | 16.00 |
| Fort Belknap Irrigation Project | Indian per acre | 7.00 |
| | Non-Indian per acre | 14.00 |
| Fort Peck Irrigation Project | Basic per acre | 14.00 |
| Wind River Irrigation Project | Basic per acre | 12.00 |

WESTERN REGION RATE TABLE

| Project name | Rate category | 2003 season rate |
|---|---|---|
| Colorado River Irrigation Project | Basic per acre up to 5.75 acre-feet | $47.00 |
| | Excess Water per acre foot over 5.75 acre-feet | 17.00 |
| Duck Valley Irrigation Project | Basic per acre | 5.30 |
| Fort Yuma Irrigation Project (See Note #2 below) | Basic per acre up to 5.0 acre-feet | 60.00 |
| | Excess Water per acre-foot over 5.0 acre-feet | 10.50 |
| San Carlos Irrigation Project (Joint Works) | Basic per acre | 20.00 |
| San Carlos Irrigation Project (Indian Works) | Basic per acre | 56.00 |
| Uintah Irrigation Project* | Basic per acre | 11.00 |
| Walker River Irrigation Project | Indian per acre | 7.32 |
| | non-Indian per acre | 15.29 |

**Note #2.**—The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation (Reclamation). The irrigation rate assessed for operation and maintenance are established by Reclamation and are provided for informational purposes only. The BIA only collects the irrigation assessments on behalf of Reclamation.

SOUTHWEST REGION RATE TABLE

| Name | Rate category | 2003 season rate |
|---|---|---|
| Pine River Irrigation Project | Minimum Charge per tract | $25.00 |
| | Basic per acre | 8.50 |

## Consultation and Coordination With Tribal Governments (Executive Order 13175)

The BIA irrigation facilities are vital components of the local agriculture economy of the reservations on which they are located. To fulfill its responsibilities to the tribes, tribal organizations, water user organizations, and the individual water users, the BIA communicates, coordinates, and consults on a continuing basis with these entities on issues of water delivery, water availability, costs of administration, operation, maintenance, and rehabilitation. This is accomplished at the individual irrigation facilities by agency and regional representatives, as appropriate, in accordance with local protocol and procedures. This notice is one component of the BIA's overall coordination and consultation process to provide notice and request comments from these entities on adjusting irrigation assessment rates.

## Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use (Executive Order 13211)

The rate adjustments will have no adverse effects on energy supply, distribution, or use (including a shortfall in supply, price increases, and increased use of foreign supplies) should the proposed rate adjustments be implemented. This is a notice for rate adjustments at BIA owned and operated irrigation facilities, except for the Fort Yuma Irrigation Project. The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation with a portion serving the Fort Yuma Reservation.

## Regulatory Planning and Review (Executive Order 12866)

These rate adjustments are not a significant regulatory action and do not need to be reviewed by the Office of Management and Budget under Executive Order 12866.

## Regulatory Flexibility Act

This rate making is not a rule for the purposes of the Regulatory Flexibility Act because it is ''a rule of particular applicability relating to rates.'' 5 U.S.C. 601(2).

## Unfunded Mandates Act of 1995

These rate adjustments impose no unfunded mandates on any governmental or private entity and are

in compliance with the provisions of the Unfunded Mandates Act of 1995.

**Takings Implications (Executive Order 12630)**

The Department has determined that these rate adjustments do not have significant ''takings'' implications. The rate adjustments do not deprive the public, state, or local governments of rights or property.

**Federalism (Executive Order 13132)**

The Department has determined that these rate adjustments do not have significant Federalism effects because they pertain solely to Federal-tribal relations and will not interfere with the roles, rights, and responsibilities of states.

**Civil Justice Reform (Executive Order 12988)**

In accordance with Executive Order 12988, the Office of the Solicitor has determined that this rule does not unduly burden the judicial system and meets the requirements of sections 3(a) and 3(b)(2) of the Order.

**Paperwork Reduction Act of 1995**

These rate adjustments do not affect the collections of information which have been approved by the Office of Information and Regulatory Affairs, Office of Management and Budget, under the Paperwork Reduction Act of 1995. The OMB Control Number is 1076–0141 and expires April 30, 2006.

**National Environmental Policy Act**

The Department has determined that these rate adjustments do not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement is required under the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4370(d)).

Dated: November 21, 2003.

**Aurene M. Martin,**

*Principal Deputy Assistant Secretary—Indian Affairs.*

[FR Doc. 03–30253 Filed 12–4–03; 8:45 am]

BILLING CODE 4310–W7–P

## DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

## Lytton Rancheria of California Ordinance Governing the Sale, Consumption, and Possession of Alcoholic Beverages

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice.

**SUMMARY:** This notice publishes the Lytton Rancheria of California Liquor Ordinance. The ordinance regulates and controls the distribution, sale, consumption, possession, inspection, licensing, enforcement and legal compliance associated with the introduction of alcohol at the Casino San Pablo premises, Contra Costa County, California.

**EFFECTIVE DATE:** This Ordinance is effective on December 5, 2003.

**FOR FURTHER INFORMATION CONTACT:** Duane T. Bird Bear, Office of Tribal Services, Bureau of Indian Affairs, 1951 Constitution Avenue, NW., MS–320–SIB, Washington, DC 20240, Telephone: (202) 513–7641.

**SUPPLEMENTARY INFORMATION:** Pursuant to the Act of August 15, 1953, Public Law 83–277, 67 Stat. 586, 18 U.S.C. 1161, as interpreted by the Supreme Court in *Rice* v. *Rehner*, 463 U.S. 713 (1983), the Secretary of the Interior shall certify and publish in the **Federal Register** notice of adopted liquor ordinances for the purpose of regulating liquor transactions in Indian Country. The Tribal Council of the Lytton Rancheria of California, also known as the Lytton Band of Pomo Indians, adopted a Tribal Liquor Ordinance on April 10, 2001. The purpose of this ordinance is to govern the distribution, sale, consumption, possession, inspection, licensing, enforcement and legal compliance associated with the introduction of alcohol on the Casino San Pablo premises in the County of Contra Costa, California.

This notice is published in accordance with the authority delegated by the Secretary of the Interior to the Principal Deputy Assistant Secretary—Indian Affairs. Amendments to the ordinance are subject to the approval of the Assistant Secretary for Indian Affairs and shall be published in the **Federal Register** before the amendments become effective.

I certify that the Tribal Liquor Ordinance was duly adopted by the Tribal Council of the Lytton Band of Pomo Indians on April 10, 2001.

Dated: November 21, 2003.

**Aurene M. Martin,**

*Principal Deputy Assistant Secretary—Indian Affairs.*

The Lytton Rancheria of California Liquor Ordinance reads as follows:

**Resolution of the Lytton Rancheria (Lytton Band of Pomo Indians)**

**Adopting an Ordinance Governing the Sale, Consumption, and Possession of Alcoholic Beverages at Lytton's Casino San Pablo**

Whereas: The Lytton Band of Pomo Indians (''the Tribe'') plans to own and operate the Casino San Pablo and to offer Class II and Class III gaming there pursuant to federal and tribal law, a tribal-state compact, and its Municipal Services Agreement with the City of San Pablo; and

Whereas: The Tribe has determined that it is in its best interest for the sale of alcoholic beverages at Casino San Pablo to continue pursuant to state, federal, and tribal law after the Tribe becomes the owner and operator of Casino San Pablo;

*It is therefore resolved that* the Tribe hereby adopts the following Ordinance, to become effective as set forth therein:

**Lytton Rancheria (Lytton Band of Pomo Indians) Contra Costa County, California**

**Sale, Possession, and Consumption of Alcoholic Beverages**

The Tribal Council (hereinafter ''Council'') of the Lytton Rancheria (hereinafter ''Tribe''), also known as the Lytton Band of Pomo Indians, hereby enacts this Ordinance to govern the sale and consumption of alcoholic beverages on Rancheria lands in Contra Costa County, California.

*Preamble*

A. Title 18, United States Code, Section 1161, provides Indian tribes with authority to enact ordinances governing the consumption and sale of alcoholic beverages on their Reservations, provided such ordinance is certified by the Secretary of the Interior and published in the **Federal Register** and such activities are in conformity with state law.

B. Pursuant to Article III of the Tribe's Constitution, the Tribal Council is the governing body of the Tribe. Pursuant to Article XIII of the Constitution, the Tribal Council is empowered to promulgate and enforce tribal laws exercising the Tribe's regulatory authority for the protection of public health and safety (Section 13.1 (f)) and administering all lands and assets and managing all economic affairs, planning and enterprises of the Tribe (Section 13.1(e); and to regulate the conduct of all persons who enter the jurisdiction of the Tribe (Section 13.1(i)).

C. Pursuant to Article I of the Tribe's Constitution, the territorial jurisdiction of the Tribe includes all lands held in