05/21/2003 09:20 SCID RINEY NO.565 003

# SALMON, LEWIS & WELDON, P.L.C.

Attorneys at Law

Riney B. Salmon II, P.C.
John B. Weldon, Jr.
Lisa M. McKnight
James R. Huntwork
Richard N. Morrison
Ronnie P. Hawks

2850 E. Camelback Road, Suite 200
Phoenix, Arizona 85016
Telephone 602-801-9060
Facsimile 602-801-9070

M. Byron Lewis
Stephen E. Crofton
Mark A. McGinnis
Karen S. Gaylord
Kristin D. Magin

May 16, 2003

RECEIVED
MAY 1 9 2003
SAN CARLOS IRRIGATION & DRAINAGE DISTRICT

*Writer's Internet Address*
rbs@slwplc.com

VIA FACSIMILE AND U.S. MAIL

Mr. Robert Carolin
General Manager,
San Carlos Irrigation Project
PO Box 250
Coolidge, AZ 85228

Re: SCIP's Proposed FY 2005 Irrigation Budget

Dear Mr. Carolin:

This letter contains the San Carlos Irrigation and Drainage District's ("SCIDD") initial comments regarding the proposed FY 2005 Irrigation O&M Budget for the San Carlos Irrigation Project ("SCIP" or the "Project"), as set forth in your letter dated April 18, 2003. The 1931 SCIDD Repayment Contract provides that the United States and SCIDD inform and consult with each other as to contemplated future steps of importance. Pursuant to this provision, SCIDD submits these comments on the proposed budget and assessment.

Over the past several years, SCIDD has provided SCIP with information and comments on each year's budget. Despite expressing a willingness to engage in a meaningful dialogue with SCIDD, SCIP has largely ignored many of SCIDD's substantive comments and concerns. SCIP has occasionally reduced the assessments from what SCIP has initially proposed. Those reductions, however, have come as a result of dipping into the large cash surpluses that SCIP represented had been built up over the years, rather than as a result of SCIP seriously pursuing the increased efficiencies and cost reductions that SCIDD has consistently urged.

Based upon the "double" accounting error disclosed in your April 18 letter, where the cash available was overstated by $2,000,000, it is clear now that SCIP will no longer be able to reduce the assessments by tapping reserves that do not exist. Instead, the time has come for SCIP to undertake real reform of its budget and operating practices. A combination of the lack of an adequate water supply and the Bureau of Indian Affairs insistence on imposing excessive assessments upon the farmers, proposed now to continue through FY 2005, will I assure you result in many farmers leaving farming and making no assessment payments. SCIP has to will realize that it must become more efficient in order for SCIP, SCIDD, and the farmers to survive. It is with that expectation this SCIDD submits the following comments.

1. FY 2005 Assessment

The proposed budget results in an assessment for FY 2005 of $30/acre. That assessment rate is unacceptable. First and foremost, SCIP does not need $3,000,000 in FY 2005 to accomplish

its assigned tasks. As discussed below, SCIP can reduce its operating costs to a level of $15/acre. Also, the SCIDD farmers cannot afford to pay an assessment of $30/acre for FY 2005. The Gila River Watershed is in the depths of an extended drought, and the Project water deliveries are near all-time lows. If there is no water, the farmers cannot farm. If they cannot farm, there is no money. SCIDD and its farmers have had to significantly reduce their own overhead and operating costs in this time of crisis. SCIDD, for example, has recently reduced its own staff by almost twenty percent. Individual farmers have cut staff and costs by even greater amounts, in order to survive these tough times. SCIP must do the same. It is revealing to note the substantial difference in personnel costs between SCIDD and SCIP. SCIDD operates and maintain 204 miles of canal system with nineteen employees on a $4,369 budget per mile. SCIP, on the other hand, proposes to operate and maintain forty miles of canal system with twenty-six employees and on a $22,234 budget per mile.

The attached worksheets, together with the details contained in this letter, show that SCIP can set the FY 2005 assessment at $15/acre and still maintain appropriate cash reserves at year-end by, among other things, reducing personnel; eliminating the cost of power for pumping; contributing Power Division revenues previously applied to repayment of the Power construction debt; and postponing and restudying the need for construction of new wells and rehabilitation work on the China Wash Flume. Although this will require staff reduction and belt-tightening, such measures are absolutely necessary for all entities to survive in the current economic climate.

2. <u>Prior Accounting Error</u>

SCIDD was dismayed to learn of the SCIP "double-accounting" error that apparently has existed for "a number of years." Frankly, it is difficult for us to believe that such an avoidable error could have been in place for an extended period of time without being uncovered by the Project accountants or management. That error has had significant consequences for the SCIP budget and the Project farmers.

At various times over the past several years, SCIDD has agreed to expenditures by SCIP to which SCIDD never would have agreed had SCIDD realized the actual financial position the Project was in. The double counting of assessment payments resulted in a cash surplus figure that was artificially inflated. Therefore, instead of moving forward and accumulating additional cash at the end of each year, it appears that SCIP rather was spending much of its cash on personnel and other operating expenses.

It would be patently unfair to now expect the Project farmers to pay a substantially elevated FY 2005 assessment simply to make up for the Project's own gross negligence. If a sacrifice must be made as the result of that negligence, that sacrifice must be made by the parties responsible, not the Project farmers.

3. <u>GRIC Excess Pumping</u>

The proposed budget appears to include an FY 2003 power for pumping expense of approximately $206,000 for "excess" water pumping by the Gila River Indian Community ("GRIC"), over and above the pumping allowed within GRIC's water apportionment. The budget includes a corresponding projected "Miscellaneous Income" of approximately $381,000 for GRIC's payment for such pumping.

SCIDD strongly objects to these budget items. GRIC has no legal right to engage in "excess" pumping, which is, by definition, in violation of the Project apportionments. SCIDD consented to allow GRIC to pump 3,000 ac-ft in excess of its apportionment for fiscal year 2002. That consent however, was based on SCIDD receiving a compensating larger amount of the water stored at Coolidge Dam. This, however, still did not give SCIDD additional water over and above its apportionment like GRIC received. Furthermore, this consent was expressly not intended to mean that SCIDD would ever again agree to such "excess" pumping. SCIDD objects to any such pumping in FY 2003 or any future years.

Each of the Project beneficiaries should be allowed to pump or divert their joint share of the common Project water supply. To allow GRIC to take an "excess" share of the common water supply over and above the apportionment by pumping violates the most basic tenets upon which the Project was founded. SCIDD will not agree to allow GRIC to engage in "excess" pumping. SCIDD insists that the expense and income items for GRIC "excess" pumping be deleted from the budget.

4. Power for Pumping

Even aside from the amount included for GRIC "excess" pumping, the proposed FY 2005 budget also includes approximately $435,000 for power for pumping. SCIDD continues to object to this expense category. The purpose of creating the SCIP power system was to generate electricity and money to help reduce the cost of delivering irrigation water to the Project farmers. The power infrastructure at Coolidge Dam has been inoperable for almost twenty years due to SCIP's own negligence, not due to any action or lack of action by the Project beneficiaries. It is inherently unfair and contrary to the purposes of the Project for the beneficiaries to be penalized for the Government's negligence by continuing to pay for power that otherwise would have been generated at Coolidge Dam. SCIDD requests that the entire budget item for power for pumping be deleted from the budget and that this expense by covered by Power Division revenues or other Government funds.

5. Use of Construction Repayment Funds

The proposed FY 2005 budget also overlooks a significant source of cash that should be directed toward Irrigation O&M. For the last several decades, the Project, on behalf of the beneficiaries, has been paying off the cost of constructing the SCIP power system. Those payments have amounted to approximately $479,000 per year.

The remaining balance on that power construction debt is now $42,956.38. Thus, the FY 2003 payment should retire that balance. The rest of the funds that would have gone to the power construction payment for FY 2003, as well as the entire amount for FY 2004 and beyond, should, according to the relevant repayment contracts and regulations, be credited to the Irrigation Division O&M in order to help reduce the cost of delivering water. The proposed FY 2005 budget makes no accounting for this $479,000 in increased available funds.

The FY 2005 budget should be revised to include an income entry showing the $479,000 credit in power construction repayment funds made available because the power construction debt will have been fully paid off.

6. Well Replacement

For the last several years, SCIDD has objected to the Project setting aside funds for well replacement, especially given the difficult economic climate and the fact that the Project intended to place the wells at locations different from those recommended by its independent consultant. The latest draft of the FY 2005 budget provides no money for well replacement. SCIDD requests that no funds be spent for well replacement in FY 2003, 2004 as well as in FY 2005.

7. China Wash Flume Rehabilitation/Replacement

A similar issue exists with respect to the work that needs to be done on the China Wash flume. The proposed FY 2005 budget contains no funds for this work, but the FY 2004 budget continues to set aside $351,000 for this task. The budget item should be removed from the FY 2004 budget. It has been several years since the initial reconnaissance work was done on the China Wash job. Based upon a visual inspection of the flume, it appears that less deterioration has occurred in the interim than was projected by the original survey. Rather than budget $351,000 to perform the actual work in FY 2004, a much smaller budget amount should be included for FY 2004 so that the Project can retain a qualified consultant to revisit the need for such work and the timing of that need.

The China Wash project was one of the repairs to which SCIDD previously agreed as a result of the fact that SCIDD was led to believe that the Project was in sound financial condition and have surplus cash reserves. Given that the Project has now disclosed its accounting error, the work should be deferred if possible. The $351,000 for this work in the FY 2004 budget corresponds to part of the cash reserves, which SCIP has now disclosed are artificially inflated and do not exist.

If the China Wash flume work can be safely put off beyond FY 2005, it should be deferred. Although SCIDD does not disagree that the flume repair or replacement ultimately needs to be done, it would be prudent to postpone that work until a time when more water is available in the reservoir and, thus, more cash is available to the Project.

8. Heavy Equipment Sinking Fund

The proposed FY 2005 budget continues to set aside money in a heavy equipment sinking fund. Like the China Wash work, the money set aside in the heavy equipment sinking funds does not exist, given that the Project has disclosed that its cash surpluses were not as represented.

SCIP has not provided SCIDD with sufficient data or information to justify the inclusion of additional budget money in the heavy equipment sinking fund. No money should be set aside for a heavy equipment sinking fund in the FY 2005 budget.

9. Staffing and Wages

In a letter dated January 10, 1997 from the Acting BIA Area Director Barry Welch, Mr. Welch remanded to SCIP the issue of reducing SCIP's labor costs, and he ordered SCIP to "refine its personnel budget" to more accurately reflect its stated or intended personnel reductions, specifically those personnel working in the pump shop. The proposed FY 2005 budget does not reflect sufficient revisions or reductions in the Project personnel costs.

Two primary problems exist with respect to SCIP staffing and wages. First, the Project has many more employees than are necessary to accomplish its assigned tasks. Especially during this time of drought and difficult finances, SCIP must take a hard look at how many employees it needs. As stated above, SCIDD has recently reviewed its own staffing requirements and has reduced its work force by almost twenty percent. The Project needs to do the same.

If there is no water, there is substantially less work for irrigation employees. SCIP has been assuring SCIDD since 1997 that the pump shop was going to be eliminated, but that elimination has not occurred. Rather, SCIP has out-sourced most of the pump-related work (incurring an additional expense) and still kept on the same employees who did that work in the first place. It is now 2003 and the Project is still paying for the pump shop employees and the outside contractors to do the same work. This redundant staffing has cost SCIP at least $250,000 per year every year since 1997. The pump shop should immediately be eliminated in its entirety.

In addition, some time ago, the Project hired extra irrigation system operators (zanjeros) to cover the SCIP canal operations twenty-four hours a day, seven days a week. That action was initially intended to be on a trial basis. It was undertaken in response to GRIC's allegations that SCIDD farmers were illegally taking water from unmeasured diversions out of Project canals. This false accusation has now been proven wrong. This trial plan also has cost the Project approximately $70,000 per year since it was initiated.

Now that everyone should be satisfied that no water is being stolen, continuation of the two additional zanjeros are unnecessary and imprudent. With little or no water behind Coolidge Dam this year, SCIP should eliminate two zanjeros positions and have no more than two zanjeros, plus a supervisor. It is not necessary to have as many operations personnel in times of drought as it is when more water is flowing.

SCIP also needs to make substantial cuts in other staffing areas, in consideration of the lack of water and the financial issues. At least one equipment operator should be eliminated. If additional help is needed, the Project can hire a temporary employee to cover for brief periods. SCIP also needs to reduce the personnel at Coolidge Dam. With no water in storage, not much work is left to do at the dam.

Second, in addition to having too many employees, the Project also pays its employees well above the going wage rates for the local area. In 2002, SCIDD performed such a study of local wage rates, and this comparison revealed that SCIP employees routinely make one and a half to two times more than employees in the same trade working for other entities within Pinal County. SCIDD has provided the Project with a copy of this study as part of the FY 2004 budget process. If you would like another copy, please let me know. SCIP must sharply reduce the wages it pays to operators, mechanics, zanjeros, welders, dam operators, and pump shop riggers, so that those wages more closely resemble the average wage paid by other entities in the area. To continue on the same level of personnel and wages in spite of the existing circumstances is arbitrary, capricious, and a breach of the Landowners' Agreement and the 1931 Repayment Contract.

The revisions in Project staffing and wages shown in the attached spreadsheet would reduce the personnel costs in the FY 2005 proposed budget from $921,000 to $682,000. SCIDD insists that the SCIP institute those revisions and reduce the FY 2005 budget accordingly.

10. **Litigation Defense Costs**

In the past, money has been taken from SCIP funds for legal defense costs of the Endangered Species Act lawsuit filed by the San Carlos Apache Tribe. These are not legitimate operation and maintenance costs of SCIP for SCIDD farmers to pay. The Act does not impose these costs upon SCIP or the Project beneficiaries There is no contract between the United States and SCIDD that requires SCIDD to pay any such costs on any basis. The Bureau of Indian Affairs has no legal grounds upon which to impose these costs on SCIDD or its farmers. All of these costs should be paid by the BIA and not paid from SCIP funds in any year.

11. **Archaeology Study**

The proposed FY 2003, 2004 and 2005 budgeted amount includes $50,000, $51,500 and $53,045, respectively, for the archeological study of the so-called "bathtub ring" around San Carlos Lake. This was apparently done at the insistence of the San Carlos Apache Tribe. As it has in the past, SCIDD strongly opposes any contention that any portion of the costs of this study should come from the SCIP Irrigation budget. Money spent on this study adds no value to the Project or the efficient delivery of water to SCIDD or GRIC. The cost of those studies should be paid by either the Apache Tribe or the federal government.

12. **Expense and Service Accounting**

The Project continues to need to do a better job at accounting for all of its expenses, services, and equipment. For example, in the proposed FY 2005 budget, garbage pickup and fire protection from the City of Coolidge appears twice, in the utilities section and in the services section. It is this same lack of attention to detail that allowed the "double-accounting" error to occur and persist. The Project needs to make a special effort to upgrade its accounting and supervision.

SCIDD requests that SCIP provide us with back-up information for all services and utilities expenses included in the FY 2005 budget. SCIDD intends to review this information for accuracy, as well as to determine what percentage of joint expenses the Irrigation Division is being charged.

SCIDD is also concerned about the Project's failure to properly track its equipment inventory. When Irrigation Division equipment is used for Power Division purposes, an inter-division charge should be made to account for that fact, and that charge should properly include equipment time and fuel.

Perhaps even more seriously, SCIDD is concerned about the Project's apparent practice of loaning equipment to other Bureau of Indian Affairs entities or to third parties. It is SCIDD's understanding, for example, that a piece of Irrigation Division equipment was recently lent to the Apache Tribe, who ultimately sold the equipment. This practice is unacceptable. If the equipment was sold, to whom were the proceeds directed? The entirety of the sale proceeds should have been deposited in a SCIP account. The equipment should not have been lent out in the first place. Because SCIDD paid for a portion of all the equipment, the Project should not unilaterally lend out equipment to other entities without first obtaining the consent of SCIDD. If the equipment is not needed at SCIP, it should be traded in or sold. If it is needed at SCIP, it should be retained and not lent to other entities. As with inter-division loans of equipment the Irrigation Division should be fully compensated for the use of its equipment by third parties.

SCIDD requests that the Project provide a full accounting of all Irrigation Division equipment loans over the past five years, including (1) when such loan occurred, (2) to whom the loan was made, (3) how the Irrigation Division was compensated for the loan, (4) whether the equipment was sold, and (4) the destination of the proceeds from any such sales.

## I. Conclusion

The proposed FY 2005 budget contains many of the same problems SCIP has had in the past, including no or inadequate documentation, no real regard for labor costs, and spending levels that do not take into account the availability of water or the current economic situation. This mindset needs to stop. SCIP should and must realize that the Project cannot survive absent its two beneficiaries—GRIC and SCIDD. The Project must become more responsive to the needs and opinions of its beneficiaries and more flexible to change in tough economic times.

The attached worksheets offer a strategy for the SCIP Irrigation Division to take control of its costs and to become economically viable. SCIDD requests that you review these worksheets carefully and consider the issues raised therein.

We look forward to meeting with you and the Project staff on this matter at the fact-finding meeting schedule for Friday, May 23, 2003. A written response to this letter in time for review before the meeting would be appreciated. Thank you.

Very truly yours,

Salmon, Lewis & Weldon, P.L.C.

By Riney B. Salmon II

RBS:sdh

Cc: Congressman Rick Renzi
Rod Lewis
Carl Christiansen at the San Carlos Irrigation Project
San Carlos Irrigation and Drainage District