56302 Federal Register / Vol. 68, No. 189 / Tuesday, September 30, 2003 / Notices

## DEPARTMENT OF HOMELAND SECURITY

### Bureau of Immigration and Customs Enforcement

### Agency Information Collection Activities: Comment Request

**ACTION:** 60-Day Notice of Information Collection Under Review; Application for USAccess; Form I–923.

The Department of Homeland Security (DHS), Bureau of Immigration and Customs Enforcement, has submitted the following information collection request for review and clearance in accordance with the Paperwork Reduction Act of 1995. Customs and Border Protection has proposed a new collection of information; Form I–923, entitled Application for USAccess (U.S. Automated Check-in, Clearance, and Entry Support Services). This collection will be used to enroll applicants in the USAccess pilot program to prescreen applicants in order to expedite U.S. citizens seeking admission to the Washington/Dulles International Airport (IAD) arriving from London/Heathrow Airport (LHR). The proposed information collection is published to obtain comments from the public and affected agencies. Comments are encouraged and will be accepted for sixty days until December 1, 2003.

Written comments and suggestions from the public and affected agencies concerning the proposed collection of information should address one or more of the following four points:

(1) Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

(2) Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

(3) Enhance the quality, utility, and clarity of the information to be collected; and

(4) Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

Overview of this information collection:

(1) *Type of Information Collection:* New information collection.

(2) *Title of the Form/Collection:* Application for USAccess.

(3) *Agency form number, if any, and the applicable component of the Department of Justice sponsoring the collection:* Form I–923, Bureau of Immigration and Customs Enforcement, Department of Homeland Security.

(4) *Affected public who will be asked or required to respond, as well as a brief abstract:* Primary: Individuals or Households. The information collected on this form will be used by the DHS to determine eligibility for automated inspections programs and to secure those data elements necessary to confirm enrollment at the time of application for admission to the United States.

(5) *An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond:* 3,000 responses at 66 minutes (1.10 hours) per response.

(6) *An estimate of the total public burden (in hours) associated with the collection:* 3,300 annual burden hours.

If you have additional comments, suggestions, or need a copy of the proposed information collection instrument with instructions, or additional information, please contact Richard A. Sloan, 202–514–3291, Director, Regulations and Forms Services Division, Bureau of Immigration and Customs Enforcement, U.S. Department of Homeland Security, Room 4304, 425 I Street, NW., Washington, DC 20536. Additionally, comments and/or suggestions regarding the item(s) contained in this notice, especially regarding the estimated public burden and associated response time may also be directed to Mr. Richard A. Sloan.

If additional information is required contact: Ms. Theresa M. O'Malley, Chief Information Officer, Department of Homeland Security, Regional Office Building 3, 7th and D Streets, SW., Room 4636–26, Washington, DC 20202.

Dated: September 23, 2003.

**Richard A. Sloan,**

*Department Clearance Officer, U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement.*

[FR Doc. 03–24630 Filed 9–29–03; 8:45 am]

BILLING CODE 4410–10–M

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### Rate Adjustments for Indian Irrigation Projects

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of proposed rate adjustments.

**SUMMARY:** The Bureau of Indian Affairs (BIA) owns, or has an interest in, irrigation facilities located on various Indian reservations throughout the United States. We are required to establish rates to recover the costs to administer, operate, maintain, and rehabilitate those facilities. We request your comments on the proposed rate adjustments.

**DATES:** Interested parties may submit comments on the proposed rate adjustments on or before December 1, 2003.

**ADDRESSES:** All comments on the proposed rate adjustments must be in writing and addressed to: Jeff Loman, Acting Director, Office of Trust Responsibilities, Attn.: Irrigation and Power, MS–3061–MIB, Code 210, 1849 C Street, NW., Washington, DC 20240, Telephone (202) 208–5480.

**FOR FURTHER INFORMATION CONTACT:** For details about a particular irrigation project, please use the tables in **SUPPLEMENTARY INFORMATION** section to contact the regional or local office where the project is located.

**SUPPLEMENTARY INFORMATION:** The tables in this notice list the irrigation project contacts where the BIA recovers its costs for local administration, operation, maintenance, and rehabilitation, the current irrigation assessment rates, and the proposed rates for the 2004 irrigation season and subsequent years where applicable.

### What Are Some of the Terms I Should Know for This Notice?

The following are terms we use that may help you understand how we are applying this notice.

*Administrative costs* mean all costs we incur to administer our irrigation projects at the local project level. Local project level does not normally include the Agency, Region, or Central Office costs unless we state otherwise in writing.

*Assessable acres* mean lands designated by us to be served by one of our irrigation projects and to which we provide irrigation service and recover our costs. (*See Total assessable acres.*)

*BIA* means the Bureau of Indian Affairs.

*Bill* means our statement to you of the assessment charges and/or fees you owe the United States for administration, operation, maintenance, and/or rehabilitation. The date we mail or hand deliver your bill will be stated on it.

*Costs* mean the costs we incur for administration, operation, maintenance,

and rehabilitation to provide direct support or benefit to an irrigation facility.

*Customer* means any person or entity that we provide irrigation service to.

*Due date* is the date on which your bill is due and payable. This date will be stated on your bill.

*I, me, my, you, and your* means all interested parties, especially persons or entities that we provide irrigation service to and receive beneficial use of our irrigation projects affected by this notice and our supporting policies, manuals, and handbooks.

*Irrigation project* means, for the purposes of this notice, the facility or portions thereof, that we own, or have an interest in, including all appurtenant works, for the delivery, diversion, and storage of irrigation water to provide irrigation service to customers for whom we assess periodic charges to recover our costs to administer, operate, maintain, and rehabilitate. These projects may be referred to as facilities, systems, or irrigation areas.

*Irrigation service* means the full range of services we provide customers of our irrigation projects, including, but not limited to, water delivery. This includes our activities to administer, operate, maintain, and rehabilitate our projects.

*Maintenance costs* mean all costs we incur to maintain and repair our irrigation projects and equipment of our irrigation projects and is a cost factor included in calculating your operation and maintenance (O&M) assessment.

*Must* means an imperative or mandatory act or requirement.

*Operation and maintenance (O&M) assessment* means the periodic charge you must pay us to reimburse our costs.

*Operation or operating costs* mean costs we incur to operate our irrigation projects and equipment and is a cost factor included in calculating your O&M assessment.

*Past due bill* means a bill that has not been paid by the close of business on the 30th day after the due date, as stated on the bill. Beginning on the 31st day after the due date we begin assessing additional charges accruing from the due date.

*Rehabilitation costs* mean costs we incur to restore our irrigation projects or features to original operating condition or to the nearest state which can be achieved using current technology and is a cost factor included in calculating your O&M assessment.

*Total assessable acres* mean the total acres served by one of our irrigation projects.

*Total O&M cost* means the total of all the allowable and allocatable costs we incur for administering, operating, maintaining, and rehabilitating our irrigation projects serving your farm unit.

*Water* means water we deliver at our projects for the general purpose of irrigation and other purposes we agree to in writing.

*Water delivery* is an activity that is part of the irrigation service we provide our customers when water is available.

*We, us, and our* means the United States Government, the Secretary of the Interior, the BIA, and all who are authorized to represent us in matters covered under this notice.

## Does This Notice Affect Me?

This notice affects you if you own or lease land within the assessable acreage of one of our irrigation projects, or you have a carriage agreement with one of our irrigation projects.

## Where Can I Get Information on the Regulatory and Legal Citations in This Notice?

You can contact the appropriate office(s) stated in the tables for the irrigation project that serves you, or you can use the Internet site for the Government Printing Office at *http://www.gpo.gov.*

## Why Are You Publishing This Notice?

We are publishing this notice to notify you that we propose to adjust one or more of our irrigation assessment rates. This notice is published in accordance with the BIA's regulations governing its operation and maintenance of irrigation projects, specifically, 25 CFR 171.1. These sections provide for the fixing and announcing of the rates for annual assessments and related information for our irrigation projects.

## What Authorizes You To Issue This Notice?

Our authority to issue this notice is vested in the Secretary of the Interior by 5 U.S.C. 301 and the Act of August 14, 1914 (38 Stat. 583; 25 U.S.C. 385). The Secretary has in turn delegated this authority to the Assistant Secretary—Indian Affairs under Part 209, Chapter 8.1A, of the Department of the Interior's Departmental Manual and by memorandum dated January 25, 1994, from the Chief of Staff, Department of the Interior, to Assistant Secretaries, and Heads of Bureaus and Offices.

## When Will You Put the Rate Adjustments Into Effect?

We will put the rate adjustments into effect for the 2004 irrigation season and subsequent years where applicable.

## How Do You Calculate Irrigation Rates?

We calculate irrigation assessment rates in accordance with 25 CFR 171.1(f) by estimating the cost of normal operation and maintenance at each of our irrigation projects. The cost of normal operation and maintenance means the expenses we incur to provide direct support or benefit for an irrigation project's activities for administration, operation, maintenance, and rehabilitation. These costs are then applied as stated in the rate table in this notice.

## What Kinds of Expenses Do You Include in Determining the Estimated Cost of Normal Operation and Maintenance?

We include the following expenses:

(a) Personnel salary and benefits for the project engineer/manager and project employees under their management control;

(b) Materials and supplies;

(c) Major and minor vehicle and equipment repairs;

(d) Equipment, including transportation, fuel, oil, grease, lease and replacement;

(e) Capitalization expenses;

(f) Acquisition expenses;

(g) Maintenance of a reserve fund available for contingencies or emergency expenses for, and insuring, reliable operation of the irrigation project; and

(h) Other expenses we determine necessary to properly perform the activities and functions characteristic of an irrigation project.

## When Should I Pay My Irrigation Assessment?

We will mail or hand deliver your bill notifying you of the amount you owe to the United States and when such amount is due. If we mail your bill, we will consider it as being delivered no later than 5 business days after the day we mail it. You should pay your bill no later than the close of business on the 30th day after the due date stated on the bill.

## What Information Must I Provide for Billing Purposes?

We must obtain certain information from you to ensure we can properly process, bill for, and collect money owed to the United States. We are required to collect the taxpayer identification number or social security number to properly bill the responsible party and service the account under the authority of, and as prescribed in, Pub. L. 104–143, the Debt Collection Improvement Act of 1996.

(a) At a minimum, this information is:

(1) full legal name of person or entity responsible for paying the bill;

(2) adequate and correct address for mailing or hand delivering our bill; and

(3) the taxpayer identification number or social security number of the person or entity responsible for paying the bill.

(b) It is your responsibility to ensure we have correct and accurate information for paragraph (a) of this section.

(c) If you are late paying your bill due to your failure to furnish such information or comply with paragraph (b) of this section, you cannot appeal your bill on this basis.

**What Can Happen If I Do Not Provide the Information Required for Billing Purposes?**

We can refuse to provide you irrigation service.

**If I Allow My Bill To Become Past Due, Could This Affect My Water Delivery?**

If we do not receive your payment before the close of business on the 30th day after the due date stated on your bill, we will send you a past due notice. Your bill will have additional information concerning your rights. We will consider your past due notice as delivered no later than 5 business days after the day we mail it. We have the right to refuse water delivery to any of your irrigated land on which the bill is past due. We can continue to refuse water delivery until you pay your bill or make payment arrangements that we agree to. Our authority to demand payment of your past due bill is 31 CFR 901.2, ''Demand for Payment.''

**Are There Any Additional Charges If I Am Late Paying My Bill?**

Yes. We will assess you interest on the amount owed and use the rate of interest established annually by the Secretary of the United States Treasury (Treasury) to calculate what you will be assessed (31 CFR 901.9(b)). You will not be assessed this charge until your bill is past due. However, if you allow your bill to become past due, interest will accrue from the due date, not the past due date. Also, you will be charged an administrative fee of $12.50 for each time we try to collect your past due bill. If your bill becomes more than 90 days past due, you will be assessed a penalty charge of 6 percent per year and it will accrue from the date your bill initially became past due. Our authority to assess interest, penalties, and administration fees on past due bills is prescribed in 31 CFR part 901.9, ''Interest, penalties, and costs.''

**What Else Can Happen to My Past Due Bill?**

If you do not pay your bill or make payment arrangements that we agree to, we are required to send your past due bill to the Treasury for further action. We must send your bill to Treasury no later than 180 days after the original due date of your irrigation assessment bill. The requirement for us to send your unpaid bill to Treasury is prescribed in 31 CFR part 901.1, ''Aggressive agency collection activity.''

**Who Can I Contact for Further Information?**

The following tables are the regional and project/agency contacts for our irrigation facilities.

| Project name | Project/agency contacts |
|---|---|
| **Northwest Region** | |
| Stanley Speaks, Regional Director, Bureau of Indian Affairs, Northwest Regional Office, 911 N.E. 11th Avenue, Portland, Oregon 97232–4169, Telephone: (503) 231–6702. | |
| Flathead Irrigation Project | Ernest T. Moran, Superintendent, Flathead Agency Irrigation Division, PO Box 40, Pablo, Montana 59855–5555, Telephone: (406) 675–2700. |
| Fort Hall Irrigation Project | Eric J. LaPointe, Superintendent, Fort Hall Agency, PO Box 220, Fort Hall, Idaho 83203–0220, Telephone: (208) 238–2301. |
| Wapato Irrigation Project | Pierce Harrison, Project Administrator, Wapato Irrigation Project, PO Box 220, Wapato, WA 98951–0220, Telephone: (509) 877–3155. |
| **Rocky Mountain Region Contacts** | |
| Keith Beartusk, Regional Director, Bureau of Indian Affairs, Rocky Mountain Regional Office, 316 North 26th Street, Billings, Montana 59101, Telephone: (406) 247–7943. | |
| Blackfeet Irrigation Project | Ross Denny, Superintendent, Cliff Hall, Irrigation Manager, Box 880, Browning, MT 59417, Telephones: (406) 338–7544, Superintendent; (406) 338–7519, Irrigation. |
| Crow Irrigation Project | Frank Merchant, Acting Superintendent, Dan Lowe, Irrigation Manager, PO Box 69, Crow Agency, MT 59022, Telephones: (406) 638–2672, Superintendent; (406) 638–2863, Irrigation. |
| Fort Belknap Irrigation Project | Cleo Hamilton, Superintendent, Dan Spencer, Irrigation Manager, R.R.1, Box 980, Harlem, MT 59526, Telephones: (406) 353–2901, Superintendent; (406) 353–2905, Irrigation. |
| Fort Peck Irrigation Project | Spice Bighorn, Superintendent, PO Box 637, Poplar, MT 59255, Rhonda Knudsen, Irrigation Manager, 602 6th Avenue North, Wolf Point, MT 59201, Telephones: (406) 768–5312, Superintendent; (406) 653–1752, Irrigation. |
| Wind River Irrigation Project | Ray Nation, Acting Superintendent, Hilaire Peck, Irrigation Manager, PO Box 158, Fort Washakie, WY 82514, Telephones: (307) 332–7810, Superintendent; (307) 332–2596, Irrigation. |
| **Southwest Region Contacts** | |
| Rob Baracker, Regional Director, Bureau of Indian Affairs, Southwest Regional Office, 615 First Street, NW., Albuquerque, New Mexico 87102, Telephone: (505) 346–7590/91. | |
| Pine River Irrigation Project | Michael Stancampiano, Superintendent, John Formea, Irrigation Engineer, PO Box 315, Ignacio, CO 81137–0315, Telephones: (970) 563–4511, Superintendent; (970) 563–1017, Irrigation. |

| Project name | Project/agency contacts |
| --- | --- |
| **Western Region Contacts** | |
| Wayne Nordwall, Regional Director, Bureau of Indian Affairs, Western Regional Office, PO Box 10, Phoenix, Arizona 85001, Telephone: (602) 379–6600. | |
| Colorado River Irrigation Project | Allen Anspach, Superintendent, R.R. 1 Box 9–C, Parker, AZ 85344, Telephone: (928) 669–7111. |
| Duck Valley Irrigation Project | Paul Young, Superintendent, 1555 Shoshone Circle, Elko, Nevada 89801, Telephone: (775) 738–0569. |
| Fort Yuma Irrigation Project | William Pyott, Land Operations Officer, P.O. Box 11000, Yuma, Arizona, Telephone: (520) 782–1202. |
| San Carlos Irrigation Project Joint Works. | Carl Christensen, Supervisory General Engineer, 13805 N. Arizona Boulevard, Coolidge, AZ 85228, Telephone: (520) 723–6216. |
| San Carlos Irrigation Project Indian Works. | Joe Revak, Supervisory General Engineer, Pima Agency, Land Operations, Box 8, Sacaton, AZ 85247, Telephone: (520) 562–3372. |
| Uintah Irrigation Project | Lynn Hansen, Irrigation Manager, PO Box 130, Fort Duchesne, UT 84026, Telephone: (435) 722–4341. |
| Walker River Irrigation Project | Robert Hunter, Superintendent, 1677 Hot Springs Road, Carson City, Nevada 89706, Telephone: (775) 887–3500. |

## What Irrigation Assessments or Charges Are Proposed for Adjustment by This Notice?

The rate table below contains the current rates for all of our irrigation projects where we recover our costs for operation and maintenance. The table also contains the proposed rates for the 2004 season and subsequent years where applicable. The irrigation projects where rates are proposed for adjustment are noted by an asterisk immediately following the name of the project.

| Project name | Rate category | Current 2003 rate | Proposed 2004 rate |
| --- | --- | --- | --- |
| Flathead Irrigation Project* | Basic per acre | $19.95 | $21.45 |
| Fort Hall Irrigation Project | Basic per acre | 22.00 | 22.00 |
| Fort Hall Irrigation Project Minor Units | Basic per acre | 14.00 | 14.00 |
| Fort Hall Irrigation Project Michaud | Basic per acre | 30.00 | 30.00 |
| | Pressure per acre | 43.50 | 43.50 |
| Wapato Irrigation Project Simcoe Units | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge). | 13.00 | 13.00 |
| | Farm unit/land tracts over one acre—per acre | 13.00 | 13.00 |
| Wapato Irrigation Project Ahtanum Units | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge). | 13.00 | 13.00 |
| | Farm unit/land tracts over one acre —per acre | 13.00 | 13.00 |
| Wapato Irrigation Project Satus Unit | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge). | 51.00 | 51.00 |
| | ''A'' farm unit/land tracts over one acre—per acre | 51.00 | 51.00 |
| | Additional Works farm unit/land tracts over one acre—per acre. | 56.00 | 56.00 |
| | ''B'' farm unit/land tracts over one acre—per acre | 61.00 | 61.00 |
| | Water Rental Agreement Lands—per acre | 62.00 | 62.00 |
| **Rocky Mountain Region Rate Table** | | | |
| Blackfeet Irrigation Project | Basic-per acre | 13.00 | 13.00 |
| Crow Irrigation Project | Basic-per acre | 16.00 | 16.00 |
| Fort Belknap Irrigation Project* | Indian per acre | 7.00 | 7.75 |
| | non-Indian per acre | 14.00 | 15.50 |
| Fort Peck Irrigation Project | Basic-per acre | 14.00 | 14.00 |
| Wind River Irrigation Project* | Basic-per acre | 12.00 | 14.00 |
| **Southwest Region Rate Table** | | | |
| Pine River Irrigation Project | Minimum Charge per tract | 25.00 | 25.00 |
| | Basic-per acre | 8.50 | 8.50 |

| Project name | Rate category | Current 2003 rate | Proposed 2004 rate | Proposed 2005 rate |
| --- | --- | --- | --- | --- |
| **Western Region Rate Table** | | | | |
| Colorado River Irrigation Project (See notes #1 and #2). | Basic per acre up to 5.75 acre-feet | $47.00 | $47.00 | |
| | Excess Water per acre-foot over 5.75 acre-feet. | 17.00 | 17.00 | |
| Duck Valley Irrigation Project | Basic-per acre | 5.30 | 5.30 | |
| Fort Yuma Irrigation Project (See note #3) | Basic-per acre up to 5.0 acre-feet | 60.00 | 60.00 | |

| Project name | Rate category | Current 2003 rate | Proposed 2004 rate | Proposed 2005 rate |
|---|---|---|---|---|
| | Excess Water per acre-foot over 5.0 acre-feet. | 10.50 | 10.50 | ........................ |
| San Carlos Irrigation Project (Joint Works)* | Basic-per acre | 20.00 | 20.00 | $30.00 |
| San Carlos Irrigation Project (Indian Works) | Basic-per acre | 56.00 | 56.00 | (1) |
| Uintah Irrigation Project | Basic-per acre | 11.00 | 11.00 | ........................ |
| Walker River Irrigation Project | Indian per acre | 7.32 | 7.32 | ........................ |
| | non-Indian per acre | 15.29 | 15.29 | ........................ |

[1] To be determined.

**Note #1:** For the Colorado River Irrigation Project, pursuant to a reconciliation of the operation and maintenance financial records as of December 31, 2002, funds in excess of the 700,000 reserve fund will be refunded to the excess water users in proportion to the amount of excess water purchased by each water user. The refund will be a credit against the 2004 irrigation season assessment for eligible excess water users.

**Note #2:** The Colorado River Irrigation Project's past practice of billing twice a year does not comply with the Debt Collection Improvement Act of 1996 and its supplementing regulations. Therefore, starting with the 2004 irrigation season, the full irrigation assessment will be due and payable in accordance with the procedures stated previously in this notice.

**Note #3:** The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation (Reclamation). The irrigation rates assessed for operation and maintenance are established by Reclamation and are provided for informational purposes only. The BIA only collects the irrigation assessments on behalf of Reclamation.

## Consultation and Coordination With Tribal Governments (Executive Order 13175)

The BIA irrigation projects are vital components of the local agriculture economy of the reservations on which they are located. To fulfill its responsibilities to the tribes, tribal organizations, water user organizations, and the individual water users, the BIA communicates, coordinates, and consults on a continuing basis with these entities on issues of water delivery, water availability, costs of administration, operation, maintenance, and rehabilitation. This is accomplished at the individual irrigation projects by Project, Agency, and Regional representatives, as appropriate, in accordance with local protocol and procedures. This notice is one component of the BIA's overall coordination and consultation process to provide notice and request comments from these entities on adjusting our irrigation rates.

## Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use (Executive Order 13211)

The rate adjustments will have no adverse effects on energy supply, distribution, or use (including a shortfall in supply, price increases, and increase use of foreign supplies) should the proposed rate adjustments be implemented. This is a notice for rate adjustments at BIA owned and operated irrigation projects, except for the Fort Yuma Irrigation Project. The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation with a portion serving the Fort Yuma Reservation.

## Regulatory Planning and Review (Executive Order 12866)

These rate adjustments are not a significant regulatory action and do not need to be reviewed by the Office of Management and Budget under Executive Order 12866.

## Regulatory Flexibility Act

This rate making is not a rule for the purposes of the Regulatory Flexibility Act because it is ''a rule of particular applicability relating to rates.'' 5 U.S.C. 601(2).

## Unfunded Mandates Act of 1995

These rate adjustments impose no unfunded mandates on any governmental or private entity and are in compliance with the provisions of the Unfunded Mandates Act of 1995.

## Takings (Executive Order 12630)

The Department has determined that these rate adjustments do not have significant ''takings'' implications. The rate adjustments do not deprive the public, State, or local governments of rights or property.

## Federalism (Executive Order 13132)

The Department has determined that these rate adjustments do not have significant Federalism effects because they pertain solely to Federal-tribal relations and will not interfere with the roles, rights, and responsibilities of states.

## Civil Justice Reform (Executive Order 12988)

In accordance with Executive Order 12988, the Office of the Solicitor has determined that this rule does not unduly burden the judicial system and meets the requirements of sections 3(a) and 3(b)(2) of the Order.

## Paperwork Reduction Act of 1995

These rate adjustments do not affect the collections of information which have been approved by the Office of Information and Regulatory Affairs, Office of Management and Budget, under the Paperwork Reduction Act of 1995. The OMB Control Number is 1076–0141 and expires April 30, 2006.

## National Environmental Policy Act

The Department has determined that these rate adjustments do not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement is required under the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4370(d)).

## Public Comment Solicitation

If you wish to comment on the proposed rate adjustments, you may mail or hand-deliver your written comments to the person listed in the **ADDRESSES** section of this notice. Comments may also be telefaxed to the following number: (202) 219–0006. We cannot accept electronic submissions at this time. All written comments received by the date indicated in the **DATES** section of this notice will be carefully assessed and fully considered before publication of a final notice.

Our practice is to make comments, including names and home addresses of respondents, available for public review during regular business hours. Individual respondents may request confidentiality. If you wish us to withhold your name and/or address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comment. Such requests will be honored to the extent allowed by law. We will not, however, consider anonymous comments. All submissions from

organizations or businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses will be made available for public inspection in their entirety.

Dated: September 21, 2003.

**Aurene M. Martin,**

*Principal Deputy Assistant Secretary—Indian Affairs.*

[FR Doc. 03–24690 Filed 9–29–03; 8:45 am]

BILLING CODE 4310–W7–P

## DEPARTMENT OF THE INTERIOR

## Bureau of Land Management

## Conservation Helium Sales

**AGENCY:** Bureau of Land Management (BLM), Interior.

**ACTION:** Notice implementing second Conservation Helium sale.

**SUMMARY:** The purpose of this action is to continue implementation of the terms of the Helium Privatization Act (HPA) of 1996 dealing with the disposal of the Conservation Helium reserve. The Act requires the Department of the Interior to *offer for sale,* beginning no later than 2005, a portion of the Conservation Helium stored underground at the Cliffside Field, north of Amarillo, Texas. The Department of the Interior, in consultation with the private helium industry, has determined that private companies with refining capacity along the crude helium pipeline will need a supply of helium in excess of that available from their own storage accounts and that available from crude helium extractors in the region, and that given the current market, Conservation Helium sold in this Sale will likely minimize market disruption. The Bureau conducted a 30-day comment period prior to the first pilot sale of Conservation Helium in March 2003. Eight comments were received. The comments were generally supportive with mainly long-term concerns expressed. However, some of the comments expressed concern over the allocation process and pricing methodology. The Bureau made some modifications to address concerns expressed by those comments. Since the first sale was not fully subscribed, the appropriateness of the allocation percentage was not fully tested. The second sale will provide the Bureau with further information to assess the overall process.

**DATES:** Submit bids and other documentation as required in Notice on or before October 30, 2003.

**ADDRESSES:** You may submit your bids and other documentation as required in this Notice to the Bureau of Land Management, Amarillo Field Office, 810 S. Fillmore, Suite 500, Amarillo, TX 79101, Attention: Crude Helium Sale.

**FOR FURTHER INFORMATION CONTACT:** Timothy R. Spisak, (806) 356–1002. Individuals who use a telecommunications device for the deaf (TDD) may call the Federal Information Relay Service (FIRS) at 1–800–877–8339 between 8 a.m. and 8 p.m., Eastern Time, Monday through Friday.

**SUPPLEMENTARY INFORMATION:**

### 1.01 What Is the Purpose of the Sale?

The purpose of this Sale is to continue implementation of the terms of the HPA dealing with the disposal of the Conservation Helium Reserve. The Act requires the Department of the Interior to *offer for sale,* beginning no later than 2005, a portion of the Conservation Helium stored underground at the Cliffside Field, north of Amarillo, Texas. The Department of the Interior, in consultation with the private helium industry, has determined that private companies with refining capacity along the crude helium pipeline will need a supply of helium in excess of that available from their own storage accounts and that available from crude helium extractors in the region. This is the second of 12 annual sales that the Department will conduct to dispose of the Conservation Helium stored underground at the Cliffside Field. The annual sales are being conducted in a manner intended to prevent pure helium market disruptions from occurring to end users; shortages of crude helium to pure helium refiners; and an oversupply of crude helium on the market for crude helium extractors. This second sale will be used to test the disposal process when the sales volume is expected to be fully subscribed. Subsequent sales may be adjusted as needed.

### 1.02 What Terms Do I Need To Know To Understand This Sale?

*Allocated Sale*—That portion of the annual sale volume of Conservation Helium that will be set aside for purchase by the Crude Helium Refiners.

*Annual Conservation Helium Sale*—The sale of a certain volume of Conservation Helium to private entities conducted annually beginning no later than 2005.

*Bidder*—Any entity or person who submits a request for purchase of a volume of the Annual Conservation Helium Sale and has met the qualifications contained in part 1.05 in this Notice.

*BLM*—The Bureau of Land Management.

*Conservation Helium*—The crude helium purchased by the U.S. Government under the authority of the Helium Act of 1960 and stored underground in the Cliffside Field.

*Crude Helium*—A partially refined gas containing about 70 percent helium and 30 percent nitrogen. However, the helium concentration may typically vary from 50 to 95 percent.

*Crude Helium Refiners*—Those entities with a capability of refining crude helium and having a connection point on the crude helium pipeline and a valid Helium Storage Contract as of the date of a Conservation Helium Sale.

*Excess Volumes*—Allocated sale volumes not requested by the Crude Helium Refiners.

*Helium Storage Contract*—A contract between the BLM and a private entity allowing the private entity to store crude helium in underground storage at the Cliffside Field.

*HPA*—The Helium Privatization Act of 1996.

*In-Kind Crude Helium*—Conservation Helium purchased by private refiners in exchange for like amounts of pure helium sold to Federal agencies and their contractors in accordance with the HPA.

*MMcf*—One million cubic feet of gas measured at standard conditions of 14.65 pounds per square inch (psi) and 60° F.

*Mcf*—One thousand cubic feet of gas measured at standard conditions of 14.65 psi and 60° F.

*Non-Allocated Sale*—That portion of the annual sale volume of Conservation Helium that will be offered to all qualified Bidders.

### 1.03 What Volume of Conservation Helium Will Be Offered in the Year 2004 Annual Conservation Helium Sale?

The volume of helium available for this Sale is 2,100 MMcf. In accordance with the HPA, this volume was determined by dividing the total volume of stored Conservation Helium less the statutory required reservation of 600 MMcf for Government purposes less estimated In-Kind Crude Helium transfers for 12 years divided by 12. The volume represents a straight-line basis for offering the helium for sale in accordance with the HPA.

### 1.04 At What Price Will the Conservation Helium Be Sold?

The Conservation Helium will be sold at the same price as In-Kind Crude Helium. In accordance with the HPA, this price covers helium debt repayment