**FOR FURTHER INFORMATION CONTACT:** George H. Grotheer, Office of Single Family Program Support Division, Department of Housing and Urban Development, 451 7th Street SW., Washington, DC 20410, telephone (202) 708–0317, x 2294 (this is not a toll free number) for copies of the proposed forms and other available information.

**SUPPLEMENTARY INFORMATION:** The Department is submitting the proposed information collection to OMB for review, as required by the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35, as amended).

This Notice is soliciting comments from members of the public and affected agencies concerning the proposed collection of information to: (1) Evaluate whether the proposed collection is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility; (2) evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information; (3) enhance the quality, utility, and clarity of the information to be collected; and (4) minimize the burden of the collection of information on those who are to respond; including the use of appropriate automated collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

This Notice also lists the following information:

*Title of Proposal:* Housing Counseling Program—Client Activity Reporting System (CARS).

*OMB Control Number, if Applicable:* 2502–0261.

*Description of the Need for the Information and Proposed Use:* HUD is seeking approval for the Client Activity Reporting System (CARS), an automated tool to interface with agencies' client management systems (CMS) to electronically transfer required agency, activity and client information into HUD's Housing Counseling System (HCS). A CMS is an existing online tool that housing counselors are currently using that automates much of the housing counseling process, including client intake, file maintenance, financial and credit analysis, outreach and client notification, and reporting. CARS is the interface system, or bridge, that links these various CMS systems to HUD's housing counseling database facilitating the sharing of data.

A large percentage of HUD-approved housing counseling agencies already use one of the several CMS's that are available through the private sector. A proposed rule for HUD's Housing Counseling Program (FR–4798) would require all HUD-approved counseling agencies to utilize a CMS, but gives them the flexibility to choose from competing products in the market. HUD will issue specifications, including data and other requirements; a CMS vendor must meet to successfully interface with CARS.

In conjunction with CARS, included in this proposal are proposed modifications to the existing form HUD–9902, the traditional performance data collection instrument for the Program, which will be automatically populated by the CMS utilized by the counseling agency and electronically submitted to HUD via CARS. These changes are designed to clarify instructions, capture additional outcomes, and generally enhance the quality of the data collected.

*Agency Form Numbers, if Applicable:* HUD–9900, HUD–9904, HUD–27300, HUD–2880, HUD–2990, HUD–2991, HUD–2994, HUD–96010, HUD–9902, HUD–9908, HUD–9910.

*Estimation of the Total Number of Hours Needed To Prepare the Information Collection Including Number of Respondents, Frequency of Response, and Hours of Response:* The estimated total number of hours needed to prepare the information collection is 10,090; the number of respondents is 2,856 generating approximately 10,324 annual responses; the frequency of response is on occasion or quarterly; and the estimated time needed to prepare the response varies from 5 minutes to 18 hours.

*Status of the Proposed Information Collection:* This is a revision of currently approved collection.

**Authority:** The Paperwork Reduction Act of 1995, 44 U.S.C., Chapter 35, as amended.

Dated: August 1, 2005.

**Frank L. Davis,**

*General Deputy Assistant Secretary for Housing-Deputy Federal Housing Commissioner.*

[FR Doc. 05–15550 Filed 8–5–05; 8:45 am]

**BILLING CODE 4210–27–P**

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### Rate Adjustments for Indian Irrigation Projects

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of rate adjustments.

**SUMMARY:** The Bureau of Indian Affairs (BIA) owns, or has an interest in, irrigation facilities located on various Indian reservations throughout the United States. We are required to establish rates to recover the costs to administer, operate, maintain, and rehabilitate those facilities. We are notifying you that we have adjusted the irrigation assessment rates at several of our irrigation facilities for operation and maintenance.

**EFFECTIVE DATE:** The irrigation assessment rates shown in the tables were effective on January 1, 2005.

**FOR FURTHER INFORMATION CONTACT:** For details about a particular BIA irrigation project, please use the tables in the **SUPPLEMENTARY INFORMATION** section to contact the regional or local office where the project is located.

**SUPPLEMENTARY INFORMATION:** A Notice of Proposed Rate Adjustment was published in the **Federal Register** on February 1, 2005 (70 FR 20), to adjust the irrigation rates at several BIA irrigation facilities. The public and interested parties were provided an opportunity to submit written comments during the 60-day period prior to April 1, 2005.

#### Did the BIA receive any comments on the proposed irrigation assessment rate adjustments?

Written comments were received for the proposed rate adjustments for the Fort Peck Irrigation Project, Montana, the San Carlos Irrigation Project—Indian Works, Arizona and the San Carlos Irrigation Project—Joint Works, Arizona.

#### What issues were of concern by the commenters?

The commenters were concerned with one or more of the following five issues: (1) How funds collected from stakeholders are expended on operation and maintenance; (2) the impact of an assessment rate increase on the local agricultural economy; (3) what is deferred maintenance and why was the rate increased to handle the deferred maintenance; and (4) why do the irrigation projects need to have a reserve fund.

For the San Carlos Irrigation Project—Joint Works (SCIP–JW), commenters were concerned with the following issues: (1) What are the record keeping practices and sharing them with water users; (2) why doesn't the SCIP–JW budget reflect income from other sources, such as, excess pumping; (3) why doesn't SCIP–JW charge tribal concessions that operate at BIA project reservoirs; (4) why doesn't the SCIP–JW power project pay revenues to the irrigation project; and (5) why does SCIP–JW have to pay for environmental and archaeological surveys with O&M monies.

**How does BIA respond to the concern of how funds are expended for operation and maintenance?**

The BIA's records for expenditures on all of its irrigation facilities are public records and available for review by stakeholders or interested parties. Stakeholders (project water users/land owners/tribes) can review these records during normal business hours at the individual agency offices. Alternatively, BIA may treat requests to review project records as requests under the Freedom of Information Act (FOIA) and provide copies of such records to the requesting party in accordance with FOIA. To review or to obtain copies of these records, stakeholders and interested parties are directed to contact the BIA representative at the specific facility serving them using the tables in the **SUPPLEMENTARY INFORMATION** section.

**How does BIA respond to concerns about irrigation assessment rate increases and related impacts on the local agricultural economy?**

All of the BIA's irrigation projects are important economic contributors to the local communities they serve, contributing millions in crop value annually. Historically, BIA tempered irrigation rate increases to demonstrate sensitivity to the economic impact on water users. This has resulted in a rate deficiency at most of the irrigation projects.

Over the past several years the BIA's irrigation program has been the subject of several Office of Inspector General (OIG) audits. In the most recent audit, No. 96–I–641, March 1996, the OIG concluded, ''Operation and maintenance revenues were insufficient to maintain the projects, and some projects had deteriorated to the extent that their continued capability to deliver water was in doubt. This occurred because operation and maintenance rates were not based on the full cost of delivering water, including the costs of systematically rehabilitating and replacing project facilities and equipment, and because project personnel did not seek regular rate increases to cover the full cost of operation.'' This audit recommendation is still outstanding.

A previous OIG audit, No. 88–42, February 1988, reached the same conclusion. A separate audit performed on one of BIA's largest irrigation projects, Wapato Indian Irrigation Project, No. 95–I–1402, September 1995, reinforced the general findings of the OIG on the BIA's irrigation program. This pointed out a lack of response by the BIA to the original findings of the OIG in addressing this critical issue over an extended period of time. The BIA must systematically review and evaluate irrigation assessment rates and adjust them when necessary to reflect the full costs to properly operate, and perform all appropriate maintenance on, the irrigation facility infrastructure for safe and reliable operation. If this review and evaluation is not accomplished, a rate deficiency can eventually accumulate. Overcoming rate deficiencies can result in the BIA having to raise irrigation assessment rates in larger increments and over shorter time frames than would have been otherwise necessary.

**How does BIA respond to what is deferred maintenance and why was the rate increased to handle the deferred maintenance?**

Deferred maintenance is maintenance that was not performed and is delayed for a future period due to insufficient funds or other reasons. Historically, BIA tempered irrigation rate increases to demonstrate sensitivity to the economic impact on water users. This has resulted in a rate deficiency at most of the irrigation projects and a cumulative increase in deferred maintenance. The BIA must systematically review and evaluate irrigation assessment rates and adjust them when necessary to reflect the full costs to properly operate, and perform all appropriate maintenance on, the irrigation facility infrastructure for safe and reliable operation. If this review and evaluation is not accomplished, a rate deficiency can eventually accumulate. Overcoming rate deficiencies can result in the BIA having to raise irrigation assessment rates in larger increments and over shorter time frames than would have been otherwise necessary.

**How does BIA respond to why do the irrigation projects need to have a reserve fund?**

Like any ''fee-for-service'' activity, the BIA irrigation projects must maintain revenue in a reserve fund to adequately react to an emergency, should one arise. As such, the Irrigation Indian Affairs Manual requires BIA irrigation projects to ''prepare contingency plans for events or emergencies which might interrupt the delivery of irrigation water.'' The irrigation projects should maintain cash reserves sufficient to support anticipated events and/or emergencies that may arise. Planning for major repairs/rehabilitation of major structures and planning for replacement of major equipment (graders, backhoes, etc.) is also required.

The following comments may pertain to other irrigation projects, but are specific to San Carlos Irrigation Project—Joint Works (SCIP–JW).

**How does BIA respond to what are the record keeping practices and sharing this information with water users?**

SCIP–JW has provided an itemized accounting of income and expenditures (by obligations) to the San Carlos Irrigation and Drainage District (District) on a monthly basis, including a verbal report to the District at its monthly Board meeting. SCIP–JW keeps copies of monthly transactions, which includes records of collections, expenses, obligations, deobligations and cash balances. In addition, SCIP–JW keeps detailed payroll records. These records are and have been available at any time for the District to review, pursuant to the ''Books of Accounts'' section of the 1931 Repayment Contract, or through the Freedom of Information Act. More recently, SCIP responded to a request by the District to review project records as a request for information under FOIA and provided the District with six binders of copies of records and documents relating to SCIP expenditures. In addition, SCIP provides a variety of other documents and records to the District during the course of any given year, such as monthly pump reports, monthly water reports, daily water reports, and several iterations of the proposed SCIP–JW budget on an annual basis, and regular updates of the operating budget during the year.

**How does BIA respond to concerns about why the SCIP–JW budget does not reflect income from other sources, such as, excess pumping?**

Projected miscellaneous income has fluctuated due to unanticipated reduction in overnight interest rates, sales of land, and inability to predict income from over pumping by water users. Since the budgets for SCIP–JW are prepared 2 years in advance, it is impossible to predict the amount of excess pumping (or if there will be any). The practice of allowing excess pumping by the water users generates income to SCIP–JW, which only covers the costs of excess pumping.

**How does BIA respond to concerns about why SCIP–JW does not charge tribal concessions that operate at BIA project reservoirs?**

Currently, no formal concession agreement is in place at San Carlos Reservoir. The previous concession agreement between the BIA and the San Carlos Apache Tribe expired

approximately 5 years ago. In 1992, the San Carlos Apache Tribe was authorized to participate in decisions concerning recreation and fish and wildlife concessions at San Carlos Reservoir. See Public Law 102–575, Title XXXVII, section 3710(e), October 30, 1992, 106 Stat. 4600, 4750 (''1992 Act''), amending 25 U.S.C. 390. In addition, while the Repayment Contract generally provides that ''any sums collected by or for the benefit of the Project'' are to be used to pay operation and maintenance costs, it makes no reference to concession revenues and there is no provision, express or implied, that requires the Secretary or the BIA to develop such other sources of funding.

**How does BIA respond to concerns about why the SCIP–JW power project does not pay revenues to the irrigation project?**

Because the generators are inoperable, there are no additional revenues in the Power Division to subsidize power costs for the Irrigation Division. Additionally, there are no other Government (or appropriated) funds to cover power for pumping. San Carlos Irrigation and Drainage District (District) made the claim in *San Carlos Irrigation and Drainage District* v. *United States,* 32 Fed. Cl. 200 (1994), that SCIP–JW could not charge the District for power for pumping, which ''replaced'' power, formerly generated at Coolidge Dam. The United States Court of Appeals for the Federal Circuit affirmed the holding of the U.S. Claims Court and concluded: ''We agree with the government's contention that providing power for pumps is properly considered part of the ''operation'' of the pumps. There is no statement that free power to run the pumps is assured in the Contract or the Act.'' *San Carlos Irrigation and Drainage District* v. *United States,* 111 F.3d 1557, 1566 (Fed. Cir. 1997).

The BIA provides power for SCIP–JW pumps at the lowest possible cost using Federal preferred-rate Parker-Davis hydro-power, the least expensive source of power available, consistent with the court's ruling. The cost of providing power also includes transmission, distribution, and operation and maintenance costs attributable to power for the pumps. To the extent that the SCIP–JW is able to purchase federal preference power in excess of what is needed for SCIP–JW pumps, that power is made available to serve the Power Division's customers. Any benefit to those customers from preference power has no effect on the cost of power for Project pumps.

**How does BIA respond to concerns about why SCIP–JW must pay for environmental and archaeological surveys with O&M monies?**

The environmental and archaeological studies being conducted are valid O&M costs.

**Did the BIA receive comments on any proposed changes other than rate adjustments?**

No.

**Does this notice affect me?**

This notice affects you if you own or lease land within the assessable acreage of one of our irrigation projects, or you have a carriage agreement with one of our irrigation projects.

**Where can I get information on the regulatory and legal citations in this notice?**

You can contact the appropriate office(s) stated in the tables for the irrigation project that serves you, or you can use the Internet site for the Government Printing Office at *http://www.gpo.gov.*

**What authorizes you to issue this notice?**

Our authority to issue this notice is vested in the Secretary of the Interior by 5 U.S.C. 301 and the Act of August 14, 1914 (38 Stat. 583; 25 U.S.C. 385). The Secretary has in turn delegated this authority to the Assistant Secretary—Indian Affairs under Part 209, Chapter 8.1A, of the Department of the Interior's Departmental Manual.

**Who can I contact for further information?**

The following tables are the regional and project/agency contacts for our irrigation facilities.

| Project name | Project/Agency contacts |
|---|---|
| **Northwest Region Contacts**<br>Stanley Speaks, Regional Director,<br>Bureau of Indian Affairs, Northwest Regional Office, 911 N.E. 11th Avenue,<br>Portland, Oregon 97232–4169,<br>Telephone: (503) 231–6702 | |
| Flathead Irrigation Project | Ernest T. Moran, Superintendent, Flathead Agency Irrigation Division, PO Box 40, Pablo, Montana 59855–0040, Telephone: (406) 675–2700 |
| Fort Hall Irrigation Project | Eric J. LaPointe, Superintendent, Fort Hall Agency, PO Box 220, Fort Hall, Idaho 83203–0220, Telephone: (208) 238–2301 |
| Wapato Irrigation Project | Pierce Harrison, Project, Administrator, Wapato Irrigation Project, PO Box 220, Wapato, WA 98951–0220, Telephone: (509) 877–3155 |
| **Rocky Mountain Region Contacts**<br>Keith Beartusk, Regional Director,<br>Bureau of Indian Affairs, Rocky Mountain Regional Office,<br>316 North 26th Street,<br>Billings, Montana 59101,<br>Telephone: (406) 247–7943 | |
| Blackfeet Irrigation Project | Ross Denny, Superintendent, Ted Hall, Project Manager, Box 880, Browning, MT 59417, Telephones: (406) 338–7544, Superintendent, (406) 338–7519, Irrigation |
| Crow Irrigation Project | Ed Lone Fight, Superintendent, Jim Forseth, Acting Project Engineer, PO Box 69, Crow Agency, MT 59022, Telephones: (406) 638–2672, Superintendent, (406) 638–2863, Irrigation |

| Project name | Project/Agency contacts |
| --- | --- |
| Fort Belknap Irrigation Project | Judy Gray, Acting Superintendent, Grant Stafne, Acting Irrigation Manager, R.R.1, Box 980, Harlem, MT 59526, Telephones: (406) 353–2901, Superintendent, (406) 353–2905, Irrigation |
| Fort Peck Irrigation Project | Spike Bighorn, Superintendent, PO Box 637 Poplar, MT 59255, Huber Wright, Acting Irrigation Manager, 602 6th Avenue North, Wolf Point, MT 59201, Telephones: (406) 768–5312, Superintendent, (406) 653–1752, Irrigation |
| Wind River Irrigation Project | George Gover, Superintendent, Ray Nation, Acting Irrigation Manager, PO Box 158, Fort Washakie, WY 82514, Telephones: (307) 332–7810, Superintendent, (307) 332–2596, Irrigation |
| **Southwest Region Contacts**<br>Larry Morrin, Regional Director,<br>Bureau of Indian Affairs, Southwest Regional Office,<br>1001 Indian School Road,<br>Albuquerque, New Mexico 87104,<br>Telephone: (505) 563–3100 | |
| Pine River Irrigation Project | Diana Olguin, Acting Superintendent, John Formea, Irrigation Engineer, PO Box 315, Ignacio, CO 81137–0315, Telephones: (970) 563–4511, Superintendent, (970) 563–1017, Irrigation |
| **Western Region Contacts**<br>Brian Bowker, Acting Regional Director,<br>Bureau of Indian Affairs, Western Regional Office,<br>PO Box 10,<br>Phoenix, Arizona 85001,<br>Telephone: (602) 379–6600 | |
| Colorado River Irrigation Project | Rodney McVey, Acting Superintendent, R.R. 1 Box 9–C, Parker, AZ 85344, Telephone: (928) 669–7111 |
| Duck Valley Irrigation Project | Virgil Towndsen, Superintendent, 1555 Shoshone Circle, Elko, Nevada 89801, Telephone: (775) 738–0569 |
| Fort Yuma Irrigation Project | William Pyott, Land Operations Officer, P.O. Box 11000, Yuma, Arizona, Telephone: (520) 782–1202 |
| San Carlos Irrigation Project Joint Works | Carl Christensen, Supervisory General Engineer, 13805 N. Arizona Boulevard, Coolidge, AZ 85228, Telephone: (520) 723–6216 |
| San Carlos Irrigation Project Indian Works | Joe Revak, Supervisory General Engineer, Pima Agency, Land Operations, Box 8, Sacaton, AZ 85247, Telephone: (520) 562–3372 |
| Uintah Irrigation Project | Lynn Hansen, Irrigation Manager, PO Box 130, Fort Duchesne, UT 84026, Telephone: (435) 722–4341 |
| Walker River Irrigation Project | Robert Hunter, Superintendent, 1677 Hot Springs Road, Carson City, Nevada 89706, Telephone: (775) 887–3500 |

## What Will BIA Charge for the 2005 and Later Irrigation Seasons?

The rate tables below show the rates we will bill at each of our irrigation facilities for the 2005 irrigation seasons. An asterisk immediately following the name of the facilities notes the irrigation facilities where rates were adjusted.

| Project name | Rate category | Current 2004 rate | Current 2005 rate |
| --- | --- | --- | --- |
| Flathead Irrigation Project | Basic per acre | $21.45 | $21.45 |
| Flat Hall Irrigation Project | Basic per acre | 22.00 | 22.00 |
| Fort Hall Irrigation Project Minor Units | Basic per acre | 14.00 | 14.00 |
| Fort Hall Irrigation Project*, Michaud | Basic per acre | 30.00 | 30.00 |
| | Pressure per acre | 43.50 | 46.50 |
| Wapato Irrigation Project, Simcoe Units | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge) | 13.00 | 13.00 |
| | Farm unit/land tracts over one acre—per acre | 13.00 | 13.00 |
| Wapato Irrigation Project, Ahtanum Units | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge) | 13.00 | 13.00 |
| | Farm unit/land tracts over one acre—per acre | 13.00 | 13.00 |
| Wapato Irrigation Project, Satus Unit | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge) | 51.00 | 51.00 |
| | "A" farm unit/land tracts over one acre—per acre | 51.00 | 51.00 |
| | Additional Works farm unit/land tracts over one acre—per acre. | 56.00 | 56.00 |
| | "B" farm unit/land tracts over one acre—per acre | 61.00 | 61.00 |

| Project name | Rate category | Current 2004 rate | Current 2005 rate |
|---|---|---|---|
| | Water Rental Agreement Lands—per acre | 62.00 | 62.00 |
| **Rocky Mountain Region Rate Table** | | | |
| Blackfeet Irrigation Project | Basic-per acre | $13.00 | $13.00 |
| Crow Irrigation Project | Basic-per acre | 16.00 | 16.00 |
| Fort Belknap Irrigation Project | Indian per acre | 7.75 | 7.75 |
| | non-Indian per acre | 15.50 | 15.50 |
| Fort Peck Irrigation Project * | Basic-per acre | 14.00 | 17.50 |
| Wind River Irrigation Project | Basic-per acre | 14.00 | 14.00 |
| **Southwest Region Rate Table** | | | |
| Pine River Irrigation Project | Minimum Charge per tract | $25.00 | $25.00 |
| | Basic-per acre | 8.50 | 8.50 |

| Project name | Rate category | Current 2004 rate | Current 2005 rate | Current 2006 rate |
|---|---|---|---|---|
| **Western Region Rate Table** | | | | |
| Colorado River Irrigation Project | Basic per acre up to 5.75 acre-feet. | $47.00 | $47.00 | To Be Determined |
| | Excess Water per acre-foot over 5.75 acre-feet. | 17.00 | 17.00 | |
| Duck Valley Irrigation Project | Basic-per acre | 5.30 | 5.30 | |
| Fort Yuma Irrigation Project (See Note #1) | Basic-per acre up to 5.0 acre-feet. | 62.00 | 65.00 | |
| | Excess Water per acre-foot over 5.0 acre-feet. | 10.50 | 10.50 | |
| San Carlos Irrigation Project (Joint Works) * (See Note #2). | Basic-per acre | 20.00 | 30.00 | $30.00 |
| San Carlos Irrigation Project (Indian Works) * | Basic-per acre | 56.00 | 77.00 | To Be Determined |
| Uintah Irrigation Project * | Basic-per acre | 11.00 | 11.00 | |
| | Minimum Bill | 10.00 | 25.00 | |
| Walker River Irrigation Project | Indian per acre | 7.32 | 7.32 | |
| | non-Indian per acre | 15.29 | 15.29 | |

* Notes irrigation facilities rates were adjusted.

**Note #1**—The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation (Reclamation). The irrigation rates assessed for operation and maintenance are established by Reclamation and are provided for informational purposes only. The BIA collects the irrigation assessments on behalf of Reclamation.

**Note #2**—The 2006 irrigation rate of $30 per acre is established through this notice.

## Consultation and Coordination With Tribal Governments (Executive Order 13175)

The BIA irrigation projects are vital components of the local agriculture economy of the reservations on which they are located. To fulfill its responsibilities to the tribes, tribal organizations, water user organizations, and the individual water users, the BIA communicates, coordinates, and consults on a continuing basis with these entities on issues of water delivery, water availability, costs of administration, operation, maintenance, and rehabilitation. This is accomplished at the individual irrigation projects by Project, Agency, and Regional representatives, as appropriate, in accordance with local protocol and procedures. This notice is one component of the BIA's overall coordination and consultation process to provide notice and request comments from these entities on adjusting our irrigation rates.

## Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use (Executive Order 13211)

The rate adjustments will have no adverse effects on energy supply, distribution, or use (including a shortfall in supply, price increases, and increased use of foreign supplies) should the proposed rate adjustments be implemented. This is a notice for rate adjustments at BIA owned and operated irrigation projects, except for the Fort Yuma Irrigation Project. The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation with a portion serving the Fort Yuma Reservation.

## Regulatory Planning and Review (Executive Order 12866)

These rate adjustments are not a significant regulatory action and do not need to be reviewed by the Office of Management and Budget under Executive Order 12866.

## Regulatory Flexibility Act

This rate making is not a rule for the purposes of the Regulatory Flexibility Act because it is ''a rule of particular applicability relating to rates.'' 5 U.S.C. 601(2).

## Unfunded Mandates Act of 1995

These rate adjustments impose no unfunded mandates on any governmental or private entity and are in compliance with the provisions of the Unfunded Mandates Act of 1995.

## Takings (Executive Order 12630)

The Department has determined that these rate adjustments do not have significant ''takings'' implications. The rate adjustments do not deprive the public, state, or local governments of rights or property.

**Federalism (Executive Order 13132)**

The Department has determined that these rate adjustments do not have significant Federalism effects because they pertain solely to Federal-tribal relations and will not interfere with the roles, rights, and responsibilities of states.

**Civil Justice Reform (Executive Order 12988)**

In accordance with Executive Order 12988, the Office of the Solicitor has determined that this rule does not unduly burden the judicial system and meets the requirements of sections 3(a) and 3(b)(2) of the Order.

**Paperwork Reduction Act of 1995**

These rate adjustments do not affect the collections of information which have been approved by the Office of Information and Regulatory Affairs, Office of Management and Budget, under the Paperwork Reduction Act of 1995. The OMB Control Number is 1076–0141 and expires April 30, 2006.

**National Environmental Policy Act**

The Department has determined that these rate adjustments do not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement is required under the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4370(d)).

Dated: July 29, 2005.

**Michael D. Olsen,**

*Acting Principal Deputy Assistant Secretary—Indian Affairs.*

[FR Doc. 05–15575 Filed 8–5–05; 8:45 am]

BILLING CODE 4310–W7–P

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### Tribal Consultation on Indian Education Topics

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of tribal consultation meetings.

**SUMMARY:** This notice announces that the Bureau of Indian Affairs (BIA), Office of Indian Education Programs (OIEP), will be conducting consultation meetings to obtain oral and written comments on potential issues in Indian Education Programs. The potential issues will be set forth and described in a tribal consultation booklet to be issued prior to the meetings by the Office of Indian Education Programs. The proposed topics are: a Memorandum of Agreement (MOA) between the Department of the Interior and the Department of Education regarding education programs for BIA-funded schools, the proposed restructuring of the Office of Indian Education Programs, and a draft policy of the Office of Facilities Management and Construction establishing standards for ‘‘high risk’’ grantees seeking construction grants in excess of $100,000.

**DATES:** Comments must be received on or before September 30, 2005. See **SUPPLEMENTARY INFORMATION** section for scheduled dates and locations of the meetings. All meetings will begin at 9 a.m. and continue until 3 p.m. (local time) or until all meeting participants have an opportunity to make comments.

**ADDRESSES:** Send or hand-deliver written comments to Edward Parisian, Acting Director, Office of Indian Education Programs, Bureau of Indian Affairs, Mail Stop Room 3609–MIB, 1849 C St., NW., Washington, DC 20240. Submissions by facsimile should be sent to (202) 273–0030.

**FOR FURTHER INFORMATION CONTACT:** Dr. James Martin, (202) 208–5810.

**SUPPLEMENTARY INFORMATION:** The meetings are a follow-up to similar meetings conducted by BIA–OIEP since 1990. As required by 25 U.S.C. 2011(b), the purpose of the consultation is to provide Indian tribes, school boards, parents, Indian organizations and other interested parties with an opportunity to comment on potential issues facing the BIA on Indian education programs.

**Meeting Schedule**

| Date | Location | Local contact | Phone numbers |
|---|---|---|---|
| August 29, 2005 | Phoenix, AZ | Lester Hudson | (520) 361–3510 ext. 112 |
| August 29, 2005 | Minneapolis, MN | Terry Portra | (612) 725–4591 |
| August 29, 2005 | Gallup, NM | Beatrice Woodward | (505) 786–6151 |
| August 29, 2005 | Portland, OR | John Reimer | (503) 872–2743 |
| August 30, 2005 | Albuquerque, NM | Dr. Jenny Jimenez | (505) 753–1466 |
| August 30, 2005 | Aberdeen, SD | Emma Jean Blue Earth | (701) 854–3497 |
| August 30, 2005 | Nashville, TN | Joy Martin | (405) 605–6051 |

A consultation booklet for the meetings is being distributed to federally-recognized Indian tribes, Bureau Regional and Agency Offices, and Bureau-funded schools. The booklets will also be available from local contact persons at each meeting.

**Public Comment Availability**

Comments, including names, street addresses, and other contact information of respondents, will be available for public review at the address listed under the **ADDRESSES** section during regular business hours (7:45 a.m. to 4:15 p.m. EST), Monday through Friday, except Federal holidays. Individual respondents may request confidentiality. If you wish us to withhold your name, street address, and other contact information (such as fax or phone number) from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your comment. We will honor your request to the extent allowable by law. We will make available for public inspection in their entirety all submissions from organizations or businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses.

**Authority:** This notice is published in accordance with the authority delegated by the Secretary of the Interior to the Principal Deputy Assistant Secretary—Indian Affairs by 209 DM 8.1.

Dated: July 29, 2005.

**Michael D. Olsen,**

*Acting Principal Deputy Assistant Secretary—Indian Affairs.*

[FR Doc. 05–15547 Filed 8–5–05; 8:45 am]

BILLING CODE 4310–6W–P

## INTERNATIONAL TRADE COMMISSION

**[Investigation No. 332–469]**

### Conditions of Competition for Certain Oranges and Lemons in the U.S. Fresh Market

**AGENCY:** United States International Trade Commission.