SAL..ION, LEWIS & WELDON, P... .C.
Attorneys at Law

Riney B. Salmon II, P.C.
John B. Weldon, Jr.
Lisa M. McKnight
James R. Huntwork
Ronnie P. Hawks
Alexandra M. Arboleda
Elizabeth M. Behnke

2850 E. Camelback Road, Suite 200
Phoenix, Arizona 85016
Telephone 602-801-9060
Facsimile 602-801-9070

M. Byron Lewis
Stephen E. Crofton
Mark A. McGinnis
Karen S. Gaylord
Kristin D. Magin
Rebecca C. Goldberg

*Of Counsel*
Richard N. Morrison

*Writer's Direct Line*
602.801.9061
*Writer's Internet Address*
*rbs@slwplc.com*

February 17, 2006

*Hand Delivered*
Allen Anspach
Acting Western Regional Director
Bureau of Indian Affairs
Western Regional Office
400 N. 5th Street
14th Floor, P.O. Box 10
Phoenix, Arizona 85001

Re: San Carlos Irrigation and Drainage District Proposal for the San Carlos Irrigation Project Operation and Maintenance Budget and Assessment Rate

Dear Allen:

Thank you for meeting with the District this past Monday to discuss the serious issues facing the District and the Project. We appreciate your willingness to listen to our concerns and your expressed desire to resolve these ongoing problems. Like you, we believe that these problems can be resolved through good faith discussions and cooperation.

As you know, the 1924 San Carlos Project Act, Landowners' Agreement, Repayment Contract, and other decisions and agreements governing Project operations, require the BIA to fix an operation and maintenance ("O&M") budget and assessment rate each year by July 1 so that the District can assess its landowners in accordance with Arizona law, collect the funds through the county treasurer, and have payment to the Project by May of the following year. That has not been happening. For over a decade, the BIA has consistently been months or years late in fixing the annual budget and O&M rate.[1]

The BIA also is required to fix the annual O&M budget based upon the true "annual cost" of operating and maintaining the Project. This has not been happening either. It is often difficult for the District to decipher the Project budgets because of poor accounting practices and a lack of supporting documentation. It is clear, however, that Project budgets have been based not on a good-faith estimate of the Project's needs for the upcoming fiscal year, but on an arbitrary decision from BIA personnel in Phoenix or Washington that is then justified through

[1] *See* Table 1, District's Receipt of Final Notice of Project O&M Rate (Attachment 1).

**DRAFT—PRIVILEGED AND CONFIDENTIAL**

manipulation of line items in the budget. For years, Project budgets have been unreasonably inflated because income is consistently underestimated; expenses are consistently overestimated; reserve and sinking funds are established at unreasonably high levels for projects that are unnecessary or never implemented; and charges are assessed that do not qualify as O&M. As a result, the Project has consistently charged the District far more for O&M than it ultimately needs to operate and maintain the Project.

The issues that we discussed in our meeting are not new. The District complained of many of these same problems ten years ago in regard to the Fiscal Year ("FY") 1998 budget and assessment rate for the Project. In a January 10, 1997 letter to the District, then-Acting Regional Director Barry Welch required a new O&M rate to be prepared based on his agreement with the District that the proposed rate was the product of both substantive and procedural errors.[2] The Acting Regional Director found that the BIA was not basing the Project's O&M budget and assessment on a reasonable estimate of the actual O&M costs for the Project, but on an arbitrary number that was justified through manipulation of the budget numbers:

> "[I]t does not appear that the Project's FY 1998 O&M charges have been fixed based on an estimate of the total annual cost of the O&M of the Project. Rather, it appears that the Project first estimated what its annual income will be in FY 1998 based on the $30/acre assessment and other projected revenues and then projected budget expenditures, in both its normal budget categories and in its newly created budget category for special projects, to spend down the projected revenues."[3]

The Acting Regional Director also found that the BIA had not complied with its obligation to fix the O&M charge on an annual basis in time for the District to collect the O&M assessment from its landowners; that the BIA deviated from approved budgets without explanation or notice; and that the Project lacked adequate administrative and accounting procedures to track inventory and equipment.

After the 1997 decision, the District worked with project staff to develop a reasonable schedule and budget process. The District believed at the time that the problems cited by the District and acknowledged in the 1997 decision had been largely resolved. Unfortunately, that was not the case. Schedules once again began to slip, deadlines for fixing the O&M rate were missed, communications broke down, and the Project's unobligated cash reserves once again ballooned.

In the last several years, the situation has steadily deteriorated. For FY 2005, the O&M rate was raised from twenty dollars to thirty dollars based largely upon the Western Regional

---

[2] *See* Decision of the Acting Area Director Regarding Notice of Appeal of the FY 1998 San Carlos Irrigation Project O&M Assessment Submitted by the San Carlos Irrigation and Drainage District (January 10, 1997) ("1997 Decision") (Attachment 2).

[3] *Id.* at 10.

**DRAFT—PRIVILEGED AND CONFIDENTIAL**

Director's claim that the BIA had made a two million dollar accounting error.[4] Despite repeated requests by the District, that alleged accounting error has never been explained. We now know, however, that the threatened budget shortfall never occurred and the Project ended FY 2005 with over four million dollars in unobligated cash reserves.[5] Other comments by the District in regard to the FY 2005 budget were never addressed by the BIA at any level.

For FY 2006, Project staff recommended that the O&M rate be fixed at fifteen dollars per acre, a figure that would leave the Project with a cash balance of over three million dollars at the end of the fiscal year. The District and the Gila River Indian Irrigation and Drainage District ("GRIIDD") agreed that this proposal was reasonable. Within two weeks of receiving the proposal, however, the Western Regional Office told the Department of the Interior that the rate would be thirty dollars per acre.[6] Two days later, the Western Regional Director directed the Project Manager to revise the budget so as to justify a thirty dollar per acre assessment rate, which was done without further consultation with the District or GRIIDD.[7]

Although the District has numerous objections to the handling of the FY 2005 and FY 2006 budgets and O&M rates, at least Project staff met with the District to discuss the budget before it was fixed. For FY 2007, no discussion was held with the District before the BIA proposed an O&M rate of thirty dollars per acre. The District had absolutely no notice of the proposed rate before publication of that notice; was provided no opportunity to give input into the budget process; and has been provided no documentation or information in support of the proposed rate. Similarly, the District has heard nothing from the BIA concerning the FY 2008 O&M rate, which should be fixed by July 1, 2006 under the Repayment Contract.

A key budget item driving the inflated budget and assessment numbers of recent years is the excessive unobligated cash reserves being maintained by the Project at the direction of the Western Regional Office. The BIA's own guidance suggests a much lower reserve figure is appropriate and the 1997 Decision indicates that cash reserves should be maintained at a level of about $600,000.[8] But budget documents provided to the District by the BIA demonstrate that the Project's unobligated cash reserves have consistently exceeded 2.5 million dollars for at least the

---

[4] *See* Letter from Robert E. Carolin to Douglas Mason (April 18, 2003) (Attachment 3); Letter from Wayne Nordwall, Western Regional Director, to Riney B. Salmon (June 6, 2003) (Attachment 4).

[5] *See* Table 2, Project Unobligated Cash Reserves March 2005 to February 2006 (Attachment 5).

[6] *See* E-mail from Russell Kaskalla, Civil Engineer, Western Regional Office, to Ross Mooney, Chief, Branch of Irrigation, Power, Safety of Dams, Operation of Non-Federal Dams (September 29, 2004) (Attachment 6).

[7] *See* Memorandum from Wayne Nordwall, Regional Director, to Project Manager (October 1, 2004) (Attachment 7).

[8] 1997 Decision, at 10.

**DRAFT—PRIVILEGED AND CONFIDENTIAL**

last decade.[9] Currently, Project cash reserves approach five million dollars for FY 2006, even without any payment by the District for FY 2006 O&M.[10]

This state of affairs should not be allowed to continue. The District's concerns can be resolved in a manner that is fair to the District and GRIIDD but still provides the Project with the funds that it needs. To that end, we propose the following. The District already has paid under protest $1.5 million dollars to the Project for FY 2005 (as has GRIIDD), an O&M rate of thirty dollars per acre, plus penalty interest in the amount of $47,500. The BIA should credit the District $547,500 and GRIIDD $500,000, which can be applied toward the FY 2006 O&M rate.[11]

The BIA should also credit the District and GRIIDD $500,000 each for FY 2006, which would create an effective O&M rate of twenty dollars per acre for FY 2006. The District will pay the remaining $452,500 that it owes for FY 2006 by March 1, 2006. For FY 2007, which has not yet been finalized, the BIA should set the O&M rate at twenty dollars per acre, rather than the proposed thirty dollars per acre. The District will pay that one million dollars by May 15, 2006, which will bring the District current in its obligations to the Project.

The District, GRIIDD, Project staff, and the Western Regional Office should then meet over the coming weeks with the goals of: (1) fixing a reasonable O&M rate for FY 2008 before July 2006, the Repayment Contract deadline for notice to the District; and (2) establishing a reasonable budget process, a schedule for completion of the annual budgets, and a deadline for fixing the annual O&M rate. These tasks should be completed by June 2006 in order to get everyone back on schedule.

The District believes that its payment proposal for FY 2005 through FY 2007 is reasonable for all sides, provides relief to the District and GRIIDD by spending down the Project's excessive cash reserves, but permits the Project to maintain more than ample cash reserves for its needs. Furthermore, this proposal, in conjunction with further discussions on the budget process, will reestablish the budget schedule and provide guidelines for both sides going forward.

The District stands ready to meet with you and your staff at your convenience to address these issues. The District also is open to reasonable counter-proposals or other suggestions for remedying this situation. You should know, however, that the District is committed to implementing this proposal or something similar and fashioning a reasonable solution to these problems by June so that we do not once again fall behind and again create the same problems

---

[9] *See* Table 3, Project Unobligated Cash Reserves at Beginning of Fiscal Year, 1996-2005 (Attachment 8).

[10] *See* Table 2 (Attachment 5).

[11] The BIA has conceded in past decisions that accumulated unobligated cash should be credited to the water users in future years, so the idea of a credit is neither new nor unreasonable. *See* 1997 Decision, at 10 and n.36.

**DRAFT—PRIVILEGED AND CONFIDENTIAL**

we face now. If this cannot be done, the District will be forced to seek its remedies in the Court of Federal Claims or through other legal avenues. We cannot stress enough how concerned the District is with the current budget process and how determined the District is to find a solution to these issues through whatever means are necessary.

If you have any questions or wish to discuss this proposal further, please do not hesitate to contact me. Given the deadlines that your office has currently imposed, I would appreciate a response to our proposal by Friday, February 24, 2006.

Very truly yours,

Salmon, Lewis and Weldon, P.L.C.

By Riney B. Salmon II

cc: Brian Bowker, Deputy Regional Director for Trust Services
Board of Directors, San Carlos Irrigation and Drainage District
Douglas Mason, General Manager, San Carlos Irrigation and Drainage District
Jennifer K. Giff, Senior Counsel, Gila River Indian Community
Rodney B. Lewis, Esq.
Donald R. Pongrace, Esq.
Cecil Antone, Director, Office of Water Rights, Gila River Indian Community
Gary Parker, Manager, Gila River Indian Irrigation and Drainage District