*Total Estimated Burden Hours:* 67,550.

*Status:* Revision of a currently approved collection.

**Authority:** Section 3507 of the Paperwork Reduction Act of 1995, 44 U.S.C. 35, as amended.

Dated: April 16, 2007.

**Lillian L. Deitzer,**

*Departmental Paperwork Reduction Act Officer, Office of the Chief Information Officer.*

[FR Doc. E7–7480 Filed 4–20–07; 8:45 am]

**BILLING CODE 4210–67–P**

---

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. FR–5125–N–16]**

## Federal Property Suitable as Facilities To Assist the Homeless

**AGENCY:** Office of the Assistant Secretary for Community Planning and Development, HUD.

**ACTION:** Notice.

**SUMMARY:** This Notice identifies unutilized, underutilized, excess, and surplus Federal property reviewed by HUD for suitability for possible use to assist the homeless.

**EFFECTIVE DATE:** April 20, 2007.

**FOR FURTHER INFORMATION CONTACT:** Kathy Ezzell, Department of Housing and Urban Development, Room 7262, 451 Seventh Street, SW., Washington, DC 20410; telephone (202) 708–1234; TTY number for the hearing- and speech-impaired (202) 708–2565, (these telephone numbers are not toll-free), or call the toll-free Title V information line at 1–800–927–7588.

**SUPPLEMENTARY INFORMATION:** In accordance with the December 12, 1988 court order in *National Coalition for the Homeless* v. *Veterans Administration,* No. 88–2503–OG (D.D.C.), HUD publishes a Notice, on a weekly basis, identifying unutilized, underutilized, excess and surplus Federal buildings and real property that HUD has reviewed for suitability for use to assist the homeless. Today's Notice is for the purpose of announcing that no additional properties have been determined suitable or unsuitable this week.

Dated: April 12, 2007.

**Mark R. Johnston,**

*Deputy Assistant Secretary for Special Needs.*

[FR Doc. E7–7284 Filed 4–19–07; 8:45 am]

**BILLING CODE 4210–67–P**

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### Rate Adjustments for Indian Irrigation Projects

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Rate Adjustments.

**SUMMARY:** The Bureau of Indian Affairs (BIA) owns, or has an interest in, irrigation facilities located on various Indian reservations throughout the United States. We are authorized to establish rates to recover the costs to administer, operate, maintain, and rehabilitate those facilities. We are notifying you that we have adjusted the irrigation assessment rates at several of our irrigation facilities for operation and maintenance.

**DATES:** *Effective Date:* The irrigation assessment rates shown in the tables are effective on January 1, 2007.

**FOR FURTHER INFORMATION CONTACT:** For details about a particular BIA irrigation project, please use the tables in **SUPPLEMENTARY INFORMATION** section to contact the regional or local office where the project is located.

**SUPPLEMENTARY INFORMATION:** A Notice of Proposed Rate Adjustment was published in the **Federal Register** on November 24, 2006 (71 FR 67897), to adjust the irrigation rates at several BIA irrigation facilities. The public and interested parties were provided an opportunity to submit written comments during the 60-day period prior to January 23, 2007.

#### Did the BIA defer any proposed rate increases?

For the Uintah Indian Irrigation Project, the BIA, in consultation with the tribes and Irrigation Project water users, has deferred the rate increase for 2007.

For the Flathead Indian Irrigation Project, the BIA, in consultation with the tribes and Irrigation Project water users, has deferred the rate increase for 2008.

#### Did the BIA receive any comments on the proposed irrigation assessment rate adjustments?

Written comments were received for the proposed rate adjustments for the Blackfeet Irrigation Project, Montana, Fort Peck Irrigation Project, Montana, Fort Belknap Irrigation Project, Montana, the Flathead Irrigation Project, Montana, the San Carlos Irrigation Project—Joint Works (SCIP–JW), Arizona, Walker River Irrigation Project, Nevada, and the Wind River Irrigation Project, Wyoming.

#### What issues were of concern by the commenters?

The commenters were concerned with one or more of the following issues: (1) How funds collected from stakeholders are expended on operation and maintenance (O&M); (2) the impact of an assessment rate increase on the local agricultural economy and on individual land owners and irrigators; (3) BIA O&M subsidies for trust land; (4) drainage of water from farm lands and on farm improvements; (5) non-delivery of water to water users with outstanding O&M charges. The following comments are specific to the Walker River Irrigation Project, Nevada: (1) Safety of dams project which will shorten water delivery time; (2) breach of trust issues; and (3) whether the rate increase violates federal law. The following comments are specific to the San Carlos Irrigation Project—Joint Works: (1) The amount of project reserve funds, income, and expenditures; and (2) the timeliness of the rate adjustment notice.

#### How does BIA respond to the concern of how funds are expended for O&M?

BIA includes the following expenses in irrigation project budgets: Project personnel costs; materials and supplies; vehicle and equipment repairs; equipment; capitalization expenses; acquisition expenses; rehabilitation costs; maintenance of a reserve fund for contingencies or emergencies; and other expenses we determine necessary to properly operate and maintain the irrigation projects.

One common misconception water users have is that all salary costs are administrative. Only a portion of each project budget is for administrative costs. The administrative costs include the office costs, office staff (accounting and clerical), and a portion of the project manager's salary. The O&M workers are considered O&M costs for operating and maintaining the project.

The Government Accountability Office (GAO) completed an audit report (GAO–06–314) in February 2006. In that report, the GAO recommended that the BIA require project managers to meet at least twice annually with water users. On July 21, 2006, the Director, BIA, directed each BIA revenue-generating irrigation project to meet, at a minimum, twice annually with its water users—once at the end of the irrigation season and once before the next season. For projects that operate year round, those projects will determine their best schedule for holding these meetings. At these meetings, the irrigation staff will

provide to the waters users information on project operations, including budget plans and actual annual expenditures, and will obtain feedback and input from the water users.

The BIA's budget estimates and records of expenditures for all of its irrigation facilities are public records and available for review by stakeholders or interested parties. Stakeholders (project water users/land owners/tribes) can review these records during normal business hours at the individual agency offices.

Alternatively, BIA may treat requests to review project records as requests under the Freedom of Information Act (FOIA) and provide copies of such records to the requesting party in accordance with FOIA. To review or to obtain copies of these records, stakeholders, and interested parties are directed to contact the BIA representative at the specific facility serving them, using the tables in the **SUPPLEMENTARY INFORMATION** section.

**How does BIA respond to concerns about irrigation O&M assessment rate increase and related impact on the local agricultural economy and on individual land owners and irrigators?**

All of the BIA's irrigation projects are important economic contributors to the local communities they serve, contributing millions in crop value annually. Historically, BIA tempered irrigation rate increases based in part on the economic impact on water users. This tempering of rate increases has resulted in a rate deficiency at most of the irrigation projects.

Over the past several years, the BIA's irrigation program has been the subject of several Office of Inspector General (OIG) and GAO audits. In the most recent OIG audit, No. 96–I–641, March 1996, the OIG concluded, ''Operation and maintenance revenues were insufficient to maintain the projects, and some projects had deteriorated to the extent that their continued capability to deliver water was in doubt. This occurred because operation and maintenance rates were not based on the full cost of delivering water, including the costs of systematically rehabilitating and replacing project facilities and equipment, and because project personnel did not seek regular rate increases to cover the full cost of operation.'' A previous OIG audit, No. 88–42, February 1988, reached the same conclusion. A separate audit, No. 95–I–1402, September 1995, performed on one of BIA's largest irrigation projects, Wapato Indian Irrigation Project, reinforced the general findings of the OIG on the BIA's irrigation program. This audit pointed out a lack of response by the BIA to the original findings of the OIG in addressing this critical issue over an extended period of time.

The BIA must systematically review and evaluate irrigation assessment rates and adjust them, when necessary, to reflect the full costs to properly operate, and perform all appropriate maintenance on the irrigation facility infrastructure for safe and reliable operation. If this review and evaluation are not accomplished, a rate deficiency can eventually accumulate. Overcoming rate deficiencies can result in the BIA having to raise irrigation assessment rates in larger increments and over shorter time frames than would have been otherwise necessary.

**How does the BIA respond to removing O&M subsidies for trust land?**

In the past, BIA has provided limited appropriated funds to irrigation projects to assist the projects in their operations and maintenance and, at a few projects, subsidized the O&M costs for trust lands. Unfortunately, the BIA does not have sufficient discretionary funding to continue this practice in the future. Without the necessary rate increases, the impact to projects as a result of the lack of adequate O&M funds could result in the inability to deliver water and maintain irrigation system components adequately.

**How does BIA respond to concerns about drainage of water off farm lands and on-farm improvements?**

The BIA is responsible for the O&M of the irrigation delivery system and is not responsible for on-farm activities. In 25 Code of Federal Regulations (CFR), Section 171.8, Surface Drainage, it states that the water users are responsible for surface drainage resulting from their irrigation practices.

**How does BIA respond to concerns about non-delivery of water to water users with outstanding O&M charges?**

The BIA's irrigation O&M regulations, 25 CFR 171.17, require payment of annual O&M assessments before irrigation water may be delivered. This requirement includes delinquent payments and balances that have been referred to the Department of the Treasury pursuant to the Debt Collection Improvement Act of 1996 and Federal debt collection standards at 31 CFR Part 901.

**The Following comments Are Specific to Walker River Irrigation Project, Nevada**

The Walker River Paiute Tribe (Tribe) objects to the proposed O&M rate increase from $7.32 to $10.00 per acre because: (1) Weber Dam and Reservoir are subject to interim operating criteria for safety of dams reasons, which require the operation of the Reservoir at lower elevations than are normal, and the water users thereby receive a reduced amount of stored water; (2) BIA failed to justify the increased O&M rate; (3) it is a breach of trust duty for the BIA to increase the O&M rate; and (4) the rate increase violates Federal law.

**How does the BIA respond to objections that raising the O&M rates when the safety of dams project may shorten water delivery time and that the BIA failed to justify the rate increase?**

Weber Dam Operations—In CY 2007, water supply shortages are more likely to be caused by the below average snowfall and precipitation in the basin (less than 40 percent of normal this year according to the National Resources Conservation Service) than by the interim operating criteria at Weber Dam. The Tribe and the BIA have worked closely in CY 2007 to manage the safety of dams repair activities in a way to minimize inconvenience to the water users in the Project. The BIA's O&M costs to operate the Project in 2007 remain the same regardless of the available water supply in the system.

BIA's O&M Budget Justification—BIA provided a detailed O&M budget justification to the Project water users on May 23, 2006, and the O&M budget justification was discussed with the Project water users again on September 28, 2006. The budget justification shows that the increased O&M rate proposed for 2007 still does not cover all of BIA's costs for O&M of the Project and does not include funds to maintain a reserve fund or to pay for deferred maintenance costs.

**How does the BIA respond to comments regarding breaching its trust duty?**

The BIA disagrees that increasing O&M rates for Indian irrigation projects violates any trust duty to Indian tribes. The BIA, pursuant to 25 U.S.C. 381 *et seq.* and 25 CFR part 171, has responsibilities to administer constructed Indian irrigation projects, set rates, collect assessments, and make decisions regarding water delivery on BIA irrigation projects. The BIA must collect O&M assessments in order to operate and maintain the irrigation infrastructure. Over time, costs of

operating and maintaining the projects increase, and rates must be adjusted accordingly to enable the BIA to continue to provide irrigation services. This is particularly true because O&M rates are the only regular source of funding for the BIA's irrigation projects. Contrary to the assertion of the commenter, there is no fiduciary obligation for the Department's O&M of irrigation projects. *See, e.g.*, *Grey* v. *United States*, 21 Cl. Ct. 285 (1990), *aff'd*, 935 F.2d 281 (Fed. Cir. 1991), *cert. denied*, 502 U.S. 1057 (1992).

**How does the BIA respond to the rate increase that violates federal law?**

The Tribe stated that ''* * * 25 U.S.C. Section 385 states that costs incurred by the BIA may be reimbursed by farmers only if the farmers have adequate funds to repay the Government.'' This statement misconstrues 25 U.S.C. 385. The Secretary's authorization to set O&M charges is not subject to a determination of an individual's ability to pay. The provision quoted from 25 U.S.C. 385 refers only to repayment of construction costs. 25 U.S.C. 385 codifies several separate provisions taken from the Act of August 14, 1914, Pub. L. 63–160, 38 Stat. 582, 583. In addition to authorizing the Secretary to set and assess O&M rates on irrigation projects, the 1914 Act also appropriated a lump sum of money to use for construction of irrigation projects. The second provision of 25 U.S.C. 385, regarding reimbursement of construction costs where Indians have the ability to pay, only applies to the construction money appropriated in the 1914 Act and does not relate to the Secretary's O&M rate-setting authority.

The following comment is specific to San Carlos Irrigation Project—Joint Works (SCIP–JW).

**How does BIA respond to concerns regarding how funds collected from stakeholders are expended on O&M; the amount of project reserve funds, income and expenditures; and the timeliness of the rate adjustment notice?**

By letter dated January 22, 2007, an Attorney for the San Carlos Irrigation and Drainage District (District) submitted comments on the proposed 2008 budget and O&M rate for the San Carlos Irrigation Project (Project). On August 8, 2006, the District filed a Complaint in the United States Court of Federal Claims (Case No. 06–576C). The Complaint raises most of the same factual and legal issues the District raised in its comments about the Project's proposed O&M rate and budget for 2008. Because Federal court litigation is pending concerning most of the issues raised in the District's comments on the proposed 2008 O&M rate and budget, specific responses to these issues will not be discussed here.

As noted in the District's comments, on or before December 31, 2007, the Project and the District will learn whether the provisions of the Arizona Water Settlement Act (Settlement Act) are deemed effective, which will then trigger the timelines for establishment of the Joint Works Board under the Settlement Act. This process will require the Project and the affected water users to clarify and evaluate future O&M rates, activities and costs, and responsibilities as required by the Settlement Act and implementing agreements.

**Did the BIA receive comments on any proposed changes other than rate adjustments?**

No.

**Does this notice affect me?**

This notice affects you if you own or lease land within the assessable acreage of one of our irrigation projects or if you have a carriage agreement with one of our irrigation projects.

**Where can I get information on the regulatory and legal citations in this notice?**

You can contact the appropriate office(s) stated in the tables for the irrigation project that serves you, or you can use the Internet site for the Government Printing Office at *http://www.gpo.gov.*

**What authorizes BIA to issue this notice?**

Our authority to issue this notice is vested in the Secretary of the Interior by 5 U.S.C. 301 and the Act of August 14, 1914 (38 Stat. 583; 25 U.S.C. 385). The Secretary has in turn delegated this authority to the Assistant Secretary—Indian Affairs under Part 209, Chapter 8.1A, of the Department of the Interior's Departmental Manual.

**Who can I contact for further information?**

The following tables are the regional and project/agency contacts for our irrigation facilities.

| Project name | Project/agency contacts |
|---|---|
| **Northwest Region Contacts** | |
| Stanley Speaks, Regional Director, Bureau of Indian Affairs, Northwest Regional Office, 911 N.E. 11th Avenue, Portland, Oregon 97232–4169, Telephone: (503) 231–6702 | |
| Flathead Irrigation Project | Ernest T. Moran, Superintendent, Flathead Agency Irrigation Division, P.O. Box 40, Pablo, MT 59855–0040, Telephone: (406) 675–2700. |
| Fort Hall Irrigation Project | Eric J. LaPointe, Superintendent, Alan Oliver, Supervisory General Engineer, Fort Hall Agency, P.O. Box 220, Fort Hall, ID 83203–0220, Telephone: (208) 238–2301. |
| Wapato Irrigation Project | Pierce Harrison, Project Administrator, Wapato Irrigation Project, P.O. Box 220, Wapato, WA 98951–0220, Telephone: (509) 877–3155. |
| **Rocky Mountain Region Contacts** | |
| Ed Parisian, Acting Regional Director, Bureau of Indian Affairs, Rocky Mountain Regional Office, 316 North 26th Street, Billings, Montana 59101, Telephone: (406) 247–7943 | |
| Blackfeet Irrigation Project | Stephen Pollock, Superintendent, Ted Hall, Irrigation Project Manager, Box 880, Browning, MT 59417, Telephones: (406) 338–7544, Superintendent, (406) 338–7519, Irrigation Project Manager. |
| Crow Irrigation Project | Ed Lone Fight, Superintendent, Karl Helvik, Irrigation Project Manager, P.O. Box 69, Crow Agency, MT 59022, Telephones: (406) 638–2672, Superintendent, (406) 638–2863, Irrigation Project Manager. |
| Fort Belknap Irrigation Project | Judy Gray, Superintendent, Ralph Leo, Irrigation Project Manager, R.R.1, Box 980, Harlem, MT 59526, Telephones: (406) 353–2901, Superintendent, (406) 353–2905, Irrigation Project Manager. |

| Project name | Project/agency contacts |
|---|---|
| Fort Peck Irrigation Project | Vacant, Superintendent, P.O. Box 637, Poplar, MT 59255, Vacant, Irrigation Manager 602 6th Avenue North, Wolf Point, MT 59201, Telephones: (406) 768–5312, Superintendent, (406) 653–1752, Irrigation Manager. |
| Wind River Irrigation Project | George Gover, Superintendent, Ray Nation, Acting Irrigation Project Manager, P.O. Box 158, Fort Washakie, WY 82514, Telephones: (307) 332–7810, Superintendent, (307) 332–2596, Irrigation Project Manager. |
| **Southwest Region Contacts** | |
| Larry Morrin, Regional Director, Bureau of Indian Affairs, Southwest Regional Office, 1001 Indian School Road, Albuquerque, New Mexico 87104, Telephone: (505) 563–3100 | |
| Pine River Irrigation Project | Ross P. Denny, Superintendent, John Formea, Irrigation Engineer, P.O. Box 315, Ignacio, CO, 81137–0315, Telephones: (970) 563–4511, Superintendent, (970) 563–1017, Irrigation Engineer. |
| **Western Region Contacts** | |
| Alan Anspach Regional Director, Bureau of Indian Affairs, Western Regional Office, Two Arizona Center 400 N. 5th Street, 12th floor, Phoenix, Arizona 85004, Telephone: (602) 379–6600 | |
| Colorado River Irrigation Project | Perry Baker, Superintendent, Ted Henry, Irrigation Project Manager, R.R. 1 Box 9–C, Parker, AZ 85344, Telephone: (928) 669–7111. |
| Duck Valley Irrigation Project | Robert Hunter, Acting Superintendent, 1555 Shoshone Circle, Elko, NV 89801, Telephone: (775) 738–0569. |
| Fort Yuma Irrigation Project | Sam Rideshorse, Superintendent P.O. Box 11000, Yuma, AZ 85366, Telephone: (520) 782–1202. |
| San Carlos Irrigation Project Joint Works. | Carl Christensen, Supervisory General Engineer, P.O. Box 250, Coolidge, AZ 85228, Telephone: (520) 723–6216. |
| San Carlos Irrigation Project Indian Works. | Joe Revak, Supervisory General Engineer, Pima Agency, Land Operations, Box 8, Sacaton, AZ, 85247, Telephone: (520) 562–3372. |
| Uintah Irrigation Project | Lynn Hansen, Irrigation Manager, P.O. Box 130, Fort Duchesne, UT 84026, Telephone: (435) 722–4341. |
| Walker River Irrigation Project | Robert Hunter, Superintendent, 311 E. Washington Street, Carson City, NV 89701, Telephone: (775) 887–3500. |

**What irrigation assessments or charges are proposed for adjustment by this notice?**

The rate table below contains the 2007 final rates for all of our irrigation projects where we recover our costs for operation and maintenance. The table also contains the proposed and final rates for the 2008 season and subsequent years where applicable. An asterisk immediately following the name of the project notes the irrigation projects where rates are have been adjusted.

NORTHWEST REGION RATE TABLE

| Project name | Rate category | Final 2006 rate | Final 2007 rate | Final 2008 rate |
|---|---|---|---|---|
| Flathead Irrigation Project | Basic Per acre—A | $21.45 | $23.45 | $23.45. |
| | Basic Per acre—B | 10.75 | 10.75 | 10.75. |
| | Minimum Charge per tract | 65.00 | 65.00 | 65.00. |
| Fort Hall Irrigation Project* | Basic Per acre | 24.00 | 27.00 | To be determined. |
| | Minimum Chare per tract | 25.00 | 25.00 | |
| Fort Hall Irrigation Project—Minor Units* | Basic Per acre | 15.00 | 17.00 | |
| | Minimum Charge per tract | 25.00 | 25.00 | |
| Fort Hall Irrigation Project—Michaud* | Basic Per acre | 34.00 | 35.75 | |
| | Pressure Per acre | 48.50 | 50.00 | |
| | Minimum Charge per tract | 25.00 | 25.00 | |
| Wapato Irrigation Project—Toppenish/Simcoe Units*. | Billing Charge Per Tract | 5.00 | 5.00 | |
| | Farm unit/land tracts up to one acre (minimum charge). | 13.50 | 14.00 | |
| | Farm unit/land tracts up to one acre—per acre. | 13.50 | 14.00 | |
| Wapato Irrigation Project—Ahtanum Units* | Billing Charge Per Tract | 5.00 | 5.00 | |
| | Farm unit/land tracts up to one acre (minimum charge). | 13.50 | 14.00 | |
| | Farm unit/land tracts up to one acre | 13.50 | 14.00 | |
| Wapato Irrigation Project—Satus Unit* | Billing Charge Per Tract | 5.00 | 5.00 | |
| | Farm unit/land tracts up to one acre (minimum charge). | 53.00 | 55.00 | |
| | "A" farm unit/land tracts over one acre—per acre. | 53.00 | 55.00 | |
| | Additional Works farm unit/land tracts over one acre—per acre. | 58.00 | 60.00 | |

NORTHWEST REGION RATE TABLE—Continued

| Project name | Rate category | Final 2006 rate | Final 2007 rate | Final 2008 rate |
|---|---|---|---|---|
| | "B" farm unit/land tracts over one acre—per acre. | 63.00 | 65.00 | |
| | Water Rental Agreement Lands—per acre .... | 64.50 | 67.00 | |

ROCKY MOUNTAIN REGION RATE TABLE

| Project name | Rate category | Final 2006 rate | Final 2007 rate | Final 2008 rate |
|---|---|---|---|---|
| Blackfeet Irrigation Project* | Basic-per acre | 13.00 | 15.50 | To be determined. |
| Crow Irrigation Project—Willow* Creek O&M (includes Agency, Lodge Grass #1, Lodge Grass #2, Reno, Upper Little Horn, and Forty Mile Units). | Basic-per acre | 17.30 | 19.30 | |
| Crow Irrigation* Project—All Others (includes Bighorn, Soap Creek, and Pryor Units). | Basic-per acre | 17.00 | 19.00 | |
| Crow Irrigation Two Leggins Drainage District | Basic-per acre | 2.00 | 2.00 | |
| Fort Belknap* Irrigation Project | Trust Land per acre | 8.50 | 13.88 | 20.00. |
| | non-Trust Land per acre | 17.00 | 18.50 | 20.00. |
| Fort Peck Irrigation Project* | Basic-per acre | 17.50 | 20.00 | To be determined. |
| Wind River Irrigation Project* | Basic-per acre | 14.00 | 15.00 | |
| Wind River Irrigation Project—LeClair District | Basic-per acre | 17.00 | 17.00 | |

SOUTHWEST REGION RATE TABLE

| Project name | Rate category | Final 2006 rate | Final 2007 rate |
|---|---|---|---|
| Pine River Irrigation Project* | Minimum Charge per tract | $50.00 | $50.00 |
| | Basic-per acre | 13.00 | 150.00 |

WESTERN REGION RATE TABLE

| Project name | Rate category | Final 2006 rate | Final 2007 rate | Proposed 2008 rate | Proposed 2009 rate |
|---|---|---|---|---|---|
| Colorado River Irrigation Project | Basic per acre up to 5.75 acre-feet | $47.00 | $47.00 | To be determined | To be determined. |
| | Excess Water per acre-foot over 5.75 acre-feet. | 17.00 | 17.00 | | |
| Duck Valley Irrigation Project | Basic-per acre | 5.30 | 5.30 | | |
| Fort Yuma Irrigation Project (See Note #1)*. | Basic-per acre up to 5.0 acre-feet | 65.00 | 72.00 | | |
| | Excess Water per acre-foot over 5.0 acre-feet. | 10.50 | 10.50 | | |
| San Carlos Irrigation Project (Joint Works)* (See Note #2). | Basic-per acre | 30.00 | 30.00 | $21.00 Final 2008 Rate. | $21.00. Final 2009 Rate. |
| San Carlos Irrigation Project (Indian Works). | Basic-per acre | 77.00 | 77.00 | To be determined | To be determined. |
| Uintah Irrigation Project | Basic-per acre | 12.00 | 12.00 | | |
| | Minimum Bill | 12.00 | 25.00 | | |
| Walker River Irrigation Project* | Indian per acre | 7.32 | 10.00 | 13.00 | $16.00. |
| | Non-Indian per acre | 15.29 | 16.00 | 16.00 | $16.00. |

* Notes irrigation projects where rates are have been adjusted.

Note #1—The O&M rate for the Fort Yuma Irrigation Project has two components. The first component is the O&M rate established by the Bureau of Reclamation (BOR), the owner and operator of the Project. The BOR rate for 2007 has been established at $65 which is an increase from the $62 rate in 2006. The second component is for the O&M rate established by BIA to cover administrative costs, including billing and collections for the Project. Through this notice, the BIA is establishing a $7/acre O&M rate for its component of the rate. The BIA rate assessment would cover approximately 50 percent of the accounting technician and 40 percent of the Natural Resource Officer at the BIA Fort Yuma Agency.

Note #2—The 2008 and 2009 irrigation rates are final through this notice. The 2007 rate was established by final notice published in the FEDERAL REGISTER on April 5, 2006 (Vol. 71, No. 65, page 17131).

**Consultation and Coordination With Tribal Governments (Executive Order 13175)**

The BIA irrigation projects are vital components of the local agriculture economy of the reservations on which they are located. To fulfill its responsibilities to the tribes, tribal organizations, water user organizations, and the individual water users, the BIA communicates, coordinates, and consults on a continuing basis with these entities on issues of water delivery, water availability, and costs of administration, operation, maintenance,

and rehabilitation. This is accomplished at the individual irrigation projects by Project, Agency, and Regional representatives, as appropriate, in accordance with local protocol and procedures. This notice is one component of the BIA's overall coordination and consultation process to provide notice and request comments from these entities on adjusting our irrigation rates.

**Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use (Executive Order 13211)**

The rate adjustments will have no adverse effects on energy supply, distribution, or use (including a shortfall in supply, price increases, and increase use of foreign supplies) should the proposed rate adjustments be implemented. This is a notice for rate adjustments at BIA-owned and operated irrigation projects, except for the Fort Yuma Irrigation Project. The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation with a portion serving the Fort Yuma Reservation.

**Regulatory Planning and Review (Executive Order 12866)**

These rate adjustments are not a significant regulatory action and do not need to be reviewed by the Office of Management and Budget under Executive Order 12866.

**Regulatory Flexibility Act**

This rate making is not a rule for the purposes of the Regulatory Flexibility Act because it is ''a rule of particular applicability relating to rates.'' 5 U.S.C. 601(2).

**Unfunded Mandates Act of 1995**

These rate adjustments impose no unfunded mandates on any governmental or private entity and are in compliance with the provisions of the Unfunded Mandates Act of 1995.

**Takings (Executive Order 12630)**

The Department has determined that these rate adjustments do not have significant ''takings'' implications. The rate adjustments do not deprive the public, State, or local governments of rights or property.

**Federalism (Executive Order 13132)**

The Department has determined that these rate adjustments do not have significant Federalism effects because they pertain to Federal-tribal relations and will not interfere with the roles, rights, and responsibilities of States.

**Civil Justice Reform (Executive Order 12988)**

In accordance with Executive Order 12988, the Office of the Solicitor has determined that this rule does not unduly burden the judicial system and meets the requirements of sections 3(a) and 3(b)(2) of the Order.

**Paperwork Reduction Act of 1995**

These rate adjustments do not affect the collections of information which have been approved by the Office of Information and Regulatory Affairs, Office of Management and Budget, under the Paperwork Reduction Act of 1995. The OMB Control Number is 1076–0141 and expires August 31, 2009.

**National Environmental Policy Act**

The Department has determined that these rate adjustments do not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement is required under the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4370(d)).

Dated: April 12, 2007.

**Carl J. Artman,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. E7–7558 Filed 4–19–07; 8:45 am]

BILLING CODE 4310–W7–P

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

**[NV–040–06–5101–ER–F344; (N–78091)]**

### Notice of Availability of the Draft Environmental Impact Statement (DEIS) for a Proposed Coal-Fired Electric Power Generating Plant in Eastern White Pine County and Notice of Public Meetings; Nevada

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of Availability.

**SUMMARY:** Pursuant to section 102(2)(C) of the National Environmental Policy Act (NEPA) of 1969, a DEIS has been prepared by the Bureau of Land Management (BLM), Ely Field Office for the White Pine Energy Station (WPES) and is now available for comment. This document evaluates the environmental effects from constructing a coal-fired electric power generating plant (up to 1,600-megawatts) and associated features on public lands in White Pine County, Nevada.

**DATES:** The DEIS is now available for comment. Copies of the DEIS will be mailed to individuals, agencies, or companies who previously requested copies. Mailed comments on the DEIS must be postmarked by June 19, 2007. Written comments on the document should be addressed to Jack Tribble, Acting Assistant Field Manager, Bureau of Land Management, Ely Field Office, HC 33 Box 33500, Ely, NV 89301–9408. Oral and/or written comments may also be presented at two public meetings. There will one public meeting in Ely and one public meeting in Reno. The date, time, and location will be made available at least 15 days before each meeting.

**ADDRESSES:** Public reading copies of the DEIS will be available for reading at public libraries listed below:

—University of Nevada-Reno, Getchell Library, Government Publication Dept., Reno, NV 89507.
—Washoe County Library, 301 South Center Street, Reno, NV 89501.
—White Pine County Library, 950 Campton Street, Ely, NV 89301.

A limited number of copies of the document will be available at the following BLM offices:

—Bureau of Land Management, Elko Field Office, 3900 Idaho Street, Elko, NV 89801.
—Bureau of Land Management, Carson City Field Office, 5665 Morgan Mill Road, Carson City, NV 89701.
—Bureau of Land Management, Ely Field Office, 702 North Industrial Way, Ely, NV 89301–9408.
—Nevada State Office, 1340 Financial Boulevard, Reno, NV 89502–7147.
—Washington Office of Public Affairs, 18th and C Street, NW., Washington, DC 20240.

Individual respondents may request confidentiality. If you wish to withhold your name and/or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comments. Such requests will be honored to the extent allowed by law. All submissions from organizations, businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses will be available for public inspection in their entirety.

**FOR FURTHER INFORMATION CONTACT:** Doris Metcalf at the above address, or phone: 775–289–1852.

**SUPPLEMENTARY INFORMATION:** The DEIS addresses alternatives to resolve the following major issues: Ground water, air quality, visual resources, biological resources, and socioeconomic effects.

The Proposed Action includes the following actions: Northern coal-fired power plant site right-of-way (ROW),