**Federal Register** / Vol. 70, No. 191 / Tuesday, October 4, 2005 / Notices **57889**

''take'' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct (16 U.S.C. 1538). However, under section 10(a) of the ESA, we may issue permits to authorize ''incidental take'' of listed fish and wildlife species. Incidental take is defined by the ESA as take that is incidental to, and not the purpose of, carrying out an otherwise lawful activity. Regulations governing incidental take permits for threatened and endangered species are found at 50 CFR 17.32 and 17.22, respectively. All species included on the permit would receive assurances under the Service's ''No Surprises'' regulation.

The applicant has applied to the Service for a 20-year incidental take permit for the endangered Hawaiian Petrel (*Pterodroma sandwichensis*), threatened Newell's (Townsend's) Shearwater (*Puffinus auricularis newelli*), endangered Nene (*Branta sandvicensis*), and the endangered Hawaiian Hoary Bat (*Lasiurus cinereus semotus*) (covered species), pursuant to section 10(a)(1)(B) of the ESA. The activities proposed to be covered by the permit include the construction and operation of the island of Maui's first commercial wind energy generation facility. The proposed facility would consist of 20 General Electric wind-generation turbines, situated in a single articulated row at an elevation extending from approximately 2,000 to 3,200 feet in the vicinity of existing Maui Electric Company (MECO) transmission lines. The height of each proposed monopole steel turbine tower is 55 meters (180 feet), and the diameter of the rotors is 70.5 meters (231 feet), for a total peak structural height of approximately 90 meters (296 feet). The proposed project would include an operation and maintenance facility, a substation and wind monitoring equipment, all situated in proximity to the turbines, as well as improvements and some realignment to an existing four-wheel-drive access road.

The entire facility has the capacity to generate 30 megawatts of power, which would eliminate the use of approximately 150,000 to 250,000 barrels of oil annually, thereby reducing annual emissions from the MECO power plant by approximately 177.6 million pounds of carbon dioxide, 1.24 million pounds of sulfur dioxide and 0.32 million pounds of nitrogen oxides.

Incidental take of covered species may occur as a result of these proposed covered activities. The applicant proposes to avoid, minimize, and mitigate the impacts of the taking of these species by implementing at a minimum the following measures: (1) Using ''monopole'' steel tubular towers to eliminate perching and nesting opportunities and minimize collision risk; (2) utilizing a rotor with a significantly lower rotation speed (11–20 rpm) which makes the rotor more visible during operations; (3) choosing a site in proximity to existing electrical transmission lines to eliminate the need for an overhead transmission line from the project to the interconnect location; (4) restricting construction activity to daylight hours to avoid the use of nighttime lighting; (5) implementing a minimal lighting plan for the wind turbines and minimizing on-site lighting to reduce impacts to birds attracted to lights; (6) limiting on-site vegetation to that which is already established to eliminate new foraging attractions for Nene; (7) conducting surveys during nesting and fledging seasons of the covered birds during the first year of project operation to better understand the species' habits and population status and document the response to turbines; (8) conducting surveys to locate unknown or unconfirmed nesting colonies of Hawaiian Petrels and Newell's Shearwaters in West Maui, estimate nest numbers and distribution, identify management needs and implement management measures where possible; (9) providing financial contribution to the Nene propagation and release program and funding construction and operation of a new release facility for Nene for 5 years; and (10) contributing $20,000 to the Hawaiian Bat Research Cooperative and conducting surveys for bat activity within the project area.

Our Environmental Assessment considers the direct, indirect, and cumulative effects of the proposed action of permit issuance, including the measures that would be implemented to minimize and mitigate such impacts. The Environmental Assessment contains an analysis of two alternatives: (1) The No Action Alternative (no permit issuance); and (2) the Proposed Action Alternative (construction and operation of the Kaheawa Pastures Wind Generation Facility as proposed with the issuance of the permit and implementation of the HCP). Alternative turbine designs and alternative sites were considered but not analyzed in detail in the Environmental Assessment because these alternatives were infeasible.

This notice is provided pursuant to section 10(a) of the ESA and the regulations of the National Environmental Policy Act (NEPA) of 1969 (40 CFR 1506.6). We will evaluate the permit application, associated documents, and comments submitted thereon to determine whether the application meets the requirements of NEPA regulations and section 10(a) of the ESA. If we determine that those requirements are met, we will issue a permit to the applicant.

Dated: September 28, 2005.

**David J. Wesley,**

*Deputy Regional Director, Regional Office, Portland, Oregon.*

[FR Doc. 05–19825 Filed 10–3–05; 8:45 am]

BILLING CODE 4310–55–P

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### Rate Adjustments for Indian Irrigation Projects

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of proposed rate adjustments.

**SUMMARY:** The Bureau of Indian Affairs (BIA) owns, or has an interest in, irrigation facilities located on various Indian reservations throughout the United States. We are required to establish rates to recover the costs to administer, operate, maintain, and rehabilitate those facilities. We request your comments on the proposed rate adjustments.

**DATES:** Interested parties may submit comments on the proposed rate adjustments on or before December 5, 2005.

**ADDRESSES:** All comments on the proposed rate adjustments must be in writing and addressed to: Arch Wells, Acting Deputy Director, Office of Trust Services, Attn.: Irrigation and Power, Mail Stop 4655–MIB, 1849 C Street, NW., Washington, DC 20240, Telephone (202) 208–5480.

**FOR FURTHER INFORMATION CONTACT:** For details about a particular irrigation project, please use the tables in **SUPPLEMENTARY INFORMATION** section to contact the regional or local office where the project is located.

**SUPPLEMENTARY INFORMATION:** The tables in this notice list the irrigation project contacts where the BIA recovers its costs for local administration, operation, maintenance, and rehabilitation, the current irrigation assessment rates, and the proposed rates for the 2006 irrigation season and subsequent years where applicable.

**What are some of the terms I should know for this notice?**

The following are terms we use that may help you understand how we are applying this notice.

*Administrative costs* means all costs we incur to administer our irrigation projects at the local project level. Local project level does not normally include the Agency, Region, or Central Office costs unless we state otherwise in writing.

*Assessable acre* means lands designated by us to be served by one of our irrigation projects and to which we provide irrigation service and recover our costs. (See *Total assessable acres.*)

*BIA* means the Bureau of Indian Affairs.

*Bill* means our statement to you of the assessment charges and/or fees you owe the United States for administration, operation, maintenance, and/or rehabilitation. The date we mail or hand deliver your bill will be stated on it.

*Costs* mean the costs we incur for administration, operation, maintenance, and rehabilitation to provide direct support or benefit to an irrigation facility.

*Customer* means any person or entity that we provide irrigation service to.

*Due date* is the date on which your bill is due and payable. This date will be stated on your bill.

*I, me, my, you,* and *your* means all interested parties, especially persons or entities that we provide irrigation service to and receive beneficial use of our irrigation projects affected by this notice and our supporting policies, manuals, and handbooks.

*Irrigation project* means, for the purposes of this notice, the facility or portions thereof, that we own, or have an interest in, including all appurtenant works, for the delivery, diversion, and storage of irrigation water to provide irrigation service to customers to whom we assess periodic charges to recover our costs to administer, operate, maintain, and rehabilitate. These projects may be referred to as facilities, systems, or irrigation areas.

*Irrigation service* means the full range of services we provide customers of our irrigation projects, including, but not limited to, water delivery. This includes our activities to administer, operate, maintain, and rehabilitate our projects.

*Maintenance costs* means all costs we incur to maintain and repair our irrigation projects and equipment of our irrigation projects and is a cost factor included in calculating your operation and maintenance (O&M) assessment.

*Minimum charge* means some irrigation facilities may assess a minimum operation and maintenance charge. A minimum charge is designed to cover the minimum costs of providing irrigation service to a customer. At these facilities, if the minimum charge is more than the assessment calculated by multiplying the total assessable acres of your land by the annual operation and maintenance assessment rate, you will be billed the minimum charge.

*Must* means an imperative or mandatory act or requirement.

*Operation and maintenance (O&M) assessment* means the periodic charge you must pay us to reimburse our costs and to receive services and water from the project.

*Operation or operating costs* means costs we incur to operate our irrigation projects and equipment and is a cost factor included in calculating your O&M assessment.

*Past due bill* means a bill that has not been paid by the close of business on the 30th day after the due date, as stated on the bill. Beginning on the 31st day after the due date we begin assessing additional charges accruing from the due date.

*Rehabilitation costs* means costs we incur to restore our irrigation projects or features to original operating condition or to the nearest state which can be achieved using current technology and is a cost factor included in calculating your O&M assessment.

*Total assessable acres* means the total acres served by one of our irrigation projects.

*Total O&M cost* means the total of all the allowable and allocatable costs we incur for administering, operating, maintaining, and rehabilitating our irrigation projects serving your farm unit.

*Water* means water we deliver at our projects for the general purpose of irrigation and other purposes we agree to in writing.

*Water delivery* is an activity that is part of the irrigation service we provide our customers when water is available.

*We, us,* and *our* means the United States Government, the Secretary of the Interior, the BIA, and all who are authorized to represent us in matters covered under this notice.

**Does this notice affect me?**

This notice affects you if you own or lease land within the assessable acreage of one of our irrigation projects, or you have a carriage agreement with one of our irrigation projects.

**Where can I get information on the regulatory and legal citations in this notice?**

You can contact the appropriate office(s) stated in the tables for the irrigation project that serves you, or you can use the Internet site for the Government Printing Office at *http://www.gpo.gov.*

**Why are you publishing this notice?**

We are publishing this notice to notify you that we propose to adjust one or more of our irrigation assessment rates. This notice is published in accordance with the BIA's regulations governing its operation and maintenance of irrigation projects, specifically, 25 CFR 171.1. These sections provide for the fixing and announcing of the rates for annual assessments and related information for our irrigation projects.

**What authorizes you to issue this notice?**

Our authority to issue this notice is vested in the Secretary of the Interior by 5 U.S.C. 301 and the Act of August 14, 1914 (38 Stat. 583; 25 U.S.C. 385). The Secretary has in turn delegated this authority to the Assistant Secretary—Indian Affairs under Part 209, Chapter 8.1A, of the Department of the Interior's Departmental Manual.

**When will you put the rate adjustments into effect?**

We will put the rate adjustments into effect for the 2006 irrigation season and subsequent years where applicable.

**How do you calculate irrigation rates?**

We calculate irrigation assessment rates in accordance with 25 CFR 171.1(f) by estimating the cost of normal operation and maintenance at each of our irrigation projects. The cost of normal operation and maintenance means the expenses we incur to provide direct support or benefit for an irrigation project's activities for administration, operation, maintenance, and rehabilitation. These costs are then applied as stated in the rate table in this notice.

**What kinds of expenses do you include in determining the estimated cost of normal operation and maintenance?**

We include the following expenses:

(a) Personnel salary and benefits for the project engineer/manager and project employees under their management control;

(b) Materials and supplies;

(c) Major and minor vehicle and equipment repairs;

(d) Equipment, including transportation, fuel, oil, grease, lease and replacement;
(e) Capitalization expenses;
(f) Acquisition expenses;
(g) Maintenance of a reserve fund available for contingencies or emergency expenses for, and insuring, reliable operation of the irrigation project;
(h) Other expenses we determine necessary to properly perform the activities and functions characteristic of an irrigation project; and
(i) Rehabilitation costs.

**When should I pay my irrigation assessment?**

We will mail or hand deliver your bill notifying you of the amount you owe to the United States and when such amount is due. If we mail your bill, we will consider it as being delivered no later than 5 business days after the day we mail it. You should pay your bill no later than the close of business on the 30th day after the due date stated on the bill.

**What information must I provide for billing purposes?**

We must obtain certain information from you to ensure we can properly process, bill for, and collect money owed to the United States. We are required to collect the taxpayer identification number or social security number to properly bill the responsible party and service the account under the authority of, and as prescribed in, Public Law 104–143, the Debt Collection Improvement Act of 1996.
(a) At a minimum, this information is:
(1) Full legal name of person or entity responsible for paying the bill;
(2) Adequate and correct address for mailing or hand delivering our bill; and
(3) The taxpayer identification number or social security number of the person or entity responsible for paying the bill;
(b) It is your responsibility to ensure we have correct and accurate information for paragraph (a) of this section.
(c) If you are late paying your bill due to your failure to furnish such information or comply with paragraph (b) of this section, you cannot appeal your bill on this basis.

**What can happen if I do not provide the information required for billing purposes?**

We can refuse to provide you irrigation service.

**If I allow my bill to become past due, could this affect my water delivery?**

If we do not receive your payment before the close of business on the 30th day after the due date stated on your bill, we will send you a past due notice. The past due notice will have additional information concerning your rights. We will consider your past due notice as delivered no later than 5 business days after the day we mail it. We have the right to refuse water delivery to any of your irrigated land on which the bill is past due. We can continue to refuse water delivery until you pay your bill or make payment arrangements that we agree to. Our authority to demand payment of your past due bill is 31 CFR 901.2, ''Demand for Payment.''

**Are there any additional charges if I am late paying my bill?**

Yes. We will assess you interest on the amount owed and use the rate of interest established annually by the Secretary of the United States Treasury (Treasury) to calculate what you will be assessed (31 CFR 901.9(b)). You will not be assessed this charge until your bill is past due. However, if you allow your bill to become past due, interest will accrue from the due date, not the past due date. Also, you will be charged an administrative fee of $12.50 for each time we try to collect your past due bill. If your bill becomes more than 90 days past due, you will be assessed a penalty charge of 6 percent per year and it will accrue from the date your bill initially became past due. Our authority to assess interest, penalties, and administration fees on past due bills is prescribed in 31 CFR 901.9, ''Interest, penalties, and costs.''

**What else can happen to my past due bill?**

If you do not pay your bill or make payment arrangements that we agree to, we are required to send your past due bill to the Treasury for further action. We must send your bill to Treasury no later than 180 days after the original due date of your irrigation assessment bill. The requirement for us to send your unpaid bill to Treasury is prescribed in 31 CFR 901.1, ''Aggressive agency collection activity.''

**Who can I contact for further information?**

The following tables are the regional and project/agency contacts for our irrigation facilities.

| Project name | Project/agency contacts |
|---|---|
| **Northwest Region Contacts** | |
| Stanley Speaks, Regional Director, Bureau of Indian Affairs, Northwest Regional Office 911 N.E. 11th Avenue, Portland, Oregon 97232–4169, Telephone: (503) 231–6702 | |
| Flathead Irrigation Project | Ernest T. Moran, Superintendent, Flathead Agency Irrigation Division, P.O. Box 40, Pablo, MT 59855–0040, Telephone: (406) 675–2700. |
| Fort Hall Irrigation Project | Eric J. LaPointe, Superintendent, Alan Oliver, Irrigation Project Engineer, Fort Hall Agency, P.O. Box 220, Fort Hall, ID 83203–0220, Telephone: (208) 238–2301. |
| Wapato Irrigation Project | Pierce Harrison, Project Administrator, Wapato Irrigation Project, P.O. Box 220, Wapato, WA 98951–0220, Telephone: (509) 877–3155. |
| **Rocky Mountain Region Contacts** | |
| Keith Beartusk, Regional Director, Bureau of Indian Affairs, Rocky Mountain Regional Office 316 North 26th Street, Billings, Montana 59101, Telephone: (406) 247–7943. | |
| Blackfeet Irrigation Project | Ross Denny, Superintendent, Ted Hall, Irrigation Project Manager, Box 880, Browning, MT 59417, Telephones: (406) 338–7544, Superintendent, (406) 338–7519, Irrigation. |
| Crow Irrigation Project | Ed Lone Fight, Superintendent, Irrigation Project Manager, Vacant, P.O. Box 69, Crow Agency, MT 59022, Telephones: (406) 638–2672, Superintendent, (406) 638–2863, Irrigation. |
| Fort Belknap Irrigation Project | Judy Gray, Superintendent, Ralph Leo, Irrigation Project Manager, R.R.1, Box 980, Harlem, MT 59526, Telephones: (406) 353–2901, Superintendent, (406) 353–2905, Irrigation. |

| Project name | Project/agency contacts |
|---|---|
| Fort Peck Irrigation Project | Spike Bighorn, Superintendent, P.O. Box 637, Poplar, MT 59255, Vacant, Irrigation Manager 602 6th Avenue North, Wolf Point, MT 59201, Telephones: (406) 768–5312, Superintendent, (406) 653–1752, Irrigation. |
| Wind River Irrigation Project | George Gover, Superintendent, Ray Nation, Acting Irrigation Project Manager, P.O. Box 158, Fort Washakie, WY 82514, Telephones: (307) 332–7810, Superintendent, (307) 332–2596, Irrigation. |
| **Southwest Region Contacts** | |
| Larry Morrin, Regional Director, Bureau of Indian Affairs, Southwest Regional Office, 1001 Indian School Road, Albuquerque, New Mexico 87104, Telephone: (505) 563–3100. | |
| Pine River Irrigation Project | Diana Olguin, Acting Superintendent, John Formea, Irrigation Engineer, P.O. Box 315, Ignacio, CO 81137–0315, Telephones: (970) 563–4511, Superintendent, (970) 563–1017, Irrigation. |
| **Western Region Contacts** | |
| Brian Bowker, Acting Regional Director, Bureau of Indian Affairs, Western Regional Office, P.O. Box 10, Phoenix, Arizona 85001, Telephone: (602) 379–6600. | |
| Colorado River Irrigation Project | Allen Anspach, Superintendent, Ted Henry, Irrigation Project Manager, R.R. 1 Box 9–C, Parker, AZ 85344, Telephone: (928) 669–7111. |
| Duck Valley Irrigation Project | Virgil Townsend, Superintendent, 1555 Shoshone Circle, Elko, NV 89801, Telephone: (775) 738–0569. |
| Fort Yuma Irrigation Project | William Pyott, Land Operations Officer, P.O. Box 11000, Yuma, AZ 85366, Telephone: (520) 782–1202. |
| San Carlos Irrigation Project Joint Works. | Carl Christensen, Supervisory General Engineer, P.O. Box 250, Coolidge, AZ 85228, Telephone: (520) 723–6216. |
| San Carlos Irrigation Project Indian Works. | Joe Revak, Supervisory General Engineer, Pima Agency, Land Operations, Box 8, Sacaton, AZ 85247, Telephone: (520) 562–3372. |
| Uintah Irrigation Project | Lynn Hansen, Irrigation Manager, P.O. Box 130, Fort Duchesne, UT 84026, Telephone: (435) 722–4341. |
| Walker River Irrigation Project | Robert Hunter, Superintendent, 1677 Hot Springs Road, Carson City, NV 89706, Telephone: (775) 887–3500. |

**What irrigation assessments or charges are proposed for adjustment by this notice?**

The rate table below contains the current rates for all of our irrigation projects where we recover our costs for operation and maintenance. The table also contains the proposed rates for the 2006 season and subsequent years where applicable. An asterisk immediately following the name of the project notes the irrigation projects where rates are proposed for adjustment.

| Project name | Rate category | Current 2005 rate | Proposed 2006 rate |
|---|---|---|---|
| **Northwest Region Rate Table** | | | |
| Flathead Irrigation Project* | Basic Per acre | $21.45 | $23.45 |
| Fort Hall Irrigation Project* | Basic Per acre | 22.00 | 24.00 |
| Fort Hall Irrigation Project—Minor Units* | Basic Per acre | 14.00 | 15.00 |
| Fort Hall Irrigation Project—Michaud* | Basic Per acre | 33.00 | 34.00 |
| | Pressure Per acre | 46.50 | 48.50 |
| Wapato Irrigation Project—Toppenish/Simcoe Units* | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge). | 13.00 | 13.50 |
| | Farm unit/land tracts over one acre—per acre. | 13.00 | 13.50 |
| Wapato Irrigation Project—Ahtanum Units* | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge). | 13.00 | 13.50 |
| | Farm unit/land tracts over one acre—per acre. | 13.00 | 13.50 |
| Wapato Irrigation Project—Satus Unit* | Billing Charge Per Tract | 5.00 | 5.00 |
| | Farm unit/land tracts up to one acre (minimum charge). | 51.00 | 53.00 |
| | “A” farm unit/land tracts over one acre—per acre. | 51.00 | 53.00 |
| | Additional Works farm unit/land tracts over one acre—per acre. | 56.00 | 58.00 |
| | “B” farm unit/land tracts over one acre—per acre. | 61.00 | 63.00 |
| | Water Rental Agreement Lands—per acre. | 62.00 | 64.50 |

| Project name | Rate category | Current 2005 rate | Proposed 2006 rate | Proposed 2007 rate |
|---|---|---|---|---|
| **Rocky Mountain Region Rate Table** | | | | |
| Blackfeet Irrigation Project | Basic-per acre | $13.00 | $13.00 | To be determined. |
| Crow Irrigation Project—Willow Creek O&M* | Basic-per acre | 16.00 | 17.30 | |
| Crow Irrigation Project—All Others* | Basic-per acre | 16.00 | 17.00 | |
| Fort Belknap Irrigation Project* | Trust Land per acre | 7.75 | 8.50 | $9.25 |
| | non-Trust Land per acre | 15.50 | 17.00 | $18.50 |
| Fort Peck Irrigation Project* | Basic-per acre | 17.50 | 18.50 | To be determined. |
| Wind River Irrigation Project | Basic-per acre | 14.00 | 14.00 | |
| Wind River Irrigation Project—LeClair District | Basic-per acre | 17.00 | 17.00 | |

| Project name | Rate category | Current 2005 rate | Proposed 2006 rate |
|---|---|---|---|
| **Southwest Region Rate Table** | | | |
| Pine River Irrigation Project* | Minimum Charge per tract | $25.00 | $100.00 |
| | Basic-per acre (includes $2.00 assessment for Vallecito storage). | 8.50 | 17.00 |

| Project name | Rate category | Current 2005 rate | Proposed 2006 rate | Proposed 2007 rate |
|---|---|---|---|---|
| **Western Region Rate Table** | | | | |
| Colorado River Irrigation Project | Basic per acre up to 5.75 acre-feet. | $47.00 | $47.00 | To be Determined. |
| | Excess Water per acre-foot over 5.75 acre-feet. | 17.00 | 17.00 | |
| Duck Valley Irrigation Project | Basic-per acre | 5.30 | 5.30 | |
| Fort Yuma Irrigation Project (See Note #1) | Basic-per acre Up to 5.0 acre-feet. | 65.00 | 65.00 | |
| | Excess Water per acre-foot over 5.0 acre-feet. | 10.50 | 10.50 | |
| San Carlos Irrigation Project (Joint Works) (See Note #2) | Basic-per acre | 30.00 | 30.00 | 30.00 |
| San Carlos Irrigation Project (Indian Works) | Basic-per acre | 77.00 | 77.00 | To be Determined. |
| Uintah Irrigation Project | Basic-per acre | 11.00 | 12.00 | |
| | Minimum Bill | 25.00 | 25.00 | |
| Walker River Irrigation Project | Indian per acre | 7.32 | 7.32 | |
| | non-Indian per acre | 15.29 | 15.29 | |

*Notes irrigation projects where rates are proposed for adjustment.

Note #1—The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation (Reclamation). The irrigation rates assessed for operation and maintenance are established by Reclamation and are provided for informational purposes only. The BIA collects the irrigation assessments on behalf of Reclamation.

Note #2—The 2007 irrigation rate of $30 per acre is proposed through this notice.

## Consultation and Coordination With Tribal Governments (Executive Order 13175)

The BIA irrigation projects are vital components of the local agriculture economy of the reservations on which they are located. To fulfill its responsibilities to the tribes, tribal organizations, water user organizations, and the individual water users, the BIA communicates, coordinates, and consults on a continuing basis with these entities on issues of water delivery, water availability, costs of administration, operation, maintenance, and rehabilitation. This is accomplished at the individual irrigation projects by Project, Agency, and Regional representatives, as appropriate, in accordance with local protocol and procedures. This notice is one component of the BIA's overall coordination and consultation process to provide notice and request comments from these entities on adjusting our irrigation rates.

## Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use (Executive Order 13211)

The rate adjustments will have no adverse effects on energy supply, distribution, or use (including a shortfall in supply, price increases, and increase use of foreign supplies) should the proposed rate adjustments be implemented. This is a notice for rate adjustments at BIA owned and operated irrigation projects, except for the Fort Yuma Irrigation Project. The Fort Yuma Irrigation Project is owned and operated by the Bureau of Reclamation with a portion serving the Fort Yuma Reservation.

## Regulatory Planning and Review (Executive Order 12866)

These rate adjustments are not a significant regulatory action and do not need to be reviewed by the Office of Management and Budget under Executive Order 12866.

## Regulatory Flexibility Act

This rate making is not a rule for the purposes of the Regulatory Flexibility Act because it is "a rule of particular applicability relating to rates." 5 U.S.C. 601(2).

**Unfunded Mandates Act of 1995**

These rate adjustments impose no unfunded mandates on any governmental or private entity and are in compliance with the provisions of the Unfunded Mandates Act of 1995.

**Takings (Executive Order 12630)**

The Department has determined that these rate adjustments do not have significant ''takings'' implications. The rate adjustments do not deprive the public, State, or local governments of rights or property.

**Federalism (Executive Order 13132)**

The Department has determined that these rate adjustments do not have significant Federalism effects because they pertain solely to Federal-tribal relations and will not interfere with the roles, rights, and responsibilities of states.

**Civil Justice Reform (Executive Order 12988)**

In accordance with Executive Order 12988, the Office of the Solicitor has determined that this rule does not unduly burden the judicial system and meets the requirements of sections 3(a) and 3(b)(2) of the Order.

**Paperwork Reduction Act of 1995**

These rate adjustments do not affect the collections of information which have been approved by the Office of Information and Regulatory Affairs, Office of Management and Budget, under the Paperwork Reduction Act of 1995. The OMB Control Number is 1076–0141 and expires April 30, 2006.

**National Environmental Policy Act**

The Department has determined that these rate adjustments do not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement is required under the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4370(d)).

Dated: September 20, 2005.

**Michael D. Olsen,**

*Acting Principal Deputy Assistant Secretary—Indian Affairs.*

[FR Doc. 05–19766 Filed 10–3–05; 8:45 am]

BILLING CODE 4310–W7–P

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

**[CO–820–02–5440–DT–C028]**

### Notice of Availability of Record of Decision for the San Juan/San Miguel Resource Management Plan (RMP) Amendment and Environmental Impact Statement (EIS)

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of availability of Record of Decision (ROD).

**SUMMARY:** In accordance with the National Environmental Policy Act (NEPA), the Federal Land Policy and Management Act (FLPMA), and the Bureau of Land Management (BLM) management policies, the BLM announces the availability of the RMP Amendment/ROD for the Silverton Outdoor Learning and Recreation Center (SOLRC). The SOLRC planning area is located in the San Juan/San Miguel Resource Area near Silverton, Colorado. The SOLCR RMP Amendment/ROD amends the San Juan/San Miguel RMP. The Colorado State Director will sign the SOLRC RMP Amendment/ROD, which becomes effective immediately.

**ADDRESSES:** Copies of the SOLRC RMP Amendment/ROD are available upon request from the Field Manager, Columbine Field office, Bureau of Land Management, 367 Pearl Street, Bayfield, Colorado (81122) or via the Internet at *http://www.co.blm.gov/sjra.* Copies may also be obtained by calling Richard Speegle, Project Manager, at 970–375–3310. Copies will also be available at the following local libraries:

Silverton Public Library, 1111 Reese Street, Silverton, Colorado (81433).

Durango Public Library, 1188 2nd Ave, Durango, Colorado (81301).

**FOR FURTHER INFORMATION CONTACT:** Richard Speegle, Project Manager, at 970–375–3310, (or e-mail at *richard_speegle@blm.gov*), San Juan Public Lands Center, 15 Burnett Ct., Durango, Colorado, 81301.

**SUPPLEMENTARY INFORMATION:** The SOLCR RMP Amendment/ROD was developed with broad public participation through a three year planning process. This RMP Amendment/ROD addresses management on approximately 1,300 acres of BLM lands, and 400 acres of private lands owned by the proponent. The ROD only applies to Federal lands. Other private lands are included within the planning area boundary because these lands are interspersed with the BLM managed lands. The issues of public safety, Canada lynx impacts, impacts on the local winter economy, impacts to neighboring private lands, public access and other related issues are addressed in the ROD.

The SOLRC EIS considered the environmental impacts associated with both the land use plan amendment (to add lift-served skiing and sightseeing to the list of allowable (kinds and levels of recreation) authorized on BLM-administered public lands specific to the SOLRC permit area within the Silverton Special Recreation Management Area (SRMA)), and the issuance of a lease to SOLRC to authorize a public ski area. The SOLRC RMP Amendment/ROD approves the land use plan amendment and allows the BLM to move forward with an implementation decision to issue the lease.

The SOLRC RMP Amendment/ROD is essentially the same as the Proposed RMP Amendment (PRMPA)/Final EIS (FEIS) published on August 6, 2004. BLM received two protests to the PRMPA/FEIS. No inconsistencies with the State or local plans, policies, or programs were identified during the Governor's consistency review of the PRMPA/FEIS. As a result, only one minor editorial modification was made in preparing the SOLCR RMP Amendment/ROD. This modification corrected an error that was noted during the protest period. An errata sheet is included with the SOLRC RMP Amendment/ROD that identifies the location of the corrections in the PRMPA/FEIS.

**Pauline Ellis,**

*Columbine Field Office Manager.*

[FR Doc. 05–19834 Filed 10–3–05; 8:45 am]

BILLING CODE 4310–JB–P

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

**[ES–960–1910–BJ] ES–053598, Group 22, Maine]**

### Notice of Filing of Plat of Survey; Maine

**AGENCY:** Bureau of Land Management.

**ACTION:** Notice of filing of plat of survey, Maine; correction.

**SUMMARY:** The Bureau of Land Management published a notice in the **Federal Register** concerning the filing of a plat of survey. The notice contained an incorrect meridian description.

**FOR FURTHER INFORMATION CONTACT:** Bureau of Land Management, 7450 Boston Boulevard, Springfield, Virginia