SALMON, LEWIS & WELDON, P.L.C.
Attorneys at Law

Riney B. Salmon II, P.C.
John B. Weldon, Jr.
Lisa M. McKnight
James R. Huntwork
Ronnie P. Hawks
Alexandra M. Arboleda
Jason P. Alberts

2850 E. Camelback Road, Suite 200
Phoenix, Arizona 85016
Telephone 602-801-9060
Facsimile 602-801-9070

M. Byron Lewis
Stephen E. Crofton
Mark A. McGinnis
Karen S. Gaylord
Kristin D. Magin
Rebecca C. Goldberg

*Of Counsel*
Richard N. Morrison

*Writer's Direct Line*
(602) 801-9060
*Writer's Internet Address*
*rbs@slwplc.com*

December 1, 2005

**Via overnight delivery,**
**for delivery by December 5, 2005**

Arch Wells
Acting Deputy Director
Office of Trust Services
Attn: Irrigation and Power
Mail Stop 4655-MIB
1849 C Street NW
Washington, D.C. 20240

Re: San Carlos Irrigation and Drainage District's Comments on Bureau of Indian Affairs' Proposed FY 2007 Budget and Operation and Maintenance Assessment Rate for San Carlos Irrigation Project, Arizona

Dear Mr. Wells:

This firm represents the San Carlos Irrigation and Drainage District ("District"), which consists of 50,000 acres of non-Indian lands in the San Carlos Irrigation Project ("Project") in Pinal County, Arizona. This letter constitutes the District's comments on, and objections to, the proposed operation and maintenance ("O&M") charge for the Project for fiscal year 2007 ("FY 2007"), which was published in the *Federal Register* on October 4, 2005.[1] The District strongly opposes the proposed rate of thirty dollars per acre and requests that the final rate be set at no more than fifteen dollars per acre or that the proposed rate be withdrawn pending further consultation with the District.

## I. The Bureau of Indian Affairs Has Completely Excluded the District from the Rate Setting Process for FY 2007, in Violation of the United States' Contractual Commitments, Applicable Law, and Agency Guidelines.

As the Bureau of Indian Affairs ("BIA") and Project officials are well aware, the District has never been pleased with the process for setting O&M assessment rates. The BIA has always

[1] *See* 70 Fed. Reg. 57,889.

limited the District's input into Project operations and budget preparation. More often than not, the District has struggled to obtain basic information regarding Project operations and accounting, information that should have been openly and freely provided. As a result, the District's comments on past assessment rates has usually been based upon limited information. Those comments often have gone ignored and the District has been unable to obtain reasonable answers to questions and issues that the District has been raising for years.

Nevertheless, in past years the Project has shared some information regarding proposed budgets for future years and has held at least one fact-finding meeting with District representatives. These meetings have provided some insight into the Project's intentions and provided a limited opportunity for the District to provide input to the Project.

For FY 2007, however, neither the Project nor the BIA have provided any information to the District regarding the proposed budget or assessment rate. No fact finding meetings have been held. No proposed budget has been transmitted to the District. No information of any kind, written or oral, has been provided to the District in support of the proposed assessment rate. Certainly, nothing in the Federal Register notice itself provides any information or data in support of the proposed rate. The only information provided to the District for FY 2007 was the single line and footnote in the Federal Register indicating that an assessment rate of thirty dollars per acre was being proposed.

A decision on the proposed assessment rate for FY 2007 under these circumstances would be the very definition of arbitrary and capricious agency action. Furthermore, the BIA's refusal to provide any information regarding FY 2007 violates the contractual and procedural rights of the District and its landowners, as well as the BIA's duty to treat those landowners with good faith and fair dealing. Although it was difficult for the District to provide meaningful comments in past years because of the limited information provided by the BIA regarding its budgets and assessment rates, it is utterly impossible for the District to provide meaningful comments for FY 2007 because the BIA has supplied absolutely no information or documentation to the District in support of the proposed assessment rate. Therefore, the following discussion is necessarily limited to summarizing the duties and obligations that the BIA has blatantly ignored in proposing an assessment rate for FY 2007.

### A. The United States has violated contractual commitments to the District by issuing a proposed FY 2007 assessment rate without prior consultation.

On June 27, 1924, Congress authorized construction of the Project to provide irrigation water for 50,000 acres of Indian lands and 50,000 acres of non-Indian lands within the Project boundaries.[2] The total cost of the Project—including construction, operation, and maintenance—was distributed one-half to the District's landowners equally per acre. The 1924 act authorized the Secretary to enter into a construction repayment contract with an irrigation

---

[2] *See* Act for the Continuance of Construction Work on the San Carlos Federal Irrigation Project in Arizona, and for Other Purposes, Pub. L. No. 68-210, 43 Stat. 475 ("1924 Act") (Exhibit 1).

district representing the landowners, i.e., the District. In 1931, the District entered into that repayment contract with the Secretary.[3] Under the Repayment Contract, the landowners agreed to pay an equal share of "the whole cost of operating and maintaining the works of the Project, after sums collected for excess water and other sums which may go to the operation and maintenance fund as provided herein have been deducted."[4]

The Repayment Contract expressly provides that the Project must maintain complete and accurate accounts and records with respect to the funds paid by District water users:

> BOOKS OF ACCOUNTS
>
> However the Project may be operated, whether entirely or partly by the United States, or entirely or partly by the District, full and accurate accounts shall be kept at all times by both the United States and the District of all receipts and expenditures and other fiscal operations in connection with the Project, and such accounts and the books showing them, and also all records, maps, plans, estimates, budgets and engineering data of the United States and the District concerning said Project, at all reasonable times, shall be open to the inspection of the United States and its agents, and of the District and its representatives and of all persons properly interested . . ..[5]

The Repayment Contract goes on to expressly require that "the United States and the District **shall inform and consult with each other** as to contemplated future steps of importance."[6] The consultation requirement is not a hope or aspiration. It is a contractual requirement that the United States is obligated to meet, one that the BIA has failed to satisfy in regard to the FY 2007 assessment rate.

### B. The BIA's actions violate the agency's own administrative decisions.

In 1938, the Assistant Secretary of the Interior issued an Order providing, among other things, that the District's landowners would pay an equal share of the O&M cost of the Project's Joint Works, exclusive of the cost of operating and maintaining the power generating plant at Coolidge Dam.[7] In the Joint Works Order, which still governs Project operations, the Assistant Secretary ordered that "records of the deliveries [of water] to District lands served through

---

[3] *See* Repayment Contract Between the United States and the San Carlos Irrigation and Drainage District, Arizona (June 8, 1931) ("Repayment Contract") (Exhibit 2).

[4] *Id.* at 7.

[5] *Id.* at 19.

[6] *Id.* (emphasis added).

[7] *See* Order Defining Joint, District and Indian Works of the San Carlos Federal Irrigation Project: Turning Over Operation and Maintenance of District Works to the San Carlos Irrigation and Drainage District, at 7 (June 15, 1938) ("Joint Works Order") (Exhibit 3).

Government operated canals will be furnished the District in detail for assessment purposes."[8] That requirement, which has never been rescinded or modified, has been completely ignored by the BIA in regard to the proposed assessment rate for FY 2007.

But that is not the only administrative decision violated by the BIA's FY 2007 rate proposal. In 1996, the District filed an appeal with the BIA's Acting Regional Director challenging the Project Engineer's recommendations regarding the 1998 O&M assessment rate. The District asserted that the Project Engineer's conclusions and recommendations were arbitrary and capricious and in violation of the federal laws and agreements governing the Project. The Acting Regional Director, agreeing with the District on numerous substantive and procedural issues, remanded the proposed 1998 O&M budget and assessment rate back to the Project.[9]

In that proceeding, one of the District's complaints was that the BIA had failed to provide explanations and documentation in support of its budget and assessment rate. The lack of explanation and information provided by the Project in support of the FY 1998 decision was highlighted by the Acting Regional Director, who noted that "[t]he BIA has a responsibility to explain the rationale and factual basis for decisions affecting persons dealing with the BIA, and failure to provide such information is a violation of due process."[10] In response to the District's complaints regarding various budget expenditures, the Acting Regional Director determined that the BIA had failed to provide sufficient information to explain the expenditures and deviations in the budget.[11] The Acting Regional Director concluded that the BIA's unilateral decisions, without notice or explanation to the District, were unacceptable:

> There is no clear response from the Project or any other explanation in the record about the huge unexplained variations in total expenses for the Project from spreadsheet to spreadsheet. This is particularly troubling due to the fact that the Project's O&M expenditures are funded by private funds collected by the Project from [District] landowners, and by Federal funds appropriated for the benefit of the Indian beneficiaries of the Project. It is essential from a procedural standpoint that the Project provide sufficient information to [the District] and the Indian Works to explain the expenditures on the budget spreadsheets as well as the basis for deviations from budget spreadsheets presented or approved in prior years. The Project fails to demonstrate in the record that it has met this threshold.[12]

---

[8] *Id.* at 15.

[9] *See* Decision of the Acting Area Director Regarding Notice of Appeal of the FY 1998 San Carlos Irrigation Project O&M Assessment Submitted by the San Carlos Irrigation and Drainage District (January 10, 1997) (Exhibit 4).

[10] *Id.* at 3.

[11] *See, e.g., id.* at 21; 22; and 24.

[12] *Id.* at 21.

The same and much more can be said of the BIA's decision regarding the FY 2007 budget. The BIA's failure to provide any explanation or support for its proposed assessment rate or even a proposed budget for the year, violates the District's contractual and due process rights. Furthermore, it violates the spirit and letter of the 1997 decision, the Joint Works Order, and federal administrative law.[13] Agencies are bound by their own decisions on an issue. The BIA should comply with its obligations under the Joint Works Order and 1997 decision of the Western Regional Director and provide the District with the information necessary to participate effectively in the rate-setting procedure.

**C. The BIA has ignored its own guidelines regarding rate assessments.**

The BIA maintains an Irrigation Handbook that provides guidelines for the operation of BIA irrigation projects.[14] That Handbook describes what the orientation of the BIA and the Project *should be* toward the District, its landowners, and other Project beneficiaries:

> O&M activities at BIA Indian irrigation projects are primarily funded by assessments charged to water users. O&M funding on some projects is federally subsidized. However, funded, **all irrigation project employees need to keep in mind that they are a service-oriented organization, with a primary responsibility to water users. Therefore, it is good business practice, and required by regulation and the [ to meet with the water users to discuss the O&M of the irrigation project.**[15]

The Handbook continues with a common sense discussion of why meetings with Project water users are necessary:

> [W]ater user fees pay for the O&M of the project (i.e., salaries, equipment costs, etc.). **The water users usually will know their area of the irrigation project better than employees of the project. They may be able to provide good suggestions on fixing problems and maintenance needs, and may be able to assist in performing the work. The water users want the irrigation project to operate efficiently; many depend on irrigation for their livelihood.**

---

[13] U.S. Const. amend. V; *Bowen v. American Hospital Ass'n*, 476 U.S. 610, 626-27 (1986); *Quileute Indian Tribe v. Portland Area Director*, 23 IBIA 20, 22 (1992).

[14] The most recent version of the Handbook that the District has been able to obtain is dated May 2002. Relevant portions of the Handbook are attached hereto as Exhibit 5.

[15] Irrigation Handbook at 83, § 11.1 (emphasis added).

> Water users are interested in what is planned for the project during the year. . . . Having these meetings . . . could provide information for all water users on the plan for the entire project.[16]

The items that should be discussed, at a minimum, are then listed:

> (1) Annual Budget and Workplan—**This is what most water users are interested in.** An important factor is to explain the budget breakdown as follows:
>
> > a. Administration—Project manager and irrigation accounting technicians [*sic*] salaries and office costs.
> >
> > b. Operations—Majority of ditchriders [*sic*] salaries and their equipment—pickups, etc.
> >
> > c. Maintenance—Majority of equipment operator salaries, maintenance equipment (including the cost of operating and maintaining the equipment), cost of transporting and purchasing equipment, ditchrider salaries and their equipment when involved in maintenance, and maintenance contracts.
>
> . . .
>
> **(2) Proposed O&M Assessment Rates—Any proposed changes in the O&M rates should be discussed. The project manager should explain the justification for the rate increase. Presentation of the budget and work plans would be helpful.**
>
> (3) Operational Policies—If operational policies change, they should be discussed. If it is a drought year, or there are changes in water rights or tribal water codes, water apportionments should be discussed.[17]

Despite the Irrigation Handbook's emphasis on open communication and cooperation between the BIA and its projects' beneficiaries, the BIA apparently believes that it can issue assessment rates for the Project without the District's participation in the decision-making process and without providing any support for what appears to be a completely arbitrary assessment rate. The Handbook helps document the BIA's aspirations for an open and cooperative rate-setting process. Unfortunately, however, the BIA's attitude to the Handbook is similar to its attitude in regard to contractual and legal commitments: the agency will honor those commitments only when it is convenient to do so.

---

[16] *Id.* at 84, § 11.2 (emphasis added).

[17] *Id.* at 84-86, § 11.2 (emphasis added).

## II. The United States' Delay in Establishing the Assessment Rate for FY 2007 Does Not Permit the Timely Collection of the Assessed Rate from the District's Landowners, in Violation of the United States Obligations and Duties.

For several years in its comments on annual assessment rates, the District has pointed out that the BIA is continuously late in publishing final assessment rates, making it impossible for the District to timely collect the assessments from District landowners under Arizona law, as required under the District's contracts with the United States.[18] Once again, the BIA has failed to publish the proposed rate for FY 2007, much less the final rate, in a timely fashion. If the Project had hoped to collect the FY 2007 assessment from the District by May 15, 2006, the BIA should have published the final assessment rate decision by July 1, 2005.

Nevertheless, the BIA will undoubtedly expect the District to pay in full the FY 2007 assessment by May 15, 2006, regardless of the BIA's own unexplained delay in finalizing the budget and assessment rate, or face termination of water deliveries to the District's landowners. But because the United States has not yet issued a final decision on the FY 2007 rate, it is impossible for the District to levy and collect irrigation district taxes before May 2006 in accordance with Arizona law.[19] It is completely unreasonable and unfair for the United States to publish rate decisions months or years after they are due, yet expect the District to make payment in a timely manner. It is arbitrary and capricious, if not tyrannical, for the United States to extort timely payments from the District, in disregard of the United States' own unclean hands and bad faith, by threatening termination of water deliveries to the District's landowners.

The District, therefore, requests that the United States waive its right to payment as required under the Repayment Contract and permit payment of the assessment rate no later than May 15, 2007. This is the earliest that the District will be able to assess and collect the FY 2007 assessment from its landowners under Arizona law. The Project had a cash surplus of over four million dollars as of September 30, 2005, which is more than sufficient to meet the Project's obligations until that time. Furthermore, permitting the delay is fair and equitable in light of the United States' own failure to meet its contractual obligations and publish a final decision in a timely manner.

---

[18] *See, e.g.*, Letter from Riney Salmon to Arch Wells, at comments on the FY 2006 assessment rates, at 17-19 (April 1, 2005) (Exhibit 6). The discussion of this issue from the District's comments on the FY 2006 assessment rate is incorporated herein by reference.

[19] In order to collect and pay the assessment by May 15, 2006, the District would have needed to notify the Pinal County Board of Supervisors before July 1, 2005 of the proper amount of assessment to levy against the District landowners. The first half of those landowner assessments would have been due by October 1, 2005 and delinquent if not paid by November 1, 2005. The second half of those assessments would have been due by March 1, 2006 and delinquent if not paid by May 1, 2006.

## III. Conclusion and Requested Action

The BIA has unilaterally issued a proposed assessment rate for FY 2007 with no opportunity offered to the District to discuss the Project's plans for the year, its budget, or its financial status. No information or data has been offered in support of the proposal and the basis for the proposed rate remains a mystery. The District has a contractual, legal, procedural, and ethical right to be supplied with the information that the BIA used in developing the rate so that the District can be provided reasoned comments based upon the facts and the law, rather than conjecture and guesswork.

The District requests that the BIA withdraw the proposed assessment rate of thirty dollars per acre for FY 2007; provide the District with information regarding the Project's plans and proposals for the FY 2007 budget; and provide the District with a meaningful opportunity to participate in the budget process. Only after such access to information is provided will the BIA be able to publish a proposed rate that satisfies the United States' legal and contractual duties to the District and its landowners. The District also requests that the BIA waive payment of any assessments for FY 2007 until the rate-making process is properly conducted, the final rate is determined, and the District is given adequate opportunity to collect assessments from its landowners under the procedures required by Arizona law. Furthermore, the District expressly requests that the BIA respond to the District's comments regarding these matters in the agency's final decision on the Project's FY 2007 assessment rate.

Very truly yours,

Salmon, Lewis & Weldon, P.L.C.

By
Riney B. Salmon II

cc: Senator Jon Kyl
Congressman Rick Renzi
Acting Western Regional Director, BIA
San Carlos Irrigation and Drainage District