IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-576C (Judge Block) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

APPENDIX TO
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

KIRK T. MANHARDT
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 353-0541
Facsimile: (202) 514-8640

Attorneys for Defendant

Index to Appendix

Letter to Douglas Mason from Ralph Esquerra, Project Engineer Enclosing SCIDD Board of Directors Action Items dated December 1, 1997 . . . . . . . . . . . . . . . . . . . 1

Letter to Paul Larkin, Pinal County, Enclosing Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 dated December 8, 1997

Joint Control Board Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 Final Executed Draft dated October 21, 2005

San Carlos Irrigation Operation and Maintenance Budget . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42 Prepared by R, Shaw, BIA dated May 19, 2006

Letter to Riney Salmon from Allen J. Anspach, Regional Director Re: FY2008 Operation and Maintenance Rate and Budget dated June 13, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Memorandum to Director, Bureau of Indian Affair from Allen J. Anspach, Regional Director, Subject: FY0008 and FY2009 O&M Rates dated June 13, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

Solicitation Offer and Award, (China Wash Flume) Award Executed September 28, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

Deposition of San Carlos Irrigation and Drainage District Pursuant to Rule 30 (b)(6) (Douglas Dean Mason), (excerpts) dated October 4, 2007 . . . . . . . . . . . . . . . . . . . . . . . 90

Deposition of Carl Alan Christensen (excerpts) dated October 1, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

Deposition of Russell Kaskalla (excerpts) dated October 3, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

Deposition of Lawrence Field (excerpts) dated January 17, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

Affidavit of Randy Shaw dated June 10, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-576C |
| | ) | (Judge Block) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

APPENDIX TO
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# PART I - PAGES 1 - 41

United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
SAN CARLOS IRRIGATION PROJECT
P.O. Box 250
Coolidge, Arizona 85228

IN REPLY REFER TO:

DEC - 1 1997

Mr. Douglas Mason, General Manager
San Carlos Irrigation and Drainage District
P. O. Box 218
Coolidge, Arizona 85228

Dear Mr. Mason:

The San Carlos Irrigation Project (SCIP), the San Carlos Irrigation and Drainage District (SCIDD), and the Indian Works have discussed the need for a process that will accomplish the goal of establishing annual budgets and fixing the annual operation and maintenance assessment in a timely manner. To this end, I am transmitting for the SCIDD Board of Directors' review and comment, the attachment which includes a list of action items associated with the FY 2000 Budget Formulation and Assessment Rate Setting Process.

In addition to this request for comments and recommendations regarding the budget formulation and assessment rate setting process, I am asking also for SCIDD's recommendations with respect to FY 2000 goals, priorities and needs. If SCIDD would like to offer some recommendations, I would appreciate receiving them by December 12, 1997.

If you have any questions or wish to discuss the attachment, please do not hesitate to contact me at (520) 723-7442.

Sincerely,

Ralph Esquerra
Project Engineer

Enclosure



4

ACTION ITEMS
FY 2000 BUDGET FORMULATION AND ASSESSMENT RATE SETTING PROCESS
IRRIGATION PROGRAM
SAN CARLOS IRRIGATION PROJECT

1. Notify Water Users of the timetable for the FY 2000 budget formulation and O&M assessment rate setting process. Complete by December 5, 1997.

2. Provide recommendations on the formulation, format, outline and content of FY 2000 Budget package and FY 2000 goals, priorities and needs with respect to operation and maintenance of the Joint Works. Complete by December 12, 1997.

3. Establish goals, priorities and needs that must be funded; identify resources required for priorities and needs; and prepare estimate of cost of FY2000 operation and maintenance. Complete by January 14, 1998.

4. Prepare draft of FY 2000 Budget package that includes data, justifications, cost estimate, and finding of proposed FY 2000 O&M Assessment rate. Complete by January 30, 1998.

5. Provide notice of Fact Finding Committee meeting, draft of FY 2000 Budget package to Water Users. Complete by February 3, 1998.

6. Hold Fact Finding Committee meeting to review and discuss FY 2000 Budget package. Complete by February 27, 1998.

7. Receive from Water Users written comments/recommendations on draft of FY 2000 Budget package. Complete by March 13, 1998.

8. Review written comments/recommendations received from Water Users and incorporate changes if necessary. Complete by March 27, 1998.

9 Provide notice of Fact Finding Committee meeting and revised draft of FY 2000 Budget package. Complete by April 3, 1998.

10 Hold Fact Finding Committee meeting to review and discuss revised draft of FY 2000 Budget package. Complete by April 24, 1998.

11. Receive from Water Users written comments/recommendations on revised draft of FY 2000 Budget package. Complete by May 8, 1998.

12. Review written comments/recommendations received from Water Users and incorporate

changes if necessary. Complete by May 22, 1998.

13. Send/submit recommendations and proposed final FY 2000 Budget package to Phoenix Area Director. Complete May by 28, 1998.

# SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT

P.O. BOX 213
COOLIDGE, ARIZONA 85228

DOUGLAS D. MASON
GENERAL MANAGER

HUGH A. FERGUSON
ASSISTANT MANAGER

TELEPHONE
(520) 723-5408
FAX
(520) 723-7965

J. MICHAEL URTON, PRESIDENT
C.R. "BOBBY" SKOUSEN, SECRETARY
MICKEY A. CLARK
STEVEN M. DALEY
DAVID DEBOLD
WALTER HOLLAND
JOHN H. DERMER
EMMIT RANKIN
MARVIN WUERTZ

RE
12-11-97
Irrigation
Accounting
Administration
Power
Project Engineer

December 8, 1997

Ralph Esquerra, Project Engineer
San Carlos Irrigation Project
Post Office Box 250
Coolidge, Arizona 85228

Dear Mr. Esquerra;

At the December 3, 1997 Board meeting you passed out an Action Items list with associated dates for the Fiscal Year 2000 Budget Formulation and Assessment Rate. I realize that we can not do now but next year we should include the expenditures for previous year's budget by December 1, 1997. Outside of that comment the goals and timetables look pretty decent. They may have to move one way or the other because of conflicts and times, but they look like acceptable goals at this time.

If you have any question, please call me.

Sincerely,

Douglas D. Mason

Douglas D. Mason
General Manager
DDMason:til



Power/Irr.

# SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT

PO BOX 218
COOLIDGE, ARIZONA 85228

CHAEL URTON, PRESIDENT
"BOBBY" SKOUSEN, SECRETARY
MICKEY A. CLARK
STEVEN M. DALEY
DOUGLAS GLADDEN
WALTER HOLLAND
JIM PATE
EMMIT RANKIN
JUSTIN ROBERTS

DOUGLAS D. MASON
GENERAL MANAGER

THERESA LARA
BUSINESS MANAGER

TELEPHONE
(520) 723-5408
FAX
(520) 723-7965

June 12, 2003

Paul Larkin, Assessor
Pinal County Board of Supervisors
P.O. Box 827
Florence, AZ 85232

Dear Pinal County Board of Supervisors:

There is transmitted herewith a certified copy of a Resolution passed by the Board of Directors of the San Carlos Irrigation and Drainage District on June 10, 2003 setting the amount necessary for the District Tax Levy for the fiscal year beginning the first day of July, 2003.

It will be noted that the levy submitted amounts to $51.00 per acre.

Sincerely,

Theresa L. Lara
Business Manager

ENCLOSURES

DX
9



SC03003

San Carlos Irrigation and Drainage District
Coolidge, AZ 85228

RESOLUTION OF THE BOARD OF DIRECTORS
FIXING DISTRICT TAX LEVY
FOR FISCAL YEAR BEGINNING JULY 1, 2003

BE RESOLVED THAT the Board of SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT, after full and careful consideration, does estimate that the amount of money required and necessary to meet the obligations of the District of the District for the ensuing year, beginning on the 1st day of July 2003 (for the calendar year 2004) is as follows:

| | |
|---|---|
| INCOME: | |
| Assessments Collected | 2,500,000.00 |
| M&S | 43,345 |
| Interest | 100,000 |
| Other Water Sales | 39,921 |
| CAP | |
| Miscellaneous | 61,325 |
| Total Income | 2,744,591 |
| CASH OUTLAYS: | |
| Legal | 350,000 |
| Administration | 460,000 |
| Operations | 295,000 |
| Maintenance | 525,000 |
| Capital Spending/Debt/Joint Works/CAP COGS | 1,115,000 |
| Total Expenditures | 2,745,000 |

| Acres Assessed: | 2004 Assessment Per/Acre Needed: |
|---|---|
| 49,360 | $51.00 |

To be assessed upon the 49,358 acres compromising the lands of the District. That it is advisable and necessary that said sum be provided by tax levy or assessment upon all lands of the District. The total number of taxable acres of land embraced within the District and the description of said lands are identical with and are the same lands described in the Order and Resolution of the Board of Supervisors to Pinal County, Arizona, passed and entered on record on Page 268-1/2 in Book 8 of the Proceedings of said Board of Supervisors on the 16th day of July 1928 with the exception that certain lands have been excluded form the District and other lands of an equal area are included

SC03004

within the District in lieu thereof by an order of inclusion and exclusion made and adopted by the Board of Directors of the District on the 3rd day of September 1935, and entered on the page 283 Book 21 of Miscellaneous Records of the Recorder of Pinal County, Arizona; and by an order of inclusion and exclusion made and adopted by the Board of Directors on the 14th day of July, 1936 and entered of Record at page 389, being fully set forth in said order Book 21 of miscellaneous Record of the Recorder of Pinal County, Arizona; and by order of inclusion and exclusion made and adopted by the Board of Directors of the District on the 20th day of December 1937 and entered of record at page 576, Book 21 of Miscellaneous Records of the Recorder of Pinal County, Arizona; and by order of inclusion and exclusion made and adopted by the Board of Directors of the District on the 3rd day of May 1966 and entered of record at pages 378 through 382, Docket 452 of the Recorder of Pinal County, Arizona and by the order of inclusion and exclusion made and adopted by the Board of Director of the District on the 5th day of May 1968, and entered of Record at pages 782 through 785, Docket 532 of the Recorder of Pinal County, Arizona; the description of said lands so excluded from and included within the District being fully set forth in said orders.

Dated: June 10, 2003

J. Michael Urton, President

C.R. Skousen, Secretary

SC03005

CERTIFICATE

STATE OF ARIZONA}
} ss
COUNTY OF PINAL }

I, C.R. Skousen, Secretary of the Board of Directors of the San Carlos Irrigation and Drainage District, do hereby certify the foregoing to be a full, true and correct copy of a Resolution passed by the Board of Directors at the regular meeting of said Board held in the office of the District in Coolidge, Arizona on June 10, 2003.

C.R. Skousen

# SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT

## 2004 ASSESSMENT

| | PROPOSED FY 2004 BUDGET |
|---|---|
| **INCOME:** | |
| Assessment Collected | 2,500,000 |
| M&S | 43,345 |
| Interest | 100,000 |
| Other water sales | 39,921 |
| CAP | |
| Miscellaneous | 61,325 |
| TOTAL INCOME | 2,744,591 |
| | |
| **CASH OUTLAYS:** | |
| Legal | 350,000 |
| Administration | 460,000 |
| Operations | 295,000 |
| Maintenance | 525,000 |
| Capital Spending / Debt/ JWorks / CAP COGS | 1,115,000 |
| TOTAL EXPENDATURES | 2,745,000 |
| | |
| NET SURPLUS (DEFICIT) FOR THE YEAR | (409) |
| **CASH** | |
| Cash (Per Balance Sheet) | 1,161,788 |
| Cash Collected In November (upcoming year's ass | (1,250,000) |
| Cash- Ending Bal | (88,212) |

| Acres assessed: | 2004 ASSESSMENT PER/ACRE NEEDED |
|---|---|
| 49,360 | $ 51 |

SC03007

Final Execution Draft
October 21, 2005

ATTACHMENT 2.14

**JOINT CONTROL BOARD AGREEMENT**
**AMONG THE GILA RIVER INDIAN COMMUNITY,**
**THE UNITED STATES OF AMERICA AND**
**THE SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT**

This Agreement is entered into as of the date executed below, by and among the Gila River Indian Community, the San Carlos Irrigation and Drainage District and the United States of America pursuant to section 203(d)(2)(A) of the Act.

**1.0 RECITALS**

**1.1 WHEREAS**, the Community, the District and the United States have executed the SCIDD Agreement whereby they have agreed to settle water rights and other claims of the Community and the United States permanently as provided for in the Settlement Agreement and to resolve permanently any disputes between the Community, the District and the United States over management and operation of the Project;

**1.2 WHEREAS**, the Community, the District and the United States wish to transfer the responsibility for overseeing the maintenance of the Project Joint Delivery Facilities from the Secretary, acting through the Bureau of Indian Affairs, to the joint control of the Community and the District; and

**1.3 WHEREAS**, notwithstanding such transfer of the maintenance of the Project Joint Delivery Facilities, the United States shall retain all Project ownership and obligations that it currently enjoys.

**NOW THEREFORE**, in consideration of the mutual promises contained in this Agreement and other valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Community, the District, and the United States agree as follows:

## 2.0 DEFINITIONS

Capitalized terms in this Agreement that are not expressly defined herein shall have the same meaning as in the Settlement Agreement or the SCIDD Agreement. The following terms shall have the following meanings when capitalized in this Agreement:

**2.1** "Agreement" shall mean this Agreement and the Attachments hereto, which are incorporated herein by this reference.

**2.2** "Annual Budget" shall mean the budget established by the Joint Control Board for each Year for the maintenance of the Project Joint Delivery Facilities.

**2.3** "Attachment" shall mean an Attachment to this Agreement.

**2.4** "Board Member" shall mean any person duly appointed to the Joint Control Board in accordance with Subparagraph 5.2 of this Agreement.

**2.5** "Dispute" shall mean any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, but not including any dispute, claim, question or disagreement arising from or relating to Attachment 6.2 or the SCIDD Agreement; provided however, that as to the United States, this Subparagraph 2.5 is limited by section 213(a) of the Act and by section 4 of the Act.

**2.6** "District" shall mean the San Carlos Irrigation and Drainage District.

**2.7** "GRIIDD" or "Gila River Indian Irrigation and Drainage District" shall mean the Community enterprise by that same name that has been established to operate irrigation and drainage facilities on the Reservation.

**2.8** "Joint Control Board" or "JCB" shall mean the entity established by the Community and the District to oversee the maintenance of the Project Joint Delivery Facilities pursuant to Paragraph 3.0.

**2.9** "Notice" shall mean any Notice given under this Agreement that is made in the manner provided in Subparagraph 9.17.

**2.10** "Paragraph" shall mean a paragraph of this Agreement.

**2.11** "Party" shall mean an entity, as defined in this Agreement, represented by a signatory to this Agreement and "Parties" shall mean all of such entities.

**2.12** "Project Joint Delivery Facilities" shall mean (i) the CRR Project Joint Delivery Facilities, (ii) the DRR Project Joint Delivery Facilities and (iii) the DRR Other Project Delivery Facilities; provided, however, that the DRR Other Project Delivery Facilities shall become DRR Project Delivery Facilities, at the earlier of: (a) the date upon which the rehabilitation of the Florence-Casa Grande Canal, or the construction of a replacement therefor, as contemplated by this Agreement, is completed, or (b) the date upon which the rehabilitation of the DRR Other Project Delivery Facilities, as contemplated by this Agreement is complete.

**2.13** "SCIDD Agreement" shall mean the Agreement among the Gila River Indian Community, the United States of America, and the San Carlos Irrigation and Drainage District, a copy of which is attached as exhibit 20.1 to the Settlement Agreement.

**2.14** "Subparagraph" shall mean a subparagraph of this Agreement.

**2.15** "Third Supplemental Repayment Contract" shall mean that agreement between the District and the United States, in its capacity as owner and operating agent for the Project, a copy of which is attached as attachment 6.2 to the SCIDD Agreement.

**2.16** "United States" or "United States of America" shall mean, the United States of America: (i) acting as trustee for the Community, Members and Allottees; (ii) as the holder of legal title to (but not the beneficial interest in) the Water Rights as described in articles V and VI of the Globe Equity Decree (but not on behalf of the San Carlos Apache Tribe pursuant to article VI(2) of the Globe Equity Decree) on behalf of the Project; (iii) as owner and operator of the Project; and, (iv) in no other capacity except where expressly stated otherwise herein.

**2.17** "1938 Order" shall mean the Order of the Department of the Interior dated June 15, 1938, entitled "ORDER DEFINING JOINT, DISTRICT AND INDIAN WORKS OF THE SAN CARLOS FEDERAL IRRIGATION PROJECT: TURNING OVER OPERATION AND MAINTENANCE OF DISTRICT WORKS TO THE SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT".

## 3.0 ESTABLISHMENT AND RESPONSIBILITIES OF JOINT CONTROL BOARD

**3.1** Within thirty (30) days of the occurrence of the Enforceability Date, the Community and the District shall establish the JCB for the maintenance of the Project Joint Delivery Facilities.

**3.2** Within eighteen (18) months following establishment of the JCB, the United States, subject to reasonable review and audit, shall:

**3.2.1** **Transfer**. Transfer to the JCB any and all financial reserves, materials and equipment that it holds for the operation and maintenance of the Project Joint Works, less any funds, materials and equipment necessary to accomplish the continuing responsibilities of the United States, as specified under the SCIDD Agreement and the Act.

**3.2.2** **Staff assignment**. Assign to the JCB, the Community or the District, with the written permission of the JCB, the Community, the District, and the individual employee, all Project staff members who are then assigned to the operation and maintenance of the Project Joint Works and are not necessary to accomplish the continuing responsibilities of the United States, as specified under the SCIDD Agreement and the Act; provided, however, that such assignments shall be in accordance with the Intergovernmental Personnel Act.

## 4.0 RIGHTS AND POWERS OF THE JCB

**4.1** **Purpose of JCB**. The JCB shall be created for the purposes specified in this Agreement and shall have the rights, privileges and powers conferred in this Agreement, which include, among other things, those necessary to:

- **4.1.1** Acquire, hold and dispose of, for the benefit of the JCB, all personal property that is necessary or useful, and lawful, in the conduct of its business;
- **4.1.2** Contract and be contracted with;
- **4.1.3** Provide by contract with the District, the Community or any other entity, for the performance of any service, that is authorized by this Agreement;
- **4.1.4** Do all things lawful and reasonably necessary in carrying out the purposes of this Agreement.

4.2 Actions and decisions of JCB. The actions and decisions of the JCB that pertain to the construction and maintenance of the Project Joint Delivery Facilities shall be subject to the approval of the Secretary, acting through the Bureau of Indian Affairs within thirty (30) days thereof, or sooner in emergency situations, which approval shall not be unreasonably withheld. Should a required decision of the Bureau of Indian Affairs not be received by the JCB within sixty (60) days following the action or decision of the JCB, the JCB action or decision shall be deemed to have been approved by the Secretary.

## 5.0 ADMINISTRATION

5.1 JCB; Board Member compensation; JCB employment of personnel; JCB Quorum.

**5.1.1** The management and control of the JCB is vested in the JCB that shall consist of three (3) persons who are appointed by the Gila River Indian Community Council and three (3) persons who are appointed by the Board of Directors of the District.

**5.1.2** Any Board Member may be removed by the Party that appointed that Board Member.

**5.1.3** No representatives shall receive a salary for his or her services. Representatives may be reimbursed for expenses, as the JCB may establish by resolution, to be just and reasonable.

**5.1.4** The JCB may employ such agents and personnel as may be necessary to conduct the affairs of the JCB.

**5.1.5** Four (4) Board Members, of which two (2) shall have been appointed by the Community and two (2) shall have been appointed by the District, shall

constitute a quorum and be required for the transaction of all JCB business. Should only five (5) Board Members be present, only two (2) Board Members from each Party may participate in any decision of the JCB.

5.2 <u>**Initial JCB appointments; term of office for Board Members; staggered appointments for Board Members; JCB vacancies**</u>.

**5.2.1** Not later than thirty (30) days after the Enforceability Date, the Community and the District shall appoint three (3) persons each to the JCB, at which time the JCB shall be established for purposes of the requirements of Subparagraph 3.0. The Community and the District shall each appoint one (1) for one (1) Year, one (1) for two (2) Years, and one (1) for three (3) Years; provided however, that, each person's appointment shall expire at 11:59 p.m. on December 31 of the Year in which their initial terms are otherwise anticipated to expire.

**5.2.2** Thereafter, each person's appointment shall be for three (3) Years, beginning at 12:01 a.m. on January 1 of the initial Year of the appointment and expiring at 11:59 p.m. on December 31 of the Year in which their terms are otherwise anticipated to expire, or until their successors are appointed and qualified, whichever occurs later.

**5.2.3** The regular appointment for Board Members shall occur not later than the third Wednesday during the November immediately preceding the expiration of the term of the incumbent Board Members whose terms are set to expire. There shall be no limitation on the number of terms, or number of successive terms, any person may serve as a Board Member.

**5.2.4** If a vacancy occurs as the result of a Community's appointee not serving a full term, the Community shall, within thirty days after the occurrence of the vacancy, appoint a successor to fill the vacancy for the unexpired term and provide written Notice of the same to all Parties and to the remaining Board Members. If a vacancy occurs as the result of a District's appointee not serving a full term, the District shall, within thirty (30) days after the occurrence of the vacancy, appoint a successor to fill the vacancy for the unexpired term and provide written Notice of the same to all Parties and to the remaining Board Members.

**5.3** **<u>Officers of the JCB</u>**.

**5.3.1** The officers of the JCB shall consist of a President and a Secretary-Treasurer. No two (2) officers shall be representatives appointed by the same Party. The term of office for an officer shall be one (1) Year until a successor is duly appointed and qualified.

**5.3.2** The first Year after the Enforceability Date, the Party from which the first President will be selected shall be determined by a toss of a coin. In each successive Year, the President shall alternate between a representative appointed by the Community and a representative appointed by the District.

**5.3.3** Officers of the JCB shall be appointed annually by the representatives of the Party having a Board Member in the office for such Year, and shall be voting Board Members, except as provided at Subparagraph 6.2.4, addressing conflicts of interests.

5.3.4 Any officer or Board Member may resign at any time by giving identical written Notice to the Parties and to all of the other Board Members. The resignation shall take effect thirty (30) days after the Notice is given or at any later time specified in the Notice. Unless otherwise specified in the Notice, the resignation need not be accepted to be effective.

5.4 **President's duties and powers**. The President shall preside at meetings of the JCB and shall exercise and perform such other powers and duties as the JCB may assign from time to time. When the President is absent from a convened meeting of the JCB, another Board Member from the Party of the President shall preside.

5.5 **Secretary-Treasurer's duties and powers**. The Secretary-Treasurer shall prepare and publish meeting Notices, agendas and minutes; shall maintain all historical documents; and shall be responsible for all recordkeeping and financial matters of the JCB.

5.5.1 The Secretary-Treasurer shall keep minutes of all JCB meetings, which shall, when approved by the JCB, be signed by at least one (1) Board Member from each Party and shall keep, or cause to be kept, at such place as may be directed by resolution of the JCB, a book of minutes of all meetings, proceedings, and actions of the JCB. Such minutes may be in electronic form. The minutes of meetings shall include the time and place that the meeting was held; whether the meeting was general or special, and, if special, how authorized; the Notice given; and the names of persons present at JCB meetings. The Secretary-Treasurer shall give, or cause to be given, Notice of all meetings of the JCB, such Notice to include an agenda

for said meeting that specifies all items that the JCB shall consider for action during the Noticed meeting. The Secretary-Treasurer shall have such other powers and perform such other duties as the JCB may require.

**5.5.2 Maintenance of accounts.**

**5.5.2.1** All warrants, contracts and instruments involving the payment of money by or creating any obligation binding upon the JCB shall be signed by at least one (1) Board Member from each appointing entity.

**5.5.2.2** The JCB shall retain the services of a certified public accountant who, under the general direction of the JCB and under the day-to-day direction of the Secretary-Treasurer, shall manage the collection, investment and disbursement of funds held by the JCB.

**5.5.2.3** From time-to-time, the JCB shall adopt policies and procedures to govern the financial management of its affairs.

**5.6 Meetings.**

**5.6.1** The JCB may provide for regular meetings by resolution stating the time and place of such regular meetings. The regular meetings shall be held, on a rotating basis, at such place on the Reservation as determined by the Board Members appointed by the Community and at such off-Reservation locations as determined by the Board Members appointed by the District.

**5.6.2** Special meetings of the JCB may be called by or at the request of a majority of the Board Members, or at the written request of any Party. Notice shall be given for any special meeting. The Notice shall state the

time and purpose of the meeting. The purpose and agenda for the meeting may be amended by unanimous vote of the Board Members that constitute the quorum for that meeting.

## 6.0 MAINTENANCE OF WATER DELIVERY FACILITIES BY JCB

**6.1** **Transfer of maintenance responsibilities**. Within eighteen (18) months after the Enforceability Date the Secretary shall transfer the maintenance responsibility for the Project Joint Delivery Facilities to the JCB. For purposes of this Agreement, the term "maintenance" shall include the repair and replacement of structures and facilities required for the efficient and cost effective operation of the Project Joint Delivery Facilities. Thereafter, the Project Joint Delivery Facilities shall be maintained by the JCB; provided, however, that the Joint Control Board and the United States shall immediately upon the Northside Canal becoming DRR Project Delivery Facilities in accordance with subparagraph 2.23 of the SCIDD Agreement, transfer to the District the operation and maintenance responsibility for the Northside Canal including any work required for environmental compliance associated with such operation and maintenance. The District shall perform such responsibilities for that canal in a manner that is in accordance with the 1938 Order.

**6.2** The cost of maintaining the Project Joint Delivery Facilities, including reasonable overhead and office expense and including amounts contracted to be paid to any entity for or in connection with such services, shall be provided for by the assessments paid by the Community and the District as provided for in this Paragraph 6.0.

**6.2.1** The JCB shall have the responsibility for overseeing the maintenance of the Project Joint Delivery Facilities, including the following specific responsibilities, among others:

**6.2.1.1** Establishing multiple-Year programs for the accomplishment of its responsibilities, including establishment of maintenance standards and goals and the projection of the financial reserves that are needed for likely future equipment replacements and major repairs;

**6.2.1.2** Establishing the Annual Budget no later than November 30 of the second Year preceding the Year in which the budget is to be expended;

**6.2.1.3** Establishing both the Community assessment and the District assessment, including any adjustment made pursuant to subparagraph 7.7 of the SCIDD Agreement, no later than November 30 of the second Year preceding the Year for which such assessments are to be expended;

**6.2.1.4** Transmitting to and collecting from the District and, pursuant to Subparagraph 6.2.2, the United States on behalf of the Community, their respective assessments no later than November 30 of the Year preceding the Year for which such assessments are to be expended;

**6.2.1.5** Contracting with the District, the Community, or other entity for the maintenance of the Project Joint Delivery Facilities on a basis that most effectively preserves the operational integrity of the Project Joint Works on a least-cost basis; and

**6.2.1.6** The JCB shall coordinate maintenance activities on the Project Joint Delivery Facilities with the Bureau of Indian Affairs to the maximum extent possible to maintain the operational integrity of the Project Joint Works and ensure that the Bureau of Indian Affairs can carry out the responsibilities retained by the Secretary.

**6.2.2** **<u>Financial responsibility for Community assessment</u>**. Nothing in this Agreement shall affect any responsibility of the Secretaryunder the provisions of the Act of June 7, 1924 (commonly known as the "San Carlos Project Act of 1924") (43 Stat. 475); or, any other financial responsibility of the Secretary relating to the operation and maintenance of the Project existing on the date of enactment of the Act.

**6.2.3** **<u>Timing for payment of the JCB assessments</u>**.

**6.2.3.1** If all JCB assessments and charges outstanding against the Community, whether for the current Year or carried forward from a previous Year or Years, together with all interest for failure to make payment when due, are not paid by May 31 of the current Year, then the Community shall pay the then outstanding assessments and charges, including all interest for failure to make payment when due and seek reimbursement from the United States or no longer be entitled to irrigation water delivery service until such time as all such charges, including interest have been paid in full. Interest for failure to make a payment when due shall accrue

at the simple interest rate of one-half (1/2) percent per month from the date the payment is due until the payment is made.

**6.2.3.2** Before the District is entitled to irrigation water delivery service, all JCB assessments and charges outstanding against the District, whether for the current Year or carried forward from a previous Year or Years, together with all interest for failure to make payment when due, shall be paid in full. Interest for failure to make a payment when due shall accrue at the simple interest rate of one-half (1/2) percent per month from the date the payment is due until the payment is made.

**6.2.4** No Board Member shall be interested, directly or indirectly, in any contract or transaction, unless (a) the material facts regarding that member's financial interest in such contract or transaction are fully disclosed in good faith and noted in the minutes; (b) such contract or transaction is authorized in good faith by the JCB by a vote sufficient for that purpose without counting the vote(s) of the interested Board Member(s); and (c) before authorizing or approving the transaction, the JCB decides, after reasonable investigation, that the JCB could not obtain a more advantageous arrangement with reasonable effort under the circumstances.

**6.2.5** As long as the JCB is in existence, no Board Member shall:

**6.2.5.1** Commit any act in violation of this Agreement;

**6.2.5.2** Commit any act with the intention of harming the JCB or any of its operations;

**6.2.5.3** Commit any act that would make it impossible or unnecessarily difficult to carry on the intended or ordinary business of the JCB;

**6.2.5.4** Receive an improper personal benefit from the operation of the JCB;

**6.2.5.5** Use the assets of the JCB, directly or indirectly, for any purpose other than carrying on the business of this JCB; or

**6.2.5.6** Wrongfully transfer or dispose of JCB property, including intangible property.

## 7.0 DISPUTE RESOLUTION

**7.1** **Purpose**. The Parties intend to resolve Disputes in a manner that will foster a spirit of cooperation and efficiency in the administration and compliance by each Party with the provisions of this Agreement.

**7.2** **Negotiation**. In the event of any Dispute the Parties shall use their best efforts to settle the Dispute through negotiation. To this effect, any Party may provide written notice of a Dispute to the other Parties. Upon receipt of such written notice, the Parties shall then meet within fourteen (14) calendar days, shall negotiate in good faith and shall attempt to reach a just and equitable solution satisfactory to all Parties.

**7.3** **Method of Dispute resolution**. If the Parties do not resolve the Dispute within a period of thirty (30) calendar days after such meeting, or if the Parties fail to meet and thirty (30) calendar days pass after the written notice of a claim is received, then any Party may seek resolution of the Dispute through binding arbitration by providing written notice to each other Party. Notice shall be deemed to have been received by a Party at

the earlier of (a) actual delivery of the notice to such member, or (b) the first business day that is at least four (4) calendar days after the notice has been deposited in the United States mails, certified or registered, return receipt requested, postage prepaid, and properly addressed to the Party.

7.4 **Arbitration notice**. The notice for arbitration shall specify with particularity the nature of the Dispute, the particular provision of this Agreement at issue and the proposed relief sought by the Party seeking arbitration.

7.5 **Selection of arbitrators**. Within fourteen (14) calendar days after written notice of the arbitration request has been received by each Party, the District shall each select one arbitrator. Within fourteen (14) calendar days after written notice of the arbitration request has been received by each Party, the Community and the United States (if the United States chooses to participate) shall together select one arbitrator. If the Community and the United States (if the United States chooses to participate) are unable to agree on an arbitrator, either of them may request that an arbitrator be selected by the Chief Judge of the U.S. District Court for the District of Arizona. Within fourteen (14) calendar days of being selected, the two arbitrators selected by the Parties (or appointed by a court) shall together select a third arbitrator. If either the District, or the Community and the United States (if the United States chooses to participate) are unable or unwilling to select an arbitrator within fourteen (14) calendar days after written notice of the arbitration request has been received by the Parties and an arbitrator has not been appointed for them by a court within such time period, then the issue in question will be decided by the one (1) arbitrator who has been selected. If no arbitrators have been selected or appointed within sixty (60) after written notice of the arbitration request has

been received by each Party, the arbitration shall be deemed dismissed with prejudice. If the two (2) arbitrators selected by the parties are unable to select the third arbitrator, the two (2) arbitrators shall request that the third arbitrator be selected by the U.S. District Court for the District of Arizona. All arbitrators shall comply with and follow to the extent possible the canons of judicial ethics as stated in Rule 81 of the Arizona Rules of the Supreme Court or any replacement rule therefor. No person may serve as an arbitrator if, because of employment or other relationship with the Parties, the nature of the matter to be arbitrated, or otherwise, such person could not serve as a judge in such matter if such person were a judge.

7.6 **Procedures for arbitration**. Except as provided in this Paragraph 7.0, arbitration under this Paragraph shall be conducted in accordance with rules of the American Arbitration Association, to the extent applicable, or such other rules as the Parties involved in the particular arbitration may mutually agree. Agreement by the Community and the United States (if the United States chooses to participate) to employ the rules of the American Arbitration Association for the conduct of the arbitration proceedings hereunder shall in no way be construed as a waiver by the Community or the United States (if the United States chooses to participate) of their respective sovereign immunity.

7.7 **Deadlines**. The Parties agree that time is of the essence in the resolution of disputes pursuant to this Paragraph 7.0. All deadlines shall be strictly enforced against the Parties involved in the particular arbitration.

7.8 Evidence. Each Party involved in the arbitration may submit evidence in writing to the arbitrators for their consideration within forty-five (45) calendar days after written notice of the arbitration request has been received by each Party.

7.9 Hearing. The arbitrators may, in their sole discretion, determine whether a hearing would assist them in rendering a fair and equitable decision. In any event, such hearing must be held within sixty (60) calendar days after written notice of the arbitration request has been received by each Party.

7.10 Arbitrators' decision. The arbitrators shall render a reasoned decision, by majority vote, no later than ninety (90) calendar days after written notice of the arbitration request has been received by each party involved in the arbitration.

7.11 Arbitrators' decision final and binding. The arbitrators' decision shall be final and binding on all Parties (but not the United States, unless the United States chooses to participate in the arbitration) and not subject to appeal. The prevailing Party in an arbitration proceeding may bring an action in any court of competent jurisdiction, but not the courts of the Community, solely and exclusively to enforce the arbitration award and for no other purpose.

7.12 Arbitration costs. The costs of the arbitration shall be shared equally by the Parties to the arbitration, but the Parties shall bear their own costs and attorneys' fees associated with their participation in the arbitration.

7.13 No modification of Agreement. Nothing in this Agreement shall be construed so as to permit the arbitrators to modify this Agreement or decide issues not expressly made arbitrable by this Agreement or otherwise affect the Secretary's approval authority as set forth in section 203(d)(2)(B)(ii) of the Act.

**7.14** Applicability of arbitration. This Paragraph 7.0 will be applicable and enforceable against the Community and the District regardless of whether the United States participates in the arbitration proceedings and no arbitration decision shall be considered invalid solely because the United States failed or refused to participate in such arbitration proceedings that resulted in the arbitration decision.

**7.15** Arbitration effectiveness. Pursuant to section 3(a)(2) of the Act, if an issue otherwise subject to arbitration under this Agreement cannot be arbitrated or if an arbitration decision will not be effective because the United States cannot or will not participate in the arbitration, then the issue shall be submitted for decision in a federal court of competent jurisdiction, but not a court of the Community.

**7.16** No participation by the United States. Pursuant to section 3(a)(1) of the Act, no arbitration decision rendered pursuant to this Agreement shall be considered invalid solely because the United States failed or refused to participate in such arbitration proceedings that resulted in such arbitration decision, so long as the matters in arbitration under this Agreement concern aspects of the water rights of the Community, the San Carlos Irrigation Project, or the Miscellaneous Flow Lands (as defined in subparagraph 2.18A of the UVD agreement, (exhibit 26.2 of the Settlement Agreement)) and not the water rights of the United States in its own right, any other rights of the United States, or the water rights or any other rights of the United States acting on behalf of or for the benefit of another tribe.

**7.17** Dispute resolution for SCIDD Agreement and Attachment 6.2. Any dispute, claim, question, or disagreement arising from or relating to the SCIDD Agreement or

Attachment 6.2 or the breach thereof shall be resolved pursuant to the dispute resolution provisions set forth therein.

**7.18** **Waiver of sovereign immunity**. The sovereign immunity of the Community and the United States is waived as provided in section 213(a) of the Act.

**7.19** **No effect on Globe Equity Enforcement Court jurisdiction**. Nothing herein shall be construed to diminish or otherwise affect the jurisdiction of the Globe Equity Enforcement Court, or the rights of the Parties to seek enforcement of any rights that they may have under the Globe Equity Decree that are separate and apart from the contractual rights and obligation created by this Agreement.

**7.20** **Arbitration procedures for Secretary**. Pursuant to section 3(b) of the Act, notwithstanding any other provision of this Agreement or its Attachments, if the Secretary is required to enter into arbitration pursuant to the Act or any document ratified by the Act, the Secretary shall follow the procedures for arbitration established by chapter 5 of title 5, United States Code.

## 8.0 MISCELLANEOUS PROVISIONS

**8.1** **Indemnification**. The JCB shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative, any appeal in such an action, suit or proceeding and any inquiry or investigation that could lead to such an action, suit or proceeding (whether or not by or in the right of the JCB), by reason of the fact that such person is or was an officer, Board Member, employee or agent of the JCB against all judgments, penalties, fines, settlements and reasonable

expenses (including attorneys' fees and court costs) actually and reasonably incurred by such person in connection with such action, suit or proceeding to the fullest extent permitted, and such indemnity shall inure to the benefit of the heirs, executors and administrators of any such person indemnified pursuant to this Subparagraph 8.1. Provided, however, that such indemnification shall be forthcoming only to the extent that such person or entity was acting reasonably within the scope of authority and in good faith in the matter being considered. The right to indemnification under this Subparagraph 8.1 shall be a contract right and shall not be deemed exclusive of any other right to which those seeking indemnification may be entitled under any law, agreement, or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office. Any repeal or amendment of this Subparagraph 8.1 by the JCB or by adverse changes in applicable law shall, to the extent permitted by applicable law, be prospective only, and not adversely affect the indemnification of any person who may be indemnified at the time of such repeal or amendment.

**8.2** **Insurance**. The JCB shall maintain such insurance coverage as is adequate, reasonable and prudent to meet all of its responsibilities pursuant to this Agreement, including, among other things, insurance to the full extent permitted by law for: (i) any damages caused to third parties by failed or failing water delivery or distribution facilities that are the subject to this Agreement; and, (ii) on behalf of its officers, Board Members, employees, and other agents, to cover any liability asserted against or incurred by any officer, Board Member, employee or agent, or arising from the officer's, Board Member's, employee's or agent's status as such or activities in such capacity.

8.3 Amendments and modifications. Notwithstanding any other provision contained herein, this Agreement may be altered, amended, or repealed, and a new agreement may be adopted, only upon the written approval of all of the Parties.

8.4 Waiver. No waiver of any breach of any of the terms or conditions of this Agreement shall be construed as a waiver of any subsequent breach of the same or other terms or conditions of this Agreement.

8.5 Severability. If any provision or clause of this Agreement or application thereof to any person or circumstance is held invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions, clauses or applications of this Agreement which can be given effect without the invalid or unenforceable provision, clause or application, and to this end, the provisions and clauses of this Agreement are severable; provided, however, that if the severance would deprive any Party of its material benefits under this Agreement, this Agreement shall be null and void.

8.6 Construction and effect. This Agreement and each of its provisions are to be construed fairly and reasonably. The Paragraph and Subparagraph titles and numbering used in this Agreement are for convenience only and shall not be considered in the construction of this Agreement.

8.7 Successors and assigns. Each of the terms and conditions of this Agreement shall be binding on and inure to the benefit of the Parties to and their successors and assigns.

8.8 Benefits of Agreement. No member or delegate to Congress or Resident Commissioner shall be admitted to any share or part of this Agreement or to any benefit that may arise here from. This shall not be construed to extend to this Agreement if made with a corporation or company for its general benefit.

**8.9 Third-party beneficiaries**. The Parties do not intend that there be any third party beneficiaries of this Agreement.

**8.10 Good faith negotiations**. This Agreement has been negotiated in good faith for the purposes of advancing the settlement of legal disputes, including pending litigation, and all of the Parties agree that no information exchanged or offered, or compromises made, in the course of negotiating this Agreement may be used as either evidence or argument by any Party in any legal or administrative proceeding other than a proceeding for the approval of this Agreement.

**8.11 No effect**. In accordance with sections 203(d)(1) and (6) of the Act, nothing in this Agreement or in the Settlement Agreement shall relieve the United States of its duties and obligations to operate the Project in the manner required by related statutes, court decrees, contracts, agreements and rulemakings, unless such requirement is expressly changed by the Act, this Agreement or the Settlement Agreement.

**8.12 Anti-deficiency**. Pursuant to section 4 of the Act, the United States shall not be liable for failure to carry out any obligation or activity required by the Act, including all titles and all agreements or exhibits ratified or confirmed by the Act, funded by: (1) the Lower Basin Development Fund established by section 403 of the Colorado River Basin Project Act (43 U.S.C. 1543), if there are not enough monies in that fund to fulfill those obligations or carry out those activities; or (2) appropriations, if appropriations are not provided by Congress.

**8.13 Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be considered an original and all of which, taken together, shall constitute one agreement.

**8.14** No effect on Water Rights. Water Rights for the Parties shall be unaffected by any of the terms and conditions of this Agreement. The JCB shall maintain the Project Joint Delivery Facilities in a manner that will allow the United States to deliver the Water to the Parties that is available through their individual or collective Water Rights.

**8.15** No repeal. This Agreement shall not be construed to repeal any other act, statute or part of statute providing for the organization of GRIIDD, the District or any irrigation or other similar district.

**8.16** Effectiveness. This Agreement shall be effective and enforceable on the later of: (a) the Enforceability Date; or (b) the date on which the Superior Court of Pinal County has validated, in accordance with A.R.S. § 48-3091, *et seq.*, the results of an election called pursuant to such statute in which a majority of the District landowners have approved the Settlement Agreement.

**8.17** No effect on Project assessment responsibility and process. In accordance with sections 203(d)(1) and (6) of the Act, the Secretary, acting through the Bureau of Indian Affairs, shall continue to be responsible for determining the cost for all work undertaken pursuant to responsibilities retained by the Bureau of Indian Affairs pursuant to this Agreement and the Act and for the establishment and collection of assessments required to pay for such work in the same manner as provided in applicable law and contracts.

**8.18** Notices. Any notice to be given or payment to be made under this Agreement to a Party shall be properly given or made by first-class mail when deposited in the United States mail at least four (4) days before their effective date. Notices may be given by personal delivery, telephone, electronic mail, or telegraph and shall be delivered, telephoned, sent, or given to the telegraph company, respectively, at least forty-eight

(48) hours before their effective date. Notices shall be addressed as follows, or addressed to such other address as the Party to receive such notice shall have designated by written Notice given as required by this Subparagraph:

(a) As to the United States:
The Secretary of the Interior
Department of the Interior
1849 C Street, NW
Washington, D.C. 20240

Regional Director
Western Regional Office
Bureau of Indian Affairs
P.O. Box 10
Phoenix, Arizona 85001

Regional Director
Bureau of Reclamation
Lower Colorado Region
P.O. Box 427
Boulder City, Nevada 89005

Project Manager
San Carlos Irrigation Project
P.O. Box 250
Coolidge, AZ 85228

(b) As to the Community:
Governor
Gila River Indian Community
P.O. Box 97
Sacaton, Arizona 85247

General Counsel
Gila River Indian Community
P.O. Box 97
Sacaton, Arizona 85247

(c) As to the District:
San Carlos Irrigation and Drainage District
P. O. Box 218
Coolidge, Arizona 85228
Attn: General Manager and General Counsel

## 9.0 APPROVAL, CONSENT AND RATIFICATION.

Each Party, by execution of the signature pages by its duly authorized representative(s), does hereby approve, endorse, consent to and ratify this Agreement, and certifies that any approvals required to make this Agreement binding on such Party has been duly acquired.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement dated as of the day and year signed below:

**GILA RIVER INDIAN COMMUNITY**

By: ______________________
Its: Governor
Dated: ______________________

Attest: ______________________

Approved as to form:

______________________
Its: General Counsel

______________________

State of Arizona

County of ______________________

Subscribed and sworn to before me this ___ day of _____, 2005 by

______________________ as ______________________ and for and

on behalf of the Gila River Indian Community.

______________________

Notary Public

My commission expires:

______________________

SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT

By: ______________________________
Its:

Dated: ______________________________

Attest: ______________________________

STATE OF ARIZONA )
County of ________________)

Subscribed and sworn to before me this ___ day of _____, 2005 by

______________________________ as ____________________ and for and on

behalf of the San Carlos Irrigation and Drainage District.

______________________________
Notary Public

My commission expires:

______________________________

Final Execution Draft
October 21, 2005

This Agreement is approved pursuant to the Act, and, to the extent applicable, 25 U.S.C. §81.

**THE UNITED STATES OF AMERICA**

By: ______________________________
Secretary of the Interior

Dated: ______________________________

IN WITNESS WHEREOF, the Parties have executed this Agreement dated as of the day and year signed below:

GILA RIVER INDIAN COMMUNITY

By: ______________________
Its: Governor
Dated: 5-23-06
Attest: ______________________

Approved as to form:

______________________
Its: General Counsel

______________________

State of Arizona

County of Pinal

Subscribed and sworn to before me this 23rd day of May, 2006 by William R. Rhodes as Governor and for and on behalf of the Gila River Indian Community.

Donna Apodaca

Notary Public

My commission expires: April 15, 2007

OFFICIAL SEAL
DONNA APODACA
NOTARY PUBLIC - STATE OF ARIZONA
PINAL COUNTY
My Comm. Expires April 15, 2007

Final Execution Draft
October 21, 2005

SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT

By: [signature]
Its: President

Dated: 5/22/06

Attest: [signature]

STATE OF ARIZONA )
County of PINAL )

Subscribed and sworn to before me this 22ND day of MAY, ~~2005~~ 2006 by

J. MICHAEL URTON as PRESIDENT and for and on

behalf of the San Carlos Irrigation and Drainage District.

Rosalyn M. Lewis

Notary Public

My commission expires:
January 4, 2009

ROSALYN M. LEWIS
Notary Public - Arizona
Pinal County
My Commission Expires
January 4, 2009

Final Execution Draft
October 21, 2005

This Agreement is approved pursuant to the Act, and, to the extent applicable, 25 U.S.C. §81.

**THE UNITED STATES OF AMERICA**

By: ______________________________
Secretary of the Interior

Dated: DEC 2 1 2005